# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ALEUTIAN PRIBILOF ISLANDS** | ) | |
| **ASSOCIATION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-2173 (CKK)** |
| | ) | |
| **DIRK KEMPTHORNE,** | ) | |
| **Secretary of the Interior,** | ) | |
| **United States Department of the Interior, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS AND CROSS MOTION FOR SUMMARY JUDGMENT

Defendants, Dirk Kempthorne, Secretary of the Interior, United States Department of the Interior, et al., respectfully move the Court, pursuant to Rule 12(b)(1) of the Federal Rule of Civil Procedure, for an order dismissing a portion of plaintiff's Complaint on the grounds that the Court lacks subject matter jurisdiction. In addition, defendants move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting defendants' motion for summary judgment on the grounds that no genuine issue of material fact exists, and defendants are entitled to judgment as a matter of law.

In support of this motion, defendants respectfully submit the attached Memorandum of Points and Authorities with Exhibits attached thereto, a Statement of Material Facts Not in Genuine Dispute, and a proposed Order.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531


Of Counsel:
Roger Hudson, Attorney
Office of the Regional Solicitor, Alaska Region
United States Department of the Interior
4230 University Drive, Suite 300
Anchorage, Alaska 99508-4626
907-271-4131

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEUTIAN PRIBILOF ISLANDS** ) | |
| **ASSOCIATION, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 06-2173 (CKK)** |
| ) | |
| **DIRK KEMPTHORNE,** ) | |
| **Secretary of the Interior,** ) | |
| **United States Department of the Interior, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Rules 7(h) and 56.1, Defendants submit the following Statement of Material Facts Not in Genuine Dispute:

1. The Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. § 1601 et seq. permitted 12 Alaska Regional Native Corporations, organized pursuant to ANCSA § 7, to select for conveyance, pursuant to ANCSA § 14(h(1), cemeteries and historical sites within their regional boundaries and not otherwise conveyed to ANCSA Village Corporations.  43 C.F.R. § 2653.5.

2. The Aleut Corporation ("TAC") timely selected a number of such sites during the 1970s, in accordance with the regulations at 43 C.F.R. § 2653.5.

3. Although a lot of the work initially required of the BIA in connection with implementation of ANCSA § 14(h)(l) was completed by the mid-1990s, there were still various substantial tasks to be completed as of the mid-1990s, which varied from region to region.  See Memorandum from the Department of Interior, Office of the Solicitor, Alaska Region, dated May

24, 2004 (Exhibit 17).

4.  When Tribal Self-Governance Compacts were entered into with Alaska tribal consortia or regional non-profit Native corporations, including the Aleutian Pribilof Islands Association, Inc. ("APIA"), beginning around 1996, the funding for the ANCSA § 14(h)(1) conveyance program was improvidently included in the tribal priority allocation, meaning that the recipient entities had broad discretion as to how to spend the money.  See Memorandum from the Department of Interior, Office of the Solicitor, Alaska Region, dated May 24, 2004 (Exhibit 17).

5. These funds were included in Annual Funding Agreements, including APIA's, without any initial requirement that ANCSA Regional Corporations submit resolutions to the Bureau of Indian Affairs ("BIA") requesting that the funding go to such entities.  See May 12, 2006, Letter from The Aleut Corporation to Administrative Law Judge Harvey C. Sweitzer (APIA's Motion for Summary Judgment, Exhibit J).

6.  The Bureau of Indian Affairs' ANCSA Program staff had immediate concerns about the lack of any apparent means of assuring that the conveyance-related work for which funds were appropriated would be undertaken.  See May 24, 2004 Memorandum from the Office of the Solicitor, Alaska Region (Exhibit 17); see also Affidavit of Kenneth L. Pratt, Exhibit 19, § 4.

7.  ANCSA Regional Corporations began to express similar concerns, and some ANCSA Regional Corporations, including TAC, attempted to protect their interest in making sure the funds were spent on necessary ANCSA conveyance-related activities, by entering into agreements with the funding recipient agencies, including specifically APIA.  The August 7, 1998 TAC-APIA Memorandum of Agreement became the basis of a working relationship

2

between TAC and APIA for several years, during which time BIA funding continued to go directly to the APIA.  See Memorandum Agreement Between APIA and TAC (Exhibit 16).

8.  Following the suggestions in the 2004 Solicitor's Office Memorandum, the BIA and Office of Self-Governance encouraged the inclusion of procedures to establish specific ANCSA § 14(h)(1) work plans with ANCSA Regional Corporation participation in Annual Funding Agreements subsequently negotiated.

9.  On May 20, 2005, TAC passed a resolution stating that it no longer wanted APIA to carry out ANSCA-related work on TAC's behalf.  See The Aleut Corporation, Resolution 06-11, 14(h)1 Funding, dated August 25, 2006 (Exhibit 14).

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202-514-6531

Of Counsel:
Roger Hudson, Attorney
Office of the Regional Solicitor, Alaska Region
United States Department of the Interior
4230 University Drive, Suite 300
Anchorage, Alaska 99508-4626
907-271-4131

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ALEUTIAN PRIBILOF ISLANDS** | ) | |
| **ASSOCIATION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 06-2173 (CKK) |
| | ) | |
| **DIRK KEMPTHORNE,** | ) | |
| **Secretary of the Interior,** | ) | |
| **United States Department of the Interior, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ――――――――――――――――――――――― | ) | |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Rules 7(h) and 56.1, Defendants submit the following Response to Plaintiff's Statement of Material Facts Not in Genuine Dispute in Support of Motion for Summary Judgment.

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Disputed. Defendants agree that the Budget Justification document still categorizes the ANCSA § 14(h)(1) program as a Tribal Priority Allocation, but disagree as to whether it is still classified as a Trust Services Program. See Affidavit of Kenneth L. Pratt, Defendants'

Exhibit 19 at ¶ 10.

9.  Defendants concede that the language is quoted correctly, but dispute its proper interpretation or implication.

10.  Undisputed.

11.  Defendants agree with most of these statements, but disagree with the statement that inclusion of the ANCSA § 14(h)(1) PFSAs "was supported by the resolutions of the thirteen tribes that sanction APIA."  It is true that the tribes have submitted ISDEAA trial resolutions from time to time requesting that the BIA contract with APIA for all programs, but defendants do not believe that the resolutions specifically or explicitly refer to the ANCSA § 14(h)(1) program, and also dispute the legal conclusion that they "support" APIA contracting for that program in the same sense that they are legally sufficient ISDEAA § 102(a) tribal resolutions with respect to that particular program.  This is a legal issue in dispute between the parties.

12.  Undisputed.

13.  Undisputed.

14.  Undisputed.

15.  Undisputed, except that the statement that "APIA did not appeal that decision to the IBIA within 30 days" does not reflect that fact that objections were filed, albeit not in a timely manner.

