UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 06-2173 (CKK) ) |
| DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, et al., | ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO
DISMISS AND CROSS MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This case arises under the Indian Self-Determination and Indian Education Act

("ISDEAA"), 25 U.S.C. §§ 450 et seq.  The cross-motions filed by the parties frame the issues

from two fundamentally different perspectives: (1) the perspective of the Plaintiff Aleutian

Pribilof Islands Association, Inc. ("APIA"), focusing on its expectation that it is entitled to

continue receiving funding for a program, the Alaska Native Claims Settlement Act ("ANCSA")

§ 14(h)(1) program, which had been made available to it in years prior to 2006; and (2) the

perspective of the Bureau of Indian Affairs ("BIA") and Office of Self-Governance ("OSG"),

which are faced with trying to meet their legal obligations with respect to that same program,

when the entity primarily benefitted by it -- The Aleut Corporation ("TAC") -- formally

requested in its May 2005 Resolution that it instead of the APIA be awarded an ISDEAA

contract to administer the same relatively modest amount of ANCSA § 14(h)(1) program

funding.[1]  Defendants urge the Court to view the case from the latter perspective, because their

actions have not been self-serving in any way, but rather represent their good faith effort to apply

a dose of common sense to the reconciliation of two broad Congressional objectives: namely, the

completion of the ANCSA conveyance process, and the proper observance of the self-

determination rights of tribes under the ISDEAA, including TAC as well as the APIA.

## II.  ARGUMENT

A. APIA's Failure to Exhaust Administrative Remedies, ***Once Such Remedies
Were Elected***, Compels Dismissal of Its Claims With Respect to ANCSA § 14(h)(1)
Funding for Fiscal Year 2006.

In its brief opposing partial dismissal of its claims, Plaintiff argues that its failure to

timely file its appeal of the August 31, 2006 Recommended Decision of Administrative Law

Judge Harvey Sweitzer should be entirely without consequence.  Plaintiff's Opposition to

Defendants' Motion to Dismiss and Cross Motion for Summary Judgment and Reply to

Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pltf's Opp.") at 3-9.

Plaintiff argues that the exhaustion of administrative remedies requirement, and the judicially-

fashioned defense based thereon, are inapplicable to their claims because the ISDEAA provides

to a tribe or tribal organization the option to sidestep any administrative appeal altogether, and

instead to file directly in District Court.  On the point that a tribe or tribal organization may

directly file in District Court, there is no disagreement.  However, there is disagreement over

whether the ISDEAA, because it permits sidestepping of an administrative appeal altogether,

---

[1]As noted in Defendants' Opposition to Plaintiff's Motion for Summary Judgment and
Brief in Support of Defendants' Partial Motion to Dismiss and Cross-Motion for Summary
Judgment ("Defendant's Opp. and Cross MSJ") at 2, n. 2, the funding at issue represents just
over 2 percent of the total amount of Plaintiffs ISDEAA annual funding agreement with the BIA
and/or OSG.

also permits a tribe or tribal organization to choose the legally available administrative appeal route, and then fail to pursue such available administrative remedies to their proper conclusion without consequences regarding the availability of judicial review. Defendants assert that the policies underlying the judicial recognition of a failure to exhaust defense can and should be applied in the context presented by this case.

Starting with the proposition that only administrative appeals required by statute or regulation are required to be exhausted under the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, Plaintiff argues that any and all procedural milestones along the ISDEAA administrative appeal path are "optional," rather than required by the regulations. Pltf's Opp. at 4, n.2. This argument misconstrues the meaning of an "optional" or "discretionary" administrative appeal. It is true that the ISDEAA regulations governing administrative appeals at 25 C.F.R. §§ 900.152-.169 are couched in terms of various actions a dissatisfied party "may" take, including the critical filing of objections to a recommended decision of an administrative law judge under § 900.165 and .166. However, these actions in pursuit of administrative appellate review are not discretionary in the same sense that a request for reconsideration by the same decision maker might be.[2] Rather, they are discretionary only in

---

[2] The regulations make it perfectly clear that the Interior Board of Indian Appeals' ("IBIA") consideration of timely-filed objections to a recommended decision is mandatory. Had APIA not failed to comply with the regulations regarding filing of objections, the IBIA would have been obliged under 25 C.F.R. § 900.167(c) to issue a written decision, specifying any findings of fact or conclusions of law modified or reversed, and also to set forth the reasons for its decision, based on the record. This mandatory entitlement of an objecting party to the IBIA's review of a recommended decision, and issuance of a new independent decision contrasts markedly with the sort of discretionary reconsideration that an appellant could ask for under other appellate schemes, but would have no assurance of receiving. APIA's argument that there is "no obligation on the part of the agency to actually consider and rule on the objections," Pltf's Opp. at 9, n.10, is plainly at odds with the actual state of affairs.

that an appellant may choose to forego them if it is satisfied with or accepting of the outcome at a particular stage in the process. Obviously, APIA was not satisfied with the disposition of the matter arrived at in Judge Sweitzer's Recommended Decision, or this case would not be before the Court.