16.  Undisputed.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531


Of Counsel:
Roger Hudson, Attorney
Office of the Regional Solicitor, Alaska Region
United States Department of the Interior
4230 University Drive, Suite 300
Anchorage, Alaska 99508-4626
907-271-4131

## TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Andrade v. Lauer, 729 F.2d 1475 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Cherokee Nation of Okla. v. United States, 190 F. Supp. 1248 (E.D. Okla. 2001) . . . . . . . . . . . 8

Cherokee Nation v. Leavitt, 543 U.S. 631 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cureton v. U.S. Marshal Serv., 322 F. Supp. 2d 23, 2004 WL. 1435124
     (D.D.C. June 28, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Gardner v. U.S., No. Civ. A. 96-1467, 1999 WL. 164412
     (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . 6

Haase v. Sessions, 835 F.2d 902 (D.C. Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Harding v. Gray, 9 F.3d 150 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Herbert v. Nat'l Acad. of Science, 974 F.2d 192 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 7

Laningham v. U.S. Navy, 813 F.2d 1236 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Marine Mammal Conservancy, Inc. v. Dep't of Agriculture,
     134 F.3d 409 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . 7

Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884 (3rd Cir. 1977) . . . . . . . . . . . . . . 7

Oglesby v. U.S. Dep't of Army, 920 F.2d 57 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Rowland v. Riley, 5 F. Supp. 2d 1 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tao v. Freeh, 27 F.3d 635 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Wilbur v. CIA, 355 F.3d 675 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

**STATUTES**

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25 U.S.C. § 450f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 U.S.C. § 450f(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . .. . . . . . .15

25 U.S.C. 450j-1(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

25 U.S.C. § 450m-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. § 450m-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8,10

25 U.S.C. §§ 458 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §§ 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 1604(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 U.S.C. § 1604(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 U.S.C. §§ 1606, 1607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 U.S.C. §§ 1610, 1611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

25 C.F.R. §§ 900.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

25 C.F.R. § 1000.420 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25 C.F.R. § 1000.422(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 C.F.R. §900.150 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25 C.F.R. §§ 900.153-.157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 C.F.R. §§ 900.157-169 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 C.F.R. § 900.164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 C.F.R. § 900.165 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 C.F.R. § 900.166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2

43 U.S.C. § 1613(h)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,16

43 C.F.R. §§ 2653.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**MISCELLANEOUS**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## DEFENDANTS' EXHIBIT LIST

1.  Department of Interior, Office of Hearings and Appeals, Departmental Hearings Division, Recommended Decision, dated August 31, 2006

2.  The Aleut Corporation Resolution No. 05-14, dated May 20, 2005

3. Undated Correspondence from Aleutian Pribilof Islands Association, Inc. to Charles Bunch, Deputy Regional Director, United States Department of the Interior (circa January 15, 2006)

4. Correspondence from Aleutian Pribilof Islands Association Inc. to Charles Bunch, Deputy Regional Director, United States Department of the Interior, dated January 26, 2006

5.  <u>Aleutian Pribilof Islands Association v. Northwest Representative, Office of Self-Governance, Bureau of Indian Affairs</u>, Appellee's Opening Brief, IBIA 06-50-A

6.  <u>Aleutian Pribilof Islands Association v. Northwest Representative, Office of Self-Governance, Bureau of Indian Affairs</u>, Appellant's Opening Brief, IBIA 06-50-A

7.  <u>Aleutian Pribilof Islands Association v. Northwest Representative, Office of Self-Governance, Bureau of Indian Affairs</u>, Appellant's Reply to Appellee's Answer Brief, IBIA 06-50-A

8.  <u>Aleutian Pribilof Islands Association v. Northwest Representative, Office of Self-Governance, Bureau of Indian Affairs</u>, Appellee's Answer Brief, IBIA 06-50-A

9.  <u>Aleutian Pribilof Islands Association v. Northwest Representative, Office of Self-Governance, Bureau of Indian Affairs</u>, Appellant's Surreply, IBIA 06-50-A

10.  <u>Aleutian Pribilof Islands Association v. Northwest Representative, Office of Self-Governance, Bureau of Indian Affairs</u>, Appellee's Notice of Continuation of Dispute, IBIA 06-50-A

11.  Correspondence from Geoffrey D. Strommer to Interior Board of Indian Appeals, dated October 31, 2006

12.  Department of Interior, Office of Hearings and Appeals, Interior Board of Indian Appeals, November 3, 2006 Order Dismissing Objection to Recommended Decision

13.  Correspondence from Debra K. Mack, Chair, The Aleut Corporation Board of Directors to Tom Shirilla, Northwest Field Manager, Office of Self Governance, dated June 8, 2006

14.  The Aleut Corporation, Resolution 06-11, 14(h)1 Funding, dated August 25, 2006

15.  Memorandum of the Department of Interior, Office of the Regional Solicitor, Alaska Region, dated October 5, 1992

16. Memorandum of Agreement Between APIA and TAC, dated August 7, 1998

17. Memorandum from the Department of Interior, Office of the Solicitor, Alaska Region, dated May 24, 2004

18. Alaska Native Claims Settlement Act, ANCSA 1985 Study

19. Affidavit of Kenneth L. Pratt, Alaska Native Claims Settlement Act Program Manager

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-2173 (CKK) |
| | ) | |
| DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND IN SUPPORT OF DEFENDANTS' PARTIAL
<u>MOTION TO DISMISS AND FOR SUMMARY JUDGMENT</u>

## I. <u>INTRODUCTION</u>

Plaintiff, Aleutian Pribilof Islands Association, Inc., ("APIA"), has moved for summary

judgment, asking the court, <u>inter alia</u>, to declare that plaintiff is the proper beneficiary of funding

"under Section 14(h)(1) of the Alaska Native Claims Settlement Act ("ANCSA"), and . . . ha[s]

the legal right to assume activities under the Indian Self-Determination and Education Assistance

Act ("ISDEAA").[1]  <u>See</u> Plaintiff's Motion for Summary Judgment, Introduction ("Pltf's Motion

Intro.") at p. 2.  Plaintiff requests that defendants be ordered to award and fund plaintiff's Fiscal

Year ("FY") 2006 Annual Funding Agreement ("AFA"), and be enjoined "from withholding

---

[1]Under the ISDEAA, Congress mandated that Indian tribes served by Department of
Interior and Department of Health and Human Services programs for the benefit of Indians have
a right to take over administration of those programs.  These tribes may receive funds for that the
agency otherwise would have spent on such programs, functions, services or activities.  25
U.S.C. §§ 450 <u>et seq</u>.  Pursuant to Title IV of the ISDEAA, qualified tribes or tribal organizations
can enter into Self-Governance Compacts which afford greater latitude in how federal dollars are
expended.  25 U.S.C. § 458aa <u>et seq</u>.  APIA has entered into such a compact with the Department
of Interior.