Contrary to APIA's presentation, the ISDEAA appeal regulations should not be viewed as establishing a "discretionary" or "optional" administrative remedy of filing objections to a recommended decision. At pages 6-7 of its Opposition, APIA asserts that the "ISDEAA regulations allow, but do not expressly require an appeal from the ALJ's decision." Such a reading is semantically creative, but contrary to the logic of requiring exhaustion of administrative remedies in any case. Of course, 25 C.F.R. § 900.165 says a party "may" file objections, and that the decision will be final if a party fails to do so within 30 days. But, such a provision should not be interpreted to mean that a party is free to deprive the agency's primary appellate review body-- in this case, the Interior Board of Indian Appeals -- of an opportunity to consider and rule upon the correctness of the Recommended Decision, or the merit of the party's objections to it, and then come before a court and assert that it has exhausted its administrative remedies. Put another way, no regulation ever "expressly requires" a further administrative appeal. Instead, the ISDEAA appeal regulations, like many others, are reasonably read to "require" utilization of further available administrative appellate procedures *unless the appellant is prepared to accept the outcome resulting from its abandonment of further efforts to persuade the agency that its action was erroneous*. In this case, the Court should conclude that the APIA did have a further "required" administrative remedy, and that it failed to utilize it in a timely manner, and the Court should therefore refrain from exercising jurisdiction over the Plaintiff's claims in regard to the 2006 funding.

4

APIA states that Defendants have cited no authority directly on point with the ruling it seeks from the court in its partial motion to dismiss with respect to the 2006 funding. Pltf's Opp. at 7. However, it is not surprising that the precise facts of this case have not arisen before, because few tribes or tribal organizations would have been likely to have expended a great deal of their own and the government's time and resources[3] on a voluntarily-elected administrative appeal process, and then failed to see it through to its conclusion, as the APIA has done. The purposes of the doctrine requiring exhaustion of administrative remedies are directly served in a meaningful way by granting partial dismissal in the present case. By its own choice to pursue an administrative appeal, when it could have come directly to court under 25 U.S.C. § 450f(b)(3) and 450m-1, Plaintiff rendered itself subject to the defenses applicable to a case of judicial review of administrative action. By failing to file timely objections to the August 31, 2006 Recommended Decision it now seeks to overturn, APIA defeated the purpose served by the ISDEAA regulations of allowing the agency's "superior agency authority" (the TBIA) to issue a final and authoritative ruling on its claims, thereby potentially conserving judicial resources, among other results. The defense exists precisely to discourage such conduct, hence, partial dismissal is appropriate in the present case.

B. The Arbitrary and Capricious Standard of Review of the August 31, 2006 Recommended Decision Is the Proper Standard.

In its opposition, at pages 9-12, Plaintiff argues that a *de novo* standard of review should apply to the present case, rather than the arbitrary and capricious standard normally employed in judicial review proceedings. While conceding that the APA standard usually applies in the

---

[3]See Defendants' Opp. And Cross MSJ, Exhibits 5-10, three rounds of lengthy legal briefs.

absence of a legislatively mandated one, APIA claims that "numerous courts" have ruled that *de novo* review is indicated in the ISDEAA context. Pltf's Opp. at 9-10. This argument overlooks an important distinction between the cases cited and the present action.

First, however, an observation about the Plaintiff's shifting tactics is in order. In responding to the partial dismissal motion, APIA argues that the Court should be applying an APA test for availability of a failure to exhaust defense. But then, when the issue shifts to the standard of review, APIA argues that the "original jurisdiction" characterization of its case under 25 U.S.C. § 450m-1 is the relevant one. Notably, all four of the "numerous" litigations Plaintiff cites as standing for the proposition that the *de novo* review standard applies are cases in which the plaintiff tribe commenced its challenge to agency action directly in the federal courts. In this regard, they are all distinguishable from the present case, in which, at APIA's election, extensive administrative appeal proceedings were pursued.