ANCSA funds . . . from APIA's AFA for FY 2007 or thereafter . . . ."  <u>Id</u>. at 3.

Under the 2006 Fiscal Year Annual Funding Agreement, $73,379 was withheld from APIA in response to the submission of a competing demand to contract for the same funds, by The Aleut Corporation ("TAC").[2]  Thus, the question presented in this case is not whether the defendants acted properly in retaining funds which the plaintiff had an alleged right to receive under the ISDEAA, because the decision under review was not a decision to withhold the funds from being utilized by an Indian tribe under the ISDEAA.  Rather, the question presented is whether the Bureau of Indian Affairs ("BIA") acted properly in deciding *which* potential beneficiary entity - - the APIA or TAC - - had the superior claim to administer the program and receive the funds in question.

The Bureau of Indian Affairs/Office of Self-Governance's ("OSG") decision to delete the disputed funds from the 2006 APIA AFA was based on a sound determination that the primary beneficiary tribe with respect to the program in question was TAC, not the APIA.  In an August 31, 2006 Recommended Decision, Administrative Law Judge Harvey C. Sweitzer determined that TAC was not merely the primary beneficiary of the program in question but, in fact, the sole entity eligible to contract for the program under the ISDEAA.  <u>See</u> Department of Interior, Office of Hearings and Appeals, Recommended Decision, attached hereto as Exhibit 1.  Based on this determination, the judge correctly ruled that the deletion of funds from the APIA AFA was proper, notwithstanding APIA's procedural objections, because plaintiff, as an entity ineligible to contract for those funds, was not entitled to the procedural protections available under the

---

[2]The total amount of the Fiscal Year 2006 APIA AFA, including the disputed amount, was approximately $3,250,523.  <u>See</u> Pltf's Motion, Exhibit K.

ISDEAA.

However, before reaching the question of the challenged Department of the Interior

("Department") actions, a threshold question must be considered: whether or not the Court has

jurisdiction over this suit with respect to the FY 2006 funds.  As pled in the Defendants' Answer,

this portion of APIA's suit addressing FY 2006 funds is barred because APIA failed to exhaust

its administrative remedies.  See Amended Answer at p. 1.

## II. BACKGROUND

In 1971, Congress enacted the Alaska Native Claims Settlement Act.  43 U.S. § 1601(a)

et seq.  The purpose of the Act was to effect "a fair and just settlement of all claims by Natives

and Native groups of Alaska, based on aboriginal land claims."  Id.  In order to effect such a

settlement, Congress created two types of entities to receive land and money which would be

distributed in accordance with ANCSA.  These two entities were Regional Corporations[3] and

Village Corporations.[4]  43 U.S.C. §§ 1606, 1607.

In 1976, The Aleut Corporation, a  Regional Corporation for the Aleut region, filed

ANCSA § 14(h)(1) applications with the BIA.[5]  "In the late 1990s, APIA, a Native non-profit

---

[3]Alaska was divided into twelve regions to be represented by Regional Corporations.  An additional Regional Corporation was established for natives of Alaska, not residing in Alaska. 43 U.S.C. § 1606(c).  All living Alaska natives were enrolled in a Regional Corporation.  43 U.S.C. § 1604(b).

[4]"Native residents of each Native village entitled to receive lands and benefits under [ANSCA were] organize[d] as a business for profit or non-profit corporation . . . ."  43 U.S.C. § 1607(a).  Only Alaska Natives who were residents of a village at the time of the 1970 census were enrolled in a village.  42 U.S.C. § 1604(b).

[5]ANSCA 14(h)(1) allowed newly created Native Regional Corporations to receive a portion of their acreage entitlement in the form of historical places and cemetery sites.  See Affidavit of Kenneth L. Pratt at ¶ 2, attached hereto as Exhibit 19.

3

organization sanctioned by thirteen federally recognized tribal governments in its region, entered

into a Tribal Self-Governance Compact . . . with BIA . . . pursuant to the ISDEAA."  Exhibit 1 at

p. 3.  Under this compact, APIA was to conduct a broad range of activities related to ANCSA §

14(h)(1) in the same region as that of TAC.  Id. at 3-4.  The ANCSA § 14(h)(1) funds were

transferred to APIA without TAC's consent.  Id. at 4.  In 1998, APIA and TAC entered into a

Memorandum of Agreement ("MOA") so both parties could conduct ANCSA § 14(h)(1) related

activities.  Id.  Since then, APIA "compacted with the Bureau of Indian Affairs under Title IV of

the Indian Self-Determination and Education Assistance Act . . . , 25 U.S.C. §§ 458 et seq., to

carry out various programs, functions, services and activities ("PFSAs"), including those

authorized by § 14(h)(1) of ANSCA."  See id. at 1.  Certain funds expended had to be approved

by TAC.  Id.  On May 20, 2005, TAC "passed a resolution specifically stating that it no longer

wanted APIA to carry out ANCSA-related work on the corporations behalf."  Id.  Rather, TAC

wanted to contract on its own behalf with BIA to receive the ANCSA funding for FY 2006.  See

The Aleut Corporation, Resolution 05-14, attached hereto as Exhibit 2.  That resolution was

submitted to BIA, pursuant to ISDEAA § 102(a)(1), 24 U.S.C. § 450f.

Because the BIA and OSG considered TAC to be the tribe directly benefitted by the

activities required to be carried out with the funding to implement Section 14(h)(1) of the Alaska

Native Claims Settlement Act, 43 U.S.C. § 1613(h)(1), the determination was made that the TAC

resolution had to be honored.  BIA then deleted the ANCSA § 14(h)(1) from APIA's Fiscal Year

("FY") 2006 AFA.  The ANCSA § 14(h)(1) funds were then held for inclusion in an ISDEAA

contract with TAC.

APIA asked for an informal conference regarding this transfer of funds, pursuant to 25

4

C.F.R. § 1000.422(c) and 25 C.F.R. §§ 900.153-.157.[6]  BIA's Deputy Regional Director issued a

Recommended Decision upholding BIA's initial decision to transfer the ANCSA § 14(h)(1) FY

2006 funds.  See Exhibit 1.

APIA then sought to reach an accommodation with TAC.  See Undated and January 26,

2006 letters seeking extension of the appeal deadline, attached hereto as Exhibits 3, 4.  When

APIA and TAC were unable to reach an arrangement allowing for APIA to continue receiving

the ANCSA § 14(h)(1) funds, APIA filed a formal administrative appeal pursuant to 25 C.F.R.

§§ 900.157-169.[7]  As agreed by the parties, the dispute was submitted to an administrative law

judge after extensive briefing.[8]  Following this exercise of appeal rights, on August 31, 2006,

Administrative Law Judge Sweitzer issued a Recommended Decision, in which he upheld the

BIA's and OSG's action in removing the ANCSA § 14(h)(1) funding from the 2006 APIA AFA.