This is an important distinction because this action culminated in the well-reasoned August 31, 2006 Recommended Decision by Administrative Law Judge Sweitzer. In the cases cited by Plaintiff, the courts did not have the benefit of such a lengthy, elaborate, and carefully reasoned administrative decision to review. Therefore, application of an arbitrary and capricious standard in those cases was a more troublesome proposition, because the challenged agency position was not necessarily set forth in a similarly legalistic framework. Moreover, to the extent that the cited cases relied in their reasoning on the "original jurisdiction" phrasing found in 25 U.S.C. § 450m, they are inapposite. Although Plaintiff could have challenged the BIA/OSG action via an "original jurisdiction" court filing, it did not elect to do so. Instead, it spent well over a year voluntarily pursuing an administrative remedy before the Department of the Interior. All that history should not be disregarded in the context of determining the

appropriate standard of review. Both parties actively litigated the questions presented to the

court before the Department of the Interior's Office of Hearings and Appeals, and it certainly

was not Congress's intent in giving tribes a choice of fora in the ISDEAA to say that they could

try one, and if unsuccessful, go back to square one and start as if such lengthy, extensive and

expensive proceedings had never occurred at all.

      Another reason to reject APIA's proposed *de novo* standard of review is that Plaintiff has

misrepresented the situation with respect to monetary relief.  The dispute over the ANCSA §

14(h)(1) funding currently involves the funding for FY 2006 and 2007, although the question

with respect to FY 2008 looms.  In its Opposition at page 12, APIA states that the FY 2006

funding has lapsed, and therefore Plaintiff can only be made whole by an award of damages, and

not by an order that its withheld funds be restored.  This is incorrect. The appropriated funding is

still available.  It has not been disbursed to TAC, which has not followed through with execution

of its requested ISDEAA contract pending the outcome of the APIA challenge.  As of this date

the FY 2006 funds remain available.[4]  <u>See</u> Declaration of BIA Budget Analyst Ken Cesar, dated

August 3, 2007, attached hereto as Exhibit 1.

      With regard to the question as to whether APIA or TAC is the tribal entity eligible to

contract for the FY 2007 ANCSA 14(h)(1) funding, which this court must address, there is

ample time for the issuance of a decision forestalling any necessity of an award of money

damages. Under 25 U.S.C. § 13a, it is only required that such appropriated dollars be expended

or obligated (i.e., included in a contract) before the end of the succeeding fiscal year. Therefore,

---

[4]It is true that the availability of the FY 2006 funding will expire on September 30, 2007, but if the Court grants Defendant's partial motion to dismiss for failure to exhaust, the dispute as to the FY 2006 funding will be moot in any event.

to the extent that Plaintiff's reasoning in support of a *de novo* standard of review is based on the unavailability of damages under the APA, such consideration is entitled to little weight, if any.

C. On the Merits, Administrative Law Judge Sweitzer's Analysis and Conclusions Were Correct, and the BIA/OSG Action Withholding ANCSA § 14(h)(1) Funding From the APIA's FY 2006 and Subsequent Annual Funding Agreements Should Be Upheld.

Reaching the central question as to whether or not the Defendants' action in withdrawing the ANCSA § 14(h)(1) funding from APIA's post 2005 annual funding agreements was legally supportable, APIA advances the proposition that the tribal governments which it represents are intended beneficiaries of the conveyance-related program for which the funds were appropriated, and that they are therefore entitled to continue contracting to carry out that program. Pltf's Opp. at 13. Administrative Judge Sweitzer, after considering extensive briefing on that very issue, ruled that TAC, and not APIA or its constituent villages, is the beneficiary of the program and, therefore, the sole entity entitled under the ISDEAA to contract for the associated funding. See Defendants' Opp. and Cross MSJ, Exhibit 1 (Department of Interior, Office of Hearings and Appeals, Recommended Decision dated August 31, 2006). As set forth at pages 8 through 12 of the Recommended Decision, Judge Sweitzer stated:

> In conclusion, the undersigned finds that none of the APIA's arguments fundamentally undermine the soundness of the BIA conclusion that ANCSA Regional Corporations, on behalf of their Native shareholders, are the primary and direct beneficiaries of the ANCSA § 14(h)(1) program. It is therefore TAC, and not APIA, that is the primary beneficiary of the ANCSA § 14(h)(1) program.

If the Court agrees that the arbitrary and capricious standard of review is applicable, then affirmance of the Department of the Interior's position, articulated in the Recommended Decision, is unquestionably the proper disposition of this case, because that position is supported by substantial evidence and sound reasoning. However, even if the Court declines to afford any deference to the position announced in the Recommended Decision, this case should still be

decided in favor of Defendants because the analysis is still sound and correct, even if considered on a *de novo* basis.