See Exhibit 1.  According to the Recommended Decision, either party could file an objection to

the Recommended Decision with the Interior Board of Indian Appeals ("IBIA") within 30 days.

See id.

APIA failed to file an objection within the time allowed.  Rather, on October 31, 2006,

APIA filed a Notice of Appeal and Objection to the Recommended Decision.  APIA

acknowledged that the appeal was untimely, and asked that it be deemed timely.  See APIA's

---

[6]Pursuant to 25 U.S.C. § 450m-1(a), APIA could have commenced a lawsuit in district court immediately, but elected not to do so.

[7]Notably, those regulations, and 25 C.F.R. § 900.164 in particular, afforded APIA an extensive set of procedural rights.

[8]Attached hereto as Exhibits 5 through 10 are the six exhaustive briefs filed with the Department of the Interior Office of Hearings and Appeals.

October 31, 2006 letter to the IBIA, attached hereto as Exhibit 11.  On November 3, 2006, the

IBIA issued an Order Dismissing the Objection to the Recommended Decision as untimely.  See

Department of Interior, Office of Hearings and Appeals, Interior Board of Indian Appeals, Order

Dismissing Objection to Recommended Decision, 44 IDIA 11 (2006), attached hereto as Exhibit

12; see also 44 IBIA 11 (2006).

During the pendency of the administrative appeal proceedings, the question of whether

ANCSA § 14(h)(1) funding for FY 2007 should be provided to APIA or to the TAC arose.  A

latent ambiguity in the May 20, 2005 Resolution permitted APIA initially to argue that TAC had

not requested a contract for the ANCSA § 14(h)(1) program for 2007.  However, TAC, by a June

8, 2006 letter and August 25, 2006 confirming Resolution, clarified and reiterated its request for

the 2007 contract.  See Letter dated June 8, 2006, from Debra K. Mack, Chair, The Aleut

Corporation Board of Directors, attached hereto as Exhibit 13; The Aleut Corporation Resolution

06-11, 14(h)1 Funding, attached hereto as Exhibit 14.  In light of the Recommended Decision,

the ANCSA § 14(h)(1) funding sought by APIA was not restored in its FY 2007 AFA.  On or

about December 21, 2006, the instant action was filed.

## III.  STANDARDS OF REVIEW

### A.  Standard for Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the

court's jurisdiction."  Gardner v. U.S., No. Civ. A. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan.

29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001) (quoting,

Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987)); see also 4 Wright & Miller:  Federal

Prac. & Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the

power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.")  A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint. Herbert v. Nat'l Acad. of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See id.; see also Cureton v. U.S. Marshal Serv., 322 F. Supp.2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).  "At issue in a factual 12(b)(1) motion is the trial court's jurisdiction - - its very power to hear the case."  Mortensen v. First Fed. Sav. and Loan Assn, 549 F.2d 884, 891 (3rd Cir. 1977).

**B.  Standard for Summary Judgment**

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994); see Fed. R. Civ. P. 56.  In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587.  The mere existence of a factual dispute, however, will not defeat summary judgment.  The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and

supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party.  <u>Anderson</u>, 477 U.S. at 247-48; <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 249-50).  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'"  <u>Celotex Corp.</u>, 477 U.S. at 323 (citations omitted).

Moreover, mere conclusory allegations are not enough to survive a motion for summary judgment.  <u>Harding v. Gray</u>, 9 F.3d 150, 154 (D.C. Cir. 1993); <u>Rowland v. Riley</u>, 5 F. Supp.2d 1, 3 (D.D.C. 1998); <u>Benn v. Unisys Corp.</u>, 176 F.R.D. 2 (D.D.C. 1997).  As the Supreme Court has instructed:  "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  Once the initial burden of the moving party is satisfied, the burden shifts to the responding party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  <u>See id</u>. at 250.

## IV.  <u>ARGUMENT</u>

### A.  The Arbitrary and Capricious Standard of Review Applies

APIA argues that "defendants' should have applied the Department's "longstanding Alaska Order of Contracting Precedence" in determining which party would be granted the

ANSCA § 14(h)(1) funding.[9]  See Pltf's Motion Intro. at p. 3.  APIA states that defendants' failure to do so "was arbitrary, capricious, and an abuse of discretion in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)[.]" Id.  However, APIA argues that "[t]he standard of review in civil suits brought under the ISDEAA is de novo."  Id. at 3; see 25 U.S.C. 450m-1(a).  Plaintiff cites Shoshone-Bannock Tribes of Fort Hall v. Shalala, 998 F.Supp. 1306 (D.Or. 1997), rev'd on other grounds, Shoshone-Bannock Tribes of the Fort Hall Reservation v. Thompson, 279 F.3d 660 (9th Cir. 2002), to support this assertion.  Plaintiff is incorrect.  This case does not support the proposition that a court reviewing an APA challenge to agency action, when faced with a statute with no standard of review, should apply a de novo standard.

There is no dispute that Plaintiff brought this action pursuant to both the APA and the ISDEAA.  See Complaint at ¶ 6.  However, Shoshone-Bannock Tribes of the Fort Hall Reservation, 988 F.Supp. at 1313 (D.Or. 1997) states that ISDEAA provides **no** standard of review.  When a statute provides for judicial review but fails to set-forth the standards for that review, it is well accepted that the court looks to the APA for guidance.  United States v. Carlo Bianchi & Company, 373 U.S. 709, 715 (1963). See also Sierra Club v. Glickman, 67 F.3d 90, 96 (5th Cir.1995).

Thus, since the ISDEAA does **not** set forth the standard of review, the APA's arbitrary and capricious standard is the appropriate standard.  See Al-Fayed v. C.I.A., 254 F.3d 300, 304

---

[9]The BIA Order of Contracting Precedence is as follows: 1- active Indian Reorganization Act("IRA") Council; 2- in the absence of an IRA, the formally established Traditional Council; 3- in the absence of the first two, the local ANSCA village/urban for-profit corporation; 4- in the absence of all others, the ANCSA Regional for-profit corporation.  Douglas Indian Ass'n v. Bureau of Indian Affairs, 27 IBIA 292, 293 (1995).

(D.C. Cir. 2001) (quoting Dickson v. Sec'y of Defendant., 68 F.3d 1396, 1404 n. 12 (D.C. Cir.1995) and citing Workplace Health & Safety Council v. Reich, 56 F.3d 1465, 1467 (D.C. Cir.1995) ("The APA, however, 'provides a default standard of judicial review . . . where a statute does not otherwise provide a standard.'")).  In fact, courts in this jurisdiction have applied the APA's arbitrary and capricious standard to challenges of IBIA decisions.  See Ransom v. Babbitt, 69 F. Supp.2d 141, 149 (D.D.C. 1999); Feezor v. Babbitt, 953 F. Supp. 1 (D.D.C. 1996)).  Thus, in this case, the Court should apply the arbitrary and capricious standard to the facts to determine whether or not the challenged decision is supported by the administrative record.