>    1. TAC, and not APIA is the entity which directly benefits from the ANCSA §
>    14(h)(1) program, and is, therefore, the tribe which is authorized to contract for
>    the program.

APIA argues that it was initially entitled to contract for the ANCSA § 14(h)(1) program, and continued to be even in the face of a competing May 20, 2005 ISDEAA § 102(a) tribal request to contract submitted by TAC, because "Alaska Tribes and their members benefit from the conveyance and preservation of sites embodying their cultural heritage." Pltf's Opp. at 14. The Department of the Interior's present position, developed to resolve the issue presented by submission of the 2005 TAC resolution, as articulated by Judge Sweitzer, is to the contrary.  In examining the parties' positions, it is important to carefully examine APIA's own status.  APIA is a non-profit corporation formed under state law.  It is authorized to contract for BIA programs, and to enter into a compact and annual funding agreements with the BIA, *only* because federally recognized tribes have requested the Secretary of the Interior to do business with APIA on the tribes' behalf, making APIA a contract-eligible "tribal organization" for ISDEAA purposes.  But, APIA is not itself an Indian tribe under the ISDEAA and is not eligible to request a contract on its own behalf.  25 U.S.C. § 450f(a).  <u>Compare</u> 25 U.S.C. §§ 450b(e) and (1)(defining respectively "Indian tribe" and "tribal organization").  Therefore, the initial question that should be asked is whether APIA is truly authorized, by the 13 recognized tribes in its region which authorize its contracting, to pursue and perform the ANCSA § 14(h)(1) program on their behalf.  This question has previously been overlooked, and APIA's insistence that it speaks and contracts on behalf of the tribes (other than of course TAC, which is included in the ISDEAA definition of

9

an Indian tribe), has been accepted without examination.[5]  However, there is some reason to question APIA's representations on that subject.  False Pass Tribal Council, Resolution No. 97-17, attached hereto as Exhibit 2, and Native Village of Unga, Alaska, Unga Tribal Council, Resolution No. 95-12, attached hereto as Exhibit 3, are examples of resolutions submitted by APIA as evidence of its authority to contract a wide range of BIA programs, including the ANCSA § 14(h)(1) program. However, False Pass Tribal Council Resolution No. 97-17 does not explicitly authorize APIA to contract the ANCSA § 14(h)(1) program on its behalf.  In contrast, Unga Tribal Council Resolution No. 95-12 reasonably could be read to encompass all BIA programs.  However, even that resolution begs the central question as to whether the tribes themselves would be eligible to directly contract the ANCSA § 14(h)(1) program.

In any case, even assuming that some or all of the 13 individual federally recognized tribes on whose behalf APIA purports to speak have, in fact, requested that the BIA contract on their behalf to perform the ANCSA § 14(h)(1) program, the central question is whether the tribes are the direct beneficiaries of the program, and therefore the entities in a position to submit a sufficient tribal resolution under ISDEAA § 102(a), 25 U.S.C. § 450f(a).  The Defendants assert that they are not.  In contrast, TAC, the ANCSA Regional Corporation which the ANCSA statute and regulations charges with all responsibilities and land title with regard to the ANCSA § 14(h)(1) sites, is unquestionably the sole direct beneficiary of the program and funding in question.

Any confusion or uncertainty on this score arises from the circumstance that there are

---

[5]Defendants acknowledge that this question has not been pointedly raised before and would not object to Plaintiff's submitting further evidence on that narrow factual question, if the Court deems the question material to its decision.

two different broad categories of Native entities in Alaska:[6] (1) ANCSA Native corporations, like TAC, which are primarily though not exclusively land-owning, business-operating corporations, and (2) federally recognized Indian tribes, which are predominantly local governmental entities such as the 13 villages which have requested that APIA enter into a contract with the BIA, covering at least some programs for which the tribes themselves are eligible to contract.   There has never been a complete overlap in membership of these two categories of organizations.  APIA appears to dispute the Defendants' position that the ANCSA Regional Corporations, including TAC, have the broadest base of Native members.  Pltf's Opp. at 16.   There are two sufficient responses to APIA's contrary assertion that the ANCSA villages have the broadest base.

First, even if persons born after 1971 have not been *issued* stock in TAC, a great many of them have *inherited* stock from original shareholders who have died over the last 3 ½ decades.   In addition, many TAC shareholders did not in 1971 and do not now live in any of the 13 tribal communities.  Defendants' Opp. and Cross MSJ, Exhibit 1, Recommended Decision at 11.  Therefore, APIA's assertion that the tribes whose membership is, at least in some cases, predominantly residence-defined, represent a greater number of Aleut Region Alaska Natives is not supported by the record.