### B.  APIA's Claims Regarding the FY 2006 AFA Should Be Dismissed for Failure to Exhaust Administrative Remedies

The ISDEAA and its implementing regulations give a tribal organization which objects to a BIA or OSG decision a choice of either pursuing an immediate judicial lawsuit, or an administrative appeal.  See 25 U.S.C. § 450m-1(a); 25 C.F.R. § 1000.420 et seq.; 25 C.F.R. § 900.150 et seq.; Cherokee Nation of Oklahoma v. United States, 190 F.Supp. 1248, 1258 (E.D. Okla. 2001); affirmed sub nom Cherokee Nation v. Thompson, 311 F.3d 1054 (10th Cir. 2002), reversed on other grounds sub nom Cherokee Nation v. Leavitt, 543 U.S. 631 (2005).   The statutory provision allowing an immediate judicial action is fairly unusual in that it departs from the more typical model requiring exhaustion of administrative remedies before a case challenging agency action can be taken to court.  Had APIA proceeded directly to court, and commenced this action after the ANCSA § 14(h)(1) funding was omitted from its FY 2006 contract, in September 2005, this Court would have had jurisdiction under the statute establishing "original

10

jurisdiction."  Likewise, if APIA, having once elected to pursue administrative remedies first, had properly exhausted those remedies, this Court would have had Administrative Procedure Act ("APA") judicial review jurisdiction to consider APIA's claims.  5 U.S.C. § 702.  In its Complaint, APIA alleges that this Court has jurisdiction under both the ISDEAA and APA jurisdictional grants.  See Complaint at ¶ 6.  In addition, APIA cites 28 U.S.C. §§ 1331 and 1362 as additional bases for the Court's jurisdiction over this action.  However, plaintiff's claims with respect to FY 2006 funding are barred under any of these jurisdictional bases by the doctrine of failure to exhaust administrative remedies.

Exhaustion of administrative remedies is generally required before seeking judicial review "'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'"  Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting Oglesby v. United States Dep't of Army, 920 F.2d 57, 61 (D.C. Cir. 1990)); see also Marine Mammal Conservancy, Inc. v. Dep't of Agric., 134 F.3d 409, 412 (D.C. Cir. 1998) ("Administrative appeals permit agencies to correct mistakes by 'inferior' officers. Judicial review may thereby be entirely avoided."); Andrade v. Lauer, 729 F.2d 1475, 1484 (D.C. Cir. 1984) (explaining that exhaustion discourages the "frequent and deliberate flouting of administrative processes," allows an agency to "correct its own errors," and "promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of any judicial involvement at all if the parties successfully vindicate their claims before the agency").

The key question in considering this jurisdictional defense is whether or not the ISDEAA provision allowing original jurisdiction in court excuses a plaintiff, which elects to first pursue

administrative remedies, from fully and effectively exhausting its administrative appeal rights.

Clearly, the doctrine of exhaustion applies in this circumstance, notwithstanding the fact that

Congress allows tribal organizations, at the outset, the choice of either pursuing an administrative

appeal or an immediate judicial lawsuit. See 25 U.S.C. § 450m-1(a). Any contrary interpretation

would lead to inefficient and duplicative proceedings, contrary to the rationale behind the normal

exhaustion requirement.

In this case, plaintiff elected to pursue an administrative appeal. The Recommended

Decision issued by the Administrative Law Judge indicated that either party could file an

objection with the Interior Board of Indian Appeals ("IBIA") within 30 days. See id. APIA

failed to do so within the time allowed. Rather, on October 31, 2006, APIA filed a Notice of

Appeal and Objection to the Recommended Decision. APIA acknowledged that the appeal was

untimely and asked that it be deemed timely. See Exhibit 11. On November 3, 2006, the IBIA

issued an Order Dismissing the Objection to the Recommended Decision as untimely. See

Exhibit 12 (order publish at 44 IBIA 11 (2006)).

By failing to file a timely objection to the Recommended Decision, the APIA failed to

exhaust its administrative remedies. Had it presented its objections to the IBIA in a timely

manner, as contemplated by Departmental regulations, if appropriate, administrative

modification or overturning of the Recommended Decision could have been possible. See 25

C.F.R. §§ 900.165 and 900.166. Such action would have obviated any need to consume the

Court's time with the present lawsuit. Indeed, and important purpose of the exhaustion

requirement is to relieve courts of the unnecessary burden of entertaining suits that might have

been resolved at the administrative level. Once an ISDEAA appellant elects to pursue

12

administrative appeal remedies, however, there is a substantial interest in requiring such an appellant to play by the rules it has selected to utilize.  Surely Congress did not intend to sanction inefficiency and pointless multiplication of proceedings when it gave ISDEAA Indian organizations the option of sidestepping the administrative appeal process *at the outset*.[10]

Plaintiff should have exhausted its available administrative remedies by timely filing an appeal before seeking to adjudicate the matter in this Court.  See, e.g., Wilbur, 355 F.3d at 677.  Plaintiff, therefore, has deprived defendants of an opportunity "to exercise [their] discretion and expertise on the matter, and to make a factual record to support [their] decision.'" Id. (quoting Oglesby, 920 F.2d at 61.   Accordingly, this Court should dismiss APIA's claims as they pertain to the FY 2006 ANCSA § 14(h)(1) funding, and deny plaintiff any form of relief with respect to that funding.

### C.  The Sound Conclusions in the August 31, 2006 Recommended Decision Regarding the Fiscal Year 2007 Funding Should Be Adopted By This Court

#### 1.  APIA Does Not Have a Superior Right to Contract or Compact for the ANCSA § 14(h)(1) Program Funds

APIA argues that its right under the ISDEAA to contract for the funds in question should take precedence over TAC's right to request a contract for the same program funding.  Pltf's Motion at pp. 7-10.  While defendants generally agree that an "Alaska Order of Precedence" is utilized for ISDEAA contracting purposes, there are a few key points of disagreement with

---

[10]Moreover, in Pueblo of Zuni v. United States, the Court rejected the argument that 25 U.S.C. § 450m-1 authorizes a tribal contractor to bypass administrative exhaustion.  467 F.Supp.2d 1099 (D.N.Mex. 2006).  Although the procedural context was slightly different, the court in Zuni rightly recognized that other policies besides the § 450m-1 shortcut to court still apply in the ISDEAA context.  Once an appellant voluntarily elects to utilize the administrative appeals process, it is obliged to pursue it in accordance with the rules it has selected.  When it fails to do so, it forfeits its right to judicial review.

plaintiff's argument.[11]  First, while the general policy reflected in the order is broadly applied, it

does not have the force of law, and is not established by statute, regulation or other mandatory

means.  Therefore, there is no violation in departing from it.