Second, the membership or representation question is not relevant to the question before the Court.  The Defendants' position that ANCSA Regional Corporations, like the TAC, are the

---

[6] APIA falls into neither of these broad categories, but is eligible to contract with the BIA because the village-based tribes have asked the BIA to do business with it as a tribal organization, pursuant to 25 U.S.C. § 450f(a).  In fact, the BIA and OSG continue to include in annual funding agreements with APIA the overwhelming majority of the programs and funds sought by the Plaintiff.

direct beneficiaries of the ANCSA § 14(h)(1) program stems from the enactment of this statutory scheme.  When the ANCSA was enacted in 1971, it was entirely appropriate for Congress to choose *as it did* to make the ANCSA Regional Corporations the vehicles with the responsibility, once and for all, for applying for, receiving conveyance of, and preserving and protecting ANCSA § 14(h)(1) sites.  That was a choice made by Congress in the 1971 legislation, and no amount of demographic debate will alter that fact.   As Administrative Law Judge Sweitzer put it, "APIA's assertion [that the tribes and tribal members it serves are the primary beneficiaries], however, is contradicted by the clear language, overall structure, and purpose of ANCSA." Defendants' Opp. and Cross MSJ, Exhibit 1, Recommended Decision at 9.

In 1971, Congress enacted a lands claim settlement with Alaska Natives, including Natives of the Aleut Region, and chose to make special provision for historical places and cemetery sites not located near villages in 43 U.S.C. § 1613(h)(1).  It then designated ANCSA Regional Corporations, such as TAC, to be the vehicle for carrying out those provisions.  The Secretary, in his implementing regulations, carried out the legislative intent by making provision for preservation and non-commercial protection of those sites by ANCSA Regional Corporations.  43 C.F.R. §§ 2653.5 and 2653.11.  Over the years, Congress has continued to appropriate funding for the § 14(h)(1) "program," so conveyance of all the sites selected can be completed.  Notwithstanding Plaintiff's protestations that it represents, and is eligible to contract for other groups (tribes) and indirectly individuals who are also beneficiaries of the program, the fact remains that the *only* entities given a formal role by the Congress, *on behalf of the entire Alaska Native community,* were the ANCSA Regional Corporations.  The BIA's determination that it could not refuse to honor the ISDEAA contracting request of the directly benefitted and Congressionally designated ANCSA § 14(h)(1) actor was correct, and should be upheld.

12

> 2.  The So-called Alaska Order of Contracting Precedence Is Not
> Controlling, and Making a  Principled Exception to it is Not Contrary
> to Law.

Plaintiff's argument at pages 17-18 of its Opposition, boils down to the proposition that

an internal BIA policy, which is not mandated by statute or regulation, must nevertheless be

adhered to in all cases, even if doing so is at odds with the purposes of the specific legislation to

which it is being applied.   As Administrative Judge Sweitzer observed, citing The Wilderness

Society, 106 IBLA 46, 55 (1988), a departure from an internal policy or guideline can be

permitted, but only if it can be justified as in furtherance of the underlying legislative objective.

Here, the Alaska Order of Precedence, if applied unthinkingly, might dictate that the tribes for

which APIA works have the first chance at any BIA program, regardless of its nature.

However, in the present case, as Judge Sweitzer correctly concluded, the Order of Precedence

should not be applied where it is clear that Congress has chosen a different tribal entity --

ANCSA Regional Corporations -- to carry out a particular program -- the ANCSA § 14(h)(1)

conveyance program.  Defendants' Opp. and MSJ , Exhibit 1, Recommended Decision at 12-14.

APIA makes much of the fact that BIA Budget Justification documents describe a

broader purpose for ANCSA § 14(h)(1) than merely completion of the site conveyance process.

However, the fact remains that only the conveyance process is statutorily mandated, and

provided for in the regulations, and the entities directly served by that process are by

Congressional dictate the ANCSA Regional Corporations, including TAC.

> 3.  APIA's Procedural Objections to the BIA's Means of Responding to
> TAC's ISDEAA § 102(a) Contracting Request Did Not Violate APIA's
> Rights as a Tribal Organization Contractor.

Plaintiff devotes the remainder of its Opposition Brief, at 18-25, to several arguments

that procedural prohibitions under the ISDEAA were violated by the BIA's and OSG's

13

withholding of the ANCSA § 14(h)(1) funding from the 2006 and subsequent APIA AFAs.