Second, it is not a policy which has been applied without consideration of the nature of

the program, function, service, or activity to be undertaken under a proposed contract.  In fact,

adherence to the "Order of Precedence" may not always be appropriate, especially if the

particular PFSA is one primarily or exclusively benefitting a "lower ranking" Alaska Native

entity, such as in this case the TAC.  See Exhibit 1 at pp. 12-14.  As APIA admits, the TAC and

all other ANCSA Regional Corporations are clearly defined in the ISDEAA as  tribes eligible to

contract under the provisions of the law.   Pltf's Motion at p. 7, n.3.   Although the vast majority

of ISDEAA contracting in Alaska occurs, and always has, without need for reference to the order

(because no competing applications are submitted), departure from the order has in the past been

justified in a special case where the PFSA to be contracted directly benefits an ANCSA

corporation, rather than a governmental tribe.   See October 5, 1992 Memorandum of the Office

of the Solicitor, Alaska Region, attached hereto as Exhibit 15 (surveying of lands for conveyance

pursuant to the ANCSA).

APIA asserts that the "true beneficiaries" of the ANCSA § 14(h)(1) program are the

village councils whose resolutions support APIA's contracting status.  Pltf's Motion at p. 9.

However, this is simply incorrect.  "APIA's assertion . . .  is contradicted by the clear language,

---

[11]The BIA Order of Contracting Precedence is as follows: 1- active Indian Reorganization
Act("IRA") Council; 2- in the absence of an IRA, the formally established Traditional Council;
3- in the absence of the first two, the local ANSCA village/urban for-profit corporation; 4- in the
absence of all others, the ANCSA Regional for-profit corporation.  Douglas Indian Ass'n v.
Bureau of Indian Affairs, 27 IBIA 292, 293 (1995).

overall structure, and purpose of ANCSA." <u>See</u> Exhibit 1 at pp. 8-12.  In short, the BIA/OSG

decision to depart from the normal order in the present case was neither contrary to law nor

unprecedented.  Rather, it was a rationally and fully-supported action in keeping with both the

spirit and the letter of the ISDEAA.

APIA next argues that the fact that APIA received the funding in past years, without

benefit of a supporting resolution from the TAC, meant that its entitlement to the funding was

beyond question.  <u>See</u> Pltf's Motion at p. 10.  However, what this argument fails to acknowledge

is that the question of APIA contracting rights was never pointedly raised until a competing

request to contract was received from the TAC.   In fact, that inclusion of the ANCSA § 14(h)(1)

funding in a succession of APIA AFAs had been erroneous, because the benefitted tribe (TAC)

had not requested the contracting of that program by submission of a tribal resolution pursuant to

ISDEAA § 102(a)(1).  <u>See</u> Exhibit 1 at p. 14.

Another factor undermining APIA's argument is that APIA operated the program

pursuant to an express Memorandum of Agreement ("MOA") with TAC.  <u>See</u> Memorandum of

Agreement between APIA and TAC, attached hereto as Exhibit 16.  This agreement provided

that APIA and TAC would "jointly conduct certain cultural heritage, preservation and related

activities, and in particular, activities related to completing the ANSCA 14(h)(1) process."  <u>See</u>

<u>id</u>. at 1.  The MOA also acknowledged that work product generated would be the sole  property

of TAC, not APIA.  <u>See id</u>. at 3.  In addition, pursuant to the MOA, APIA had to provide TAC

with monthly financial statements as to all funds jointly administered.  <u>See id</u>.  Notably, APIA

also saw fit to make efforts to reach an accommodation with TAC prior to commencing its

formal appeal regarding the FY 2006 funding.  This clearly undermines APIA's argument that its

15

entitlement to the funding was beyond question.  See Exhibits 3, 4.   As described in the May 24, 2004 Memorandum from the Department's Office of the Regional Solicitor, Alaska Region, the BIA, by that date, had come to recognize that inclusion of the 14(h)(1) funding in APIA's and other compacting entities' AFAs was not reliably fulfilling the purpose for which the funds were appropriated.  See Memorandum from Office of Solicitor, Alaska Region, dated May 24, 2004, attached hereto as Exhibit 17.  APIA's premise that Congress intends - - and has expressed through the provisions of the ISDEAA - - that a BIA mistake, once made and later recognized, must nevertheless be perpetuated, should be rejected.

APIA also argues that if both APIA (on the strength of resolutions submitted by village-based recognized tribes), and TAC (on the strength of its own resolution) were eligible to contract or compact the ANCSA § 14(h)(1) program, then APIA should be able to continue contracting on the basis of the principle of "first come-first served."  See Pltf's Motion at p. 12. However, resolutions from the village-based tribal governing bodies, requesting that BIA and OSG contract the ANCSA § 14(h)(1) program to APIA, were not legally sufficient resolutions because the villages are not the tribes benefitting from the ANCSA § 14(h)(1) program.  See Exhibit 1 at pp. 14 et seq.[12]  Therefore, TAC is the only entity authorized to submit an ISDEAA § 102(a) resolution.  See Exhibit 1 at p. 8.

---

[12]This clearly distinguishes the present case from the one addressed in the administrative decision in Pit River Health Serv. Inc. v. Indian Health Service, BAB CR333 (1994), discussed in plaintiff's motion.  See Pltf's Motion at pp. 13-15.

> ### 2. Given the Determination That APIA's Expectation of Continued Funding to Administer the ANCSA § 14(h)(1) Program is Not Supported By a Tribal Resolution From the Benefitted Tribe, Plaintiffs' Allegations of Procedural Error Must Be Rejected

APIA, at pages 15 through 22 of its motion, identifies several specific provisions of the ISDEAA which it alleges were violated by the withdrawing of ANCSA § 14(h)(1) funding from APIA's 2006 AFA. See Pltf's Motion at pp. 15-22. These arguments are unavailing.[13]

First, APIA argues that the proper procedure for removing the funding in question would have been by partially declining its AFA proposal according to the procedure provided in ISDEAA §102(a)(2), 25 U.S.C. § 450f(a)(2). However, the declination process is only triggered when a legally sufficient tribal resolution is received. See Exhibit 1 at p. 14. Because the village-based tribes, whose resolutions support BIA and OSG contracting with non-tribe APIA, are not the beneficiaries of the ANCSA § 14(h)(1) program, their general resolutions do not support contracting of that program, and do not require utilization of the statutory declination process.[14] Although the 14(h)(1) funds were included in prior APIA AFAs, the receipt of TAC's May 2005 Resolution brought to light the incorrectness of that practice, which was then properly discontinued.

---

[13]The Administrative Law Judge also found each of these arguments to be meritless. See Exhibit 1 at pp. 14-20.

[14] In the event that the Court rules against defendants on this issue, defendants would be prepared to follow those declination procedures on remand. See Exhibit 10 (attaching the BIA's July 7, 2006 letter to APIA indicating that the BIA and OSG would comply with the final determination on the funding and procedural dispute, whatever it might be). However, if this case is so remanded, it should be noted that the BIA would likely decline the proposal on the basis of the ISDEAA § 102(a)(2)(E) criterion, because the fundamental problem would remain that the ANCSA § 14(h)(1) program is a conveyance related program, and TAC rather than APIA is the tribe benefitted. Compare Exhibit 1 at pp. 19-20 (citing the same statutory basis for declination).