Because Defendants have previously conceded that they did not issue a declination decision

pursuant to ISDEAA § I02(a)(2), the question presented is whether the APIA 2006 AFA

proposal met the threshold test of having been supported by tribal requests for the BIA to

contract the ANCSA § 14(h)(1) program in particular. To begin with, the factual record on that

point leaves something to be desired. See supra at 9. But even assuming that tribal resolutions

do in fact demonstrate an intent to request that the BIA provide the ANCSA § 14(h)(1) funding

to APIA, the question remains as to whether the 13 Aleut Region tribes would themselves be

eligible to perform the ANCSA § 14(h)(1) program, and whether their resolutions were

sufficient to require a response in the nature of a declination decision.

      As with most of APIA's arguments, this one was addressed directly by Administrative

Law Judge Sweitzer, who ruled that the tribal resolutions did not require declination, because

they were not legally sufficient in the first place as they did not come from an eligible tribe

under the ANCSA § 14(h)(1) program. Defendants' Opp. and Cross MSJ, Exhibit 1,

Recommended Decision at 14 et seq. Resolution of the issue turns, once more, on the question

regarding whether the tribes are beneficiaries of the ANCSA Regional Corporation conveyance

program. Like Judge Sweitzer, the Defendants offer the authority and reasoning of the IBIA

decision in Hannahville Indian Community v. Minneapolis Indian Education Officer, BIA, 34

IBIA 4 (1999), in support of the proposition that receipt of a proper tribal resolution requesting

an ISDEAA contract is the trigger for the declination process, which does not commence in the

absence of such a resolution. Also germane is the discussion accompanying publication of the

ISDEAA regulations, at 61 Fed. Reg. 32482, 32486 (June 24, 1996). See Defendants' Opp. and

Cross MSJ, Exhibit 1, Recommended Decision at 14. Instead of addressing these authorities,

14

APIA cites legislative history language cautioning against evasion of the declination process, and a recent court decision, <u>Southern Ute Indian Tribe v. Leavitt</u>, No. 05-988, 2007 WL 2120407 (D.N.M. June 15, 2007), which is not on point, because in that case a declination was issued, and the dispute was over its sufficiency.  <u>See</u> Pltf's Opp. at 21-23; Exhibit O.  Although it is clear, as the legislative history demonstrates, that Congress was concerned that the declination process be utilized, that concern does not translate into a directive to dispense with the triggering event under ISDEAA § 102(a); namely, the submission of a sufficient tribal resolution. Where the resolution does not come from the tribe(s) benefitted by the program (in this case of the ANCSA § 14(h)(1) applicant and conveyance recipient Regional Corporation), it does not require formal declination.

APIA also argues, in reliance on the decision in <u>Cheyenne River Sioux Tribe v. Kempthorne</u>, No. 06-3015, 2007 WL 2022180 (D.S.D. July 10, 2007), that the BIA, having once established a precedent of funding a particular activity, is not at liberty to correct its error except by providing a detailed rationale for the change, with supporting documents, and meeting a high burden of proof.  <u>See</u> Pltf's Opp., Exhibit N.  But, the <u>Cheyenne River Sioux Tribe</u> case differed from the matter at hand because in <u>Cheyenne River Sioux Tribe</u>, the adequacy of a declination decision was being evaluated.  Here, the Court has before it a carefully reasoned Administrative Law Judge's Recommended Decision, which finds that the application of the declination criteria is not triggered owing to the lack of sufficient tribal resolutions in support of the contracting of the ANCSA § 14(h)(1) conveyance program.  It is also noteworthy that the decision under review in <u>Cheyenne River Sioux Tribe</u>, like others relied on by Plaintiff, involved a denial of a contract, or portion thereof, sought solely by the complaining tribe, and not the type situation faced by the BIA in the instant case.  Here, the choice was not between contracting or refusing to

15

contract, but rather between contracting with an entity that had perhaps not been authorized to perform past contracts it had received (APIA), and an entity (TAC) which was clearly a direct beneficiary of the program for which it requested a contract.

APIA's last two arguments are in support of the proposition that provisions of the ISDEAA and implementing regulations deprive the government of the power to reduce the amount of funding that it receives as a contractor even when it is determined that a portion of its contract proposal, for the ANCSA § 14(h)(1) program, was not supported by a tribal resolution from the tribe or tribes directly benefitted by the program.  In its Opposition, APIA points to the so-called stable funding rules, prohibiting reduction in funding for a proposal substantially the same as one approved during a prior year, and argues that the ISDEAA contains a "first come-first served" rule which, as interpreted in Pit River Health Service, Inc. v. Indian Health Service et al., No. C-94-303, 1994 WL 596859 (H.H.S. September 12, 1994), indicates that once a tribe achieves a contract, the scope of that contract cannot be reduced in favor of another contract with another tribe, even where the latter might have the superior claim, at least in the abstract.   Pltf's Opp. at 24-25.  However, assuming these prohibitions exist, they should not be applied to disapprove the actions taken in this case by the BIA and OSG in deleting the ANCSA § 14(h)(1) funds from the APIA AFAs for FY 2006, 2007, or subsequent years.