17

APIA also argues, in reliance on ISDEAA § 106(b)(2), 25 U.S.C. 450j-1(b)(2), and 25 C.F.R. §§ 900.32 and 900.33, that defendants were prohibited from reducing its funding by recognizing TAC's superior right to contract for the 14(h)(1) program.  See Pltf's Motion at pp. 18-20.  However, pursuant to 25 C.F.R. § 900.32, if a tribe's proposed successor AFA is "'substantially the same' as the prior [AFA], . . . the Secretary shall approve and add to the contract the full amount of funds to which the contractor is entitled and may not decline any portion of the successor [AFA]." 25 C.F.R. § 900.32.  The 2006 APIA proposal, however, was *not* the same as its proposal for prior years, because of the intervening submission of TAC's May 2005 tribal resolution, requesting that the BIA contract directly with it as the benefitted tribe, and cease contracting with APIA for the ANCSA § 14(h)(1) program.  Therefore, the cited statutory provisions and regulations were not violated by the defendants' actions.

> 3.  With Respect to the Conveyance-Related ANCSA § 14(h)(1) Program, it is TAC, Rather Than APIA, or its Constituent Villages, Which is the Tribe Benefitted By the Program for Purposes of ISDEAA Contracting Rights

APIA contends that "Alaska Tribes and their Members" are the primary beneficiaries of the ANCSA § 14(h)(1) program.  See Pltf's Motion at p. 17.  Defendants disagree, and this disagreement is precisely what led to the funding reallocation action at issue.  Specifically, plaintiff asserts that Congress intended the primary beneficiaries of the ANCSA 14(h)(1) program to be the tribes for whom APIA performs services, rather than ANCSA Regional Corporations like TAC.  However, this proposition is simply not supportable.  ANCSA makes provision for protection of cemetery sites and historical places in a single sentence authorizing the Secretary to convey such sites "to the appropriate Regional Corporation[.]"  ANCSA § 14(h)(1), 43 U.S.C. § 1613(h)(1).  That specific provision of ANCSA not only makes no mention

of Alaska Tribes or their members, but the entire complex settlement act scheme is designed

without any mention of tribes, or assignment to them of any role in the land claims settlement

process. Nevertheless, APIA claims that Congress's intent was that these unmentioned entities

and persons were the primary intended beneficiaries of a process by which 14(h)(1) lands were to

be conveyed to TAC and all of the other ANCSA Regional Corporations.

In support of that dubious proposition, plaintiff places its reliance on a colloquy, quoted

at page 23 of its Motion, between bill architects on the Senate floor a few days before ANCSA

was enacted. See Pltf's Motion at p. 23. The quoted statement by Senator Stevens, to the extent

it accurately reflects what the controlling legislation provides,[15] is not in any way at odds with the

defendants' position, nor does it support APIA's claim that its constituent tribes should be

regarded as the beneficiaries of the program for ISDEAA purposes. Senator Stevens identifies as

goals the preservation of the cemeteries and historical sites, with regional corporations as their

custodians. In fact, that intent has been carried out by administration of the program, and is

furthered by the BIA's 2005 decision to honor the TAC resolution requesting that it directly

contract with the BIA for the ANCSA §14(h)(1) funds.

Although APIA implies that recognizing the primacy and exclusivity of ANCSA regional

corporation responsibility with respect to ANCSA § 14(h)(1) would somehow amount to taking

---

[15] Senator Stevens' statement reflects some confusion. All cemeteries and historical sites *near* villages were in fact conveyed directly to village corporations under *other* provisions of ANCSA, most notably §§ 11, 12, and 14(a), 43 U.S.C. §§ 1610, 1611, and 1613(a). Under Section 12(a), selection and conveyance to village corporations of *all* acreage in and near villages (including cemeteries and historical sites) was mandatory. Thus, ANCSA § 14(h)(1) only applied to locations relatively remote from villages, which might or might not easily be identified with a particular present-day community. Stevens' reference in line 9 of his quote to "village" rather than "regional corporations" appears to have been a mere slip of the tongue.

19

these important sites away from Native people or their tribes, see Pltf's Motion at p. 24, there is absolutely no merit to that view. Congress imposed on ANCSA Regional Corporations the responsibility for selecting such sites, receiving title to them, and serving long-term as custodians of them. This intent is fully realized in the Department's regulations, at 43 C.F.R. §§ 2653.5(a) and 2653.11(b). In fact, such lands are fully protected by these regulatory provisions, *and* by the good faith implementation and compliance by TAC and other Regional Corporations. Nothing about this legislatively and administratively crafted scheme suggests that Congress's choice to impose such duties on Regional Corporations has proved problematic. Instead, what has proved problematic is the completion of conveyance-related work when the funds to complete it have passed into the control of other entities such as APIA, without satisfactory mechanisms to insure the intended use of the funds. See, e.g., Exhibit 17.

Like the statutory provision, the regulations make no mention of any role in the ANCSA § 14(h)(1) conveyance process for organizations like APIA, or its constituent tribes. Yet APIA continues to argue that such entities, not even mentioned in ANCSA, and not assigned any role in carrying out ANCSA § 14(h)(1), are the primary beneficiaries, with superior rights to contract for the program under the ISDEAA. This argument is singularly unconvincing. The purposes of § 14(h)(1) are better served by the entity with the broadest base of Native members - - Regional Corporation. See supra n.1 and 2; see also Exhibit 1 at p. 12. Congress specifically gave the Regional Corporations the responsibility of identifying, applying for, and preserving § 14(h)(1) sites on behalf of their shareholders. See id. Therefore, TAC, not APIA, is the primary beneficiary of the ANCSA § 14(h)(1) program.

Moreover, APIA's arguments about who represents the Alaska Native population do not

suggest that defendants are wrong in determining that TAC is the tribe benefitted by the ANCSA § 14(h)(1) program, and entitled to contract for it under the ISDEAA.  See Pltf's Motion at p. 24.