Importantly, in the present case, first the BIA, and then the Administrative Law Judge in upholding the BIA action, made the determination that APIA's contracting of the ANCSA § 14(h)(1) program was not supported by the requisite tribal resolutions.  Although 25 U.S.C. 450j-1(b) does limit the permissible grounds for reducing contracted funding from year to year, the unstated premise is that the full amount of prior year funding was lawfully included in the contract.  In this case, when examination of that issue was prompted by the submission of the

16

May 2005 TAC resolution, it was determined that the tribal resolutions did not support the contracting of the ANCSA § 14(h)(1) program, and such determination, and action based upon it, are not precluded by 25 C.F.R. § 900.132 or otherwise.  See Defendants' Opp. and Cross MSJ, Exhibit 1, Recommended Decision at 16-20.

Moreover, Pit River Health Service, Inc., is distinguishable from the matter at hand because, in that case it was lawful for each of the competing contract seeking tribes to provide the services for which they sought to contract.  There, the decision was to turn down the tribe coming in with the later contract proposal even though, as an initial matter, at least part of it might have been approvable.   However, the fact that there may be a refusal to reduce a pre-existing contract does not mean that a decision here to delete funding from the APIA AFA cannot be affirmed.   In contrast to the Pit River situation, where it is arguable that either tribe was eligible to contract, the action under review in the present case was based on the determination by the Administrative Law Judge, that contracting the ANCSA § 14(h)(1) program was not supportable on the basis of the resolutions given to APIA by the 13 tribes in the Aleut Region.

### III. CONCLUSION

The APIA claim with respect to the FY 2006 funding should be dismissed because Plaintiff failed to exhaust its administrative remedies.  In the alternative, the Court should grant the Defendants' motion for summary judgment, and deny the Plaintiff's motion.   Such ruling should be based on a finding that the Recommended Decision of August 31, 2006 was not arbitrary or capricious or otherwise contrary to law.  Even if the Court declines to apply that deferential standard, the same result should obtain on de novo review, because the

17

Recommended Decision was soundly reasoned and supported by the record.[7]

---

[7]In the event the Court is disposed to rule against the Defendants, the remedy of ordering the Government to restore to APIA funding for FY 2006 remains available during a window closing at the end of the current Fiscal Year on September 30, 2007.  As to the awarding of ANCSA § 14(h)(1) funding for FY 2007, over a year remains during which the disputed funds remain available for expenditure or obligation, so that no damages remedy would be relevant for FY 2007 or any subsequent year.   Moreover, if the Court rules that declination procedures were applicable, time remains for remand to utilize such procedure.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/
MARIAN L. BORUM, D.C. BAR #435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.   20530
202-514-6531

Of Counsel:
Roger Hudson, Attorney
Office of the Regional Solicitor, Alaska Region
United States Department of the Interior
4230 University Drive, Suite 300
Anchorage, Alaska 99508-4626
907-271-4131

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of August, 2007, the foregoing was served upon

counsel for plaintiff via the Court's ECF e-mail system.

 /s/                                                           
MARIAN L. BORUM
Assistant United States Attorney

ALEUTIAN PRIBILOF ISLANDS
ASSOCIATION, INC.

v.

DIRK KEMPTHORNE,
Secretary of the Interior,
United States Department of the Interior, et al.

Civil Action No. 06-2173

# EXHIBIT 1



**UNITED STATES**
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
ALASKA REGION
P.O. Box 25520
Juneau, Alaska 99802-5520



August 3, 2007

### Declaration of Ken Cesar under USC Title 28. 1746 (2)

I have reviewed the legal brief dated July 27, 2007. I have read page 12 where Aleutian/Pribilof Islands Association states that the appropriation for fiscal year 2006 has lapsed. The money has not lapsed and is available as of the above date. I declare under penalty of perjury that the foregoing is true and correct. Executed on August 3, 2007.

Ken Cesar
Budget Analyst

ALEUTIAN PRIBILOF ISLANDS
ASSOCIATION, INC.

v.

DIRK KEMPTHORNE,
Secretary of the Interior,
United States Department of the Interior, et al.