ANCSA was a settlement of land claims with the entire Alaska Native community as it existed when the law was passed in 1971.   All Alaska Natives of 1/4 or greater degree of Native ancestry were eligible to enroll,[16] and all who did became shareholders of Regional Corporations, including TAC.   It was perfectly natural for Congress to choose those broadly-owned entities as the ones who would select, own, and preserve cemeteries and historical places (*other than those located in the immediate vicinity of villages)* for the Alaska Native community.  That is precisely what Congress did.  It also was perfectly appropriate for the defendants to conclude that such Regional Corporations, including TAC, defined as tribe for purposes of the ISDEAA, are the entities to be benefitted by funding provided for implementation of the ANCSA § 14(h)(1) conveyance process.  Compare Exhibit 15 (dealing with a similar issue faced by the Bureau of Land Management); see Affidavit of Kenneth L. Pratt, Alaska Native Settlement Claims Act Program Manager, at ¶¶ 4-5, attached hereto as Exhibit 19.[17]

Finally, in support of its assertion that its constituent tribes, rather than ANCSA Regional Corporations such as TAC, are the primary beneficiaries of the ANCSA § 14(h)(1) program, APIA argues that the authorized uses of the funds in question are not exclusively related to the

---

[16] Contrary to the census figure APIA cites, the final Alaska Native Roll of eligible persons alive when ANCSA was enacted, prepared pursuant to ANCSA  § 43 U.S.C. § 1604, listed approximately 80,000 enrolled Alaska Natives, all of whom were shareholders of the Regional Corporations which Congress charged with the responsibility for implementation of ANCSA § 14(h)(1).  See Excerpt from Department of the Interior-commissioned "ANCSA 1985 Study," attached hereto as Exhibit 18.

[17]As the most knowledgeable and experienced BIA official with respect to matters pertaining to ANSCA § 14(h)(1), Mr. Pratt's perspective is particularly valuable.

conveyance process itself, but are to be used for many other activities.  But see Exhibit 20.  APIA

cites two documentary sources in support of this argument.  First, it quotes language from a

Departmental Budget Justification document, emphasizing wording referring to fulfillment of

Indian trust responsibilities.  However, this argument is without merit.

First, the very general language in this document is not directly at odds with the notions,

reflected in ANCSA itself, that Regional Corporations could fulfill heritage preservation roles

with respect to the broader Alaska Native community (since virtually all Alaska Natives were

expected to, and did, become regional corporation shareholders).  Second, vague language about

trust responsibilities, while it may have been included in a budget justification document, is of no

continuing relevance, because the ANCSA program funding never should have been considered a

trust program, and no longer is.  See id. at ¶ 10.  Moreover, whether the § 14(h)(1) program is

characterized as a trust program or not has little bearing on the question as to what tribe it

benefits for ISDEAA contracting purposes.  Third, the fact that the site identification and

conveyance justification process yields as a byproduct other materials of continuing value does

not mean that the program is not fundamentally a conveyance-centered one affording the central

role exclusively to ANCSA regional corporations.  See id. at ¶¶ 3-5, 7, 9.  It is notable that, in its

motion, APIA asserts that the program serves other values and beneficiaries, although APIA

itself expressly agreed with TAC that all materials produced by APIA's administration of an

ANCSA § 14(h)(1) contract would become the property of TAC.  See Exhibit 16.

APIA also places reliance on an undated unsigned four paragraph document which it

characterizes as "BIA Guidelines."  Pltf's Motion, Exhibit M.  As explained by the document's

author, Kenneth L. Pratt, it has no official status, and does not alter the fact that the primary

purpose of the ANCSA § 14(h)(1) program is to support the conveyance process, and that any

other activities would be of secondary priority.  See Exhibit 19 at ¶¶ 7, 9.

   While it is true, in the very broadest sense, that the residents of the villages which

authorize APIA to contract with the BIA for a wide variety of programs do benefit indirectly

from the Congressional mandate in ANCSA § 14(h)(1) that Regional Corporations select,

acquire and retain remote cemetery and historical sites in protected status, it is only reasonable

that the corporations be recognized as the sole direct beneficiaries of the 14(h)(1) program for

ISDEAA contracting purposes.  The experience of tribal consortium non-performance of

necessary conveyance-related tasks once they received these program funds through imprudent

BIA action eventually led to the dispute which is now before the Court.  See Exhibits 17 and 19

(background information).  Following the guidance in the May 24, 2004 Memorandum of the

Office of the Regional Solicitor, Alaska Region, the BIA and OSG assisted most Regional

Corporations (like TAC) and their counterpart tribal consortia (like APIA) in reaching

satisfactory working relationships, whereby specific regional corporation-approved ANCSA

14(h)(1) work plans were incorporated into the tribal consortia's AFAs.   See, e.g. Exhibit 19,

Attachment B (Calista Corporations' Resolution No. 07-10 wherein the ANCSA Regional

Corporation exercised its ISDEAA § 102(a)(1) right to direct the BIA to contract the 14(h)(1)

program to AVCP, based on "program goals jointly determined by the BIA ANCSA Office,

Calista Corporation and AVCP".)  To date, the only case out of 12 in which the Native entities

have been unable to cooperate has been the one now before the Court.

Given the primacy of the ANCSA § 14(h)(1) land conveyance mission,[18] which is the

only activity explicitly authorized by Congress, and the central and exclusive role of ANCSA

Regional Corporations in that process, the only reasonable conclusion the BIA could reach when

the May 2005 TAC resolution was submitted was that TAC rather than APIA or its constituent

tribal governments was the ISDEAA-defined tribe benefitted by the program.  APIA's arguments

to the contrary are unavailing as the Administrative Law Judge correctly concluded in the

Recommended Decision.  This court should likewise so conclude, and on that basis grant

summary judgment to defendants.

## IV.  CONCLUSION

Funding to carry out remaining tasks under the ANCSA § 14(h)(1) conveyance program,

which plaintiff APIA had previously received, was withheld from APIA's FY 2006 Annual

Funding Agreement, issued pursuant to the ISDEAA.  Faced with TAC's May 2005 ISDEAA §

102(a)(1) resolution seeking a contract for the same activities, BIA and OSG acted properly by

withholding the ANSCA § 14(h)(1) funds from inclusion in APIA's AFA.  APIA's complaint as

to the 2006 funding should be dismissed with prejudice because of APIA's failure to exhaust its

administrative remedies.

To the extent the same issues arise with respect to ANCSA § 14(h)(1) funding for 2007 or

future years, and based upon the reasons set forth herein, this Court should deny APIA's motion

for summary judgment in all its particulars, and grant defendants' cross-motion for summary

---

[18] As noted in ANCSA Program Manager Kenneth L. Pratt's Affidavit at ¶ 5, only about 25 percent of these conveyances have been completed, even though it is a matter of priority to both the Regional Corporations and Congress, which recently enacted the Alaska Land Transfer Acceleration Act of 2004.  See Exhibit 19 at ¶ 3.

judgment, upholding the BIA's and OSG's actions.[19]

Respectfully submitted,

    /s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


    /s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


    /s/_____
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531


Of Counsel:
Roger Hudson, Attorney
Office of the Regional Solicitor, Alaska Region
United States Department of the Interior
4230 University Drive, Suite 300
Anchorage, Alaska 99508-4626
907-271-4131

---

[19]In the event that the Court determines that the defendants have violated procedural restrictions imposed by the ISDEAA, the matter should be remanded to the Department of the Interior for issuance of a declination decision, and further proceedings concerning that declination, if necessary.

25