Civil Action No. 06-2173

# EXHIBIT 2

CSD                    ID:258-3514                JUN 24'99   14:19 No.017 P.02

**Pass Tribal Council**
P.O. Box 29
e Pass, Alaska 99583
(907) 548-2227
FAX 548-2214
~~2256~~

RESOLUTION NO. 97-17

RESOLUTION SUPPORTING LOCAL MANAGEMENT OF TRIBAL
OPERATIONS AND AUTHORIZING A/PIA TO OBTAIN OTHER
BIA FUNDS.

WHEREAS,   the False Pass Tribal Council is the duly elected governing body of the
federally recognized Tribe of False Pass, and;

WHEREAS,   the False Pass Tribal Council recognizes the need in False Pass for local
management of its Tribal Operations funds, and;

WHEREAS,   the False Pass Tribal Council was awarded the Fiscal Year 1997 Tribal
Operations money, and;

THEREFORE BE IT RESOLVED, that the False Pass Tribal Council manage the
          Tribal Operations money for the Fiscal Year 1998, and urges the Bureau
          of Indian Affairs to award the Tribe with the administration of the "638"
          Contracting of the Tribal Operations.

BE IT FURTHER RESOLVED, that the False Pass Tribal Council authorize the
          Aleutian Pribilof Islands Association to obtain the following BIA
          programs on behalf of the Natives of False Pass for the Fiscal Year
          1998.

                    ICWA
                    Adult Vocational Training
                    Direct Employment
                    Higher Education
                    Social Services

PASSED AND APPROVED ON THIS 11th DAY OF AUGUST, 1997.

Gilda M. Shellikoff                    Lillian Bear
President                              Secretary

ALEUTIAN PRIBILOF ISLANDS
ASSOCIATION, INC.

v.

DIRK KEMPTHORNE,
Secretary of the Interior,
United States Department of the Interior, et al.

Civil Action No. 06-2173

# EXHIBIT 3

# NATIVE VILLAGE OF UNGA, ALASKA
## UNGA TRIBAL COUNCIL

### RESOLUTION NO. _95-12_

*A RESOLUTION AUTHORIZING THE ALEUTIAN/PRIBILOF ISI INC. (A/PIA), TO IMPLEMENT A BIA SELF-GOVERNANCE COMPACT AND ANNUAL FUNDING AGREEMENT ON BEHALF OF THE NATIVE VILLAGE OF UNGA.*

**WHEREAS,** the Native Village of Unga is a federally recognized tribe in the Aleutian/Pribilof Islands region of Alaska; and

**WHEREAS,** the Unga Tribal Council strongly supports maximum tribal control of BIA funded programs and services administered by tribes and tribal organizations; and

**WHEREAS,** A/PIA is the Alaska Native regional tribal organization authorized by tribal resolution to contract for and provide certain federal and state programs and services on behalf of tribal members of the Native Village of Unga; and

**WHEREAS,** Congress recently passed the "Tribal Self-Governance Act of 1994," through which tribes and tribal organizations have been authorized to negotiate Self-Governance Compacts and Annual funding Agreements with the United States, which agreements are intended to improve and perpetuate the unique government to government relationship between Indian and Alaska Native tribes and the United States, to strengthen tribal control over federal funding and program management, and to improve the quality of services provided to Native peoples; and

**WHEREAS,** the Unga Tribal Council strongly supports promoting and strengthening the governing and administrative capacity of all IRA/Traditional Councils throughout the A/PIA region, while also maintaining and improving the ability of A/PIA to carry out its role and obligations at the regional level, and

**WHEREAS,** a Self-Governance Compact and Annual Funding Agreement would specifically provide for the transfer of resources from the federal government to A/PIA, and would authorize A/PIA to redesign programs, activities, functions and services, and to reallocate funds for such programs, activities, functions and services according to *tribally determined* needs and priorities;

**NOW THEREFORE BE IT RESOLVED,** that the Unga Tribal Council hereby authorizes A/PIA to take any and all such action as may be required to implement a Compact of Self-Governance and an Annual Funding Agreement on behalf of the Native Village of Unga, as provided by "The Tribal Self-governance Act of 1994," which Compact and AFA shall include funding and program and service delivery responsibility for all programs, services, functions and

activities not otherwise contracted by the Native Village of Unga under a P.L. 638 contract or otherwise restricted by the Tribe to be ratified at the next Council meeting.

PASSED AND APPROVED this *22* day of *June*, 1995.

*Ernest Lee*

President
Unga Tribal Council

CERTIFICATION

The foregoing resolution was adopted at a duly convened meeting of the Unga Tribal Council, a quorum being present, by a vote of _____ in favor, _____ opposed, and _____ abstaining, this _____ day of _____, 1995.

ATTEST:

*Amy Foster*

Secretary
Unga Tribal Council