**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC.** | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-02173 (CKK) |
| | ) | |
| **DIRK KEMPTHORNE**, Secretary of the Interior, U.S. Department of the Interior, et al. | ) ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**NOTICE OF SUPPLEMENTAL AUTHORITY**

The Aleutian Pribilof Islands Association ("APIA") hereby gives notice of additional authority issued since the close of briefing on the above-referenced matter.

On January 2, 2008, the United States District Court for the Eastern District of California issued a decision in *Susanville Indian Rancheria v. Leavitt*, Case No. 2:07-cv-259-GEB-DAD (copy attached), holding that the Indian Health Service ("IHS") was not justified in declining the Susanville Indian Rancheria's final offer under Title V of the Indian Self-Determination and Education Assistance Act ("ISDEAA").  Although APIA's case arises under Title IV of the ISDEAA rather than Title V, both Titles reflect similar Congressional self-governance policies and contain similar provisions.  The *Susanville* case supports APIA's argument that the Defendants were required to apply the statutorily required procedures and criteria in deciding whether to decline APIA's proposed funding agreement, rather than simply revoke the funding as they did.

Respectfully Submitted,


_____/s/_____
F. Michael Willis (D.C. Bar No. 467462)
Geoffrey D. Strommer
HOBBS, STRAUS, DEAN & WALKER, LLP

Attorneys for the Aleutian Pribilof Islands
Association


DATED: January 14, 2007.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SUSANVILLE INDIAN RANCHERIA,     )
                                 )     2:07-cv-259-GEB-DAD
            Plaintiff,           )
                                 )     ORDER
      v.                         )
                                 )
MIKE LEAVITT, Secretary of the   )
United States Department of      )
Health and Human Services;       )
CHARLES W. GRIM, Director of     )
the Indian Health Service; and   )
MARGO KERRIGAN, Area Director of )
the California Area Office of    )
the Indian Health Service;       )
                                 )
            Defendants.          )
_____)

          Plaintiff Susanville Indian Rancheria ("Plaintiff" or "the

Tribe") and Defendants Mike Leavitt, Secretary of the United States

Department of Health and Human Services ("DHHS"); Charles W. Grim,

Director of the Indian Health Service ("IHS"); and Margo Kerrigan,

Area Director of the California Area Office of the IHS (collectively,

"Defendants" or "IHS") cross-move for summary judgment.  Oral argument

on the motions was heard on September 17, 2007.

                              BACKGROUND

          Susanville Indian Rancheria is a federally-recognized Indian

tribe that provides health care and pharmacy services to eligible

Indians in rural Northeastern California through a Tribal health clinic known as the Lassen Indian Health Center.  (Joint Stip. of Facts, Findings of Fact ("FOF") 1, 2.)   The IHS is an agency of DHHS which provides health care services to American Indians and Alaska Natives throughout the United States, and negotiates and enters into compacts and funding agreements ("FA") with Indian tribes and tribal organizations under the Indian  Self-Determination and Educational Assistance Act ("ISDEAA").  (FOF 4, 5.)

Plaintiff has been providing health care services at the Lassen Indian Health Center to Tribal members and other eligible beneficiaries since 1986 under a series of self-determination contracts and Annual Funding Agreements ("AFA") with the IHS under Title I of the ISDEAA.  (FOF 7.)  The ISDEAA was originally enacted in 1974 as Public Law 93-638 (codified at 25 U.S.C. §§ 450 - 458bbb-2).  (FOF 6.)  Title V was added to the ISDEAA in 2000 as Public Law 106-260.  (FOF 6.)  Title V establishes the procedures and standards pursuant to which tribes can enter into self-governance compacts and funding agreements with the Secretary of DHHS.  (FOF 6.)  Said compacts and funding agreements concern planning, conducting, consolidating, and receiving full tribal share funding of certain programs, services, functions, and activities ("PSFAs") carried out by DHHS (codified at 25 U.S.C. §§ 458aaa-1 - 458aaa-18).  (FOF 6.)

Since at least 1995, the contracts and/or AFAs between Plaintiff and the IHS have included pharmacy services as one of the PSFAs provided by the Tribe.  (FOF 8.)  Early in 2006, the Tribe was admitted to the ISDEAA Title V self-governance program by the IHS and several months later, it began negotiating with the IHS to reach agreement on an ISDEAA Title V self-governance Compact and FA for

Calendar Year 2007.  (FOF 9.)  As part of the health care services the Tribe would provide, the Tribe adopted a Pharmacy Policy, which requires certain eligible beneficiaries to pay (a $5.00 dispensing fee plus the acquisition cost of the medicine) for pharmacy services. (FOF 10.)  The Policy exempts from this payment requirement those Native Americans and Alaska Natives permanently residing in the Tribe's service area whose income is equal to or less than 125% of the Federal Poverty Guideline as published by DHHS.  (FOF 10.)

During negotiations with IHS representatives over the proposed Title V self-governance compact and FA for the year 2007, the Tribe was orally told by IHS negotiators that the IHS would likely not agree to inclusion of the Tribe's proposed language for its pharmacy services program in the self-governance FA because it was IHS's position that tribes do not have the legal authority to charge eligible Indians for services provided through the ISDEAA, and that the Tribe would need to either delete the pharmacy provision from the FA or include language stating that the Tribe would not bill eligible Indian customers for pharmacy services.  (FOF 11.)  The Tribe refused to accept either of the two options presented by the IHS regarding the Tribe's pharmacy services.  (FOF 12.)  This refusal led to the "final offer" stage of Section 507(b) of the ISDEAA, which provides that "[i]n the event the Secretary and a participating Indian tribe are unable to agree, in whole or in part, on the terms of a compact or funding agreement (including funding levels), the Indian tribe may submit a final offer to the Secretary."  (FOF 12 (quoting 25 U.S.C. § 458aaa-6(b)).)

The matter in dispute is the Tribe and the IHS's failure to reach agreement on the pharmacy services issue.  (FOF 13.)  The Tribe

submitted its "final offer" to the IHS by letter on December 15, 2006. (FOF 14.)  The Tribe's "final offer" included pharmacy services in the proposed FA and did not include an express statement that the Tribe would not charge eligible beneficiaries for pharmacy services.  (FOF 14.)

Because of the dispute, and since the existing Title I contract and AFA were set to expire on December 31, 2006, and the ISDEAA prescribes that the IHS had 45 days to respond to the Tribe's final offer, the Tribe and the IHS agreed to an extension of the existing Title I contract and AFA for an additional 45 day period (until February 15, 2007).  (FOF 15.)  Defendant Charles W. Grim, by letter dated January 29, 2007, to Tribal Chairman Stacy Dixon, rejected the Tribe's final offer, on the grounds set forth therein ("Grim Letter").  (FOF 16.)

On February 9, 2007, Plaintiff commenced this action, asserting that Defendants' rejection of its final offer violates the ISDEAA.  (Compl. ¶¶ 26-37.)  Also on February 9, 2007, Plaintiff filed a motion for a temporary restraining order ("TRO") and a motion for preliminary injunction.  On February 14, 2007, a TRO issued extending the parties' 2006 AFA, and on February 28, 2007, a preliminary injunction issued directing the parties to execute a Compact and Calendar Year 2007 FA (as proposed by Plaintiff in its final offer). (Feb. 14, 2007 Order; Feb. 28, 2007 Order.)  The preliminary injunction further provided that "[i]f a judicial determination is made that Defendants' rejection of Plaintiff's final offer (and imposition of conditions on executing the Compact and 2007 FA proposed therein) was lawful, either (1) all references to the Tribe's pharmacy services program in the 2007 FA shall be deleted, no further funds

1  shall be allocated to the Tribe's pharmacy services program, and any

2  funds specifically allocated for the pharmacy services program shall

3  be returned; or (2) a provision shall be added to the 2007 FA stating

4  that eligible beneficiaries will not be charged for services pursuant

5  to the pharmacy services program." (Feb. 28, 2007 Order at 16.)

6          The parties now cross-move for summary judgment on

7  Plaintiff's claim that Defendants' rejection of Plaintiff's final

8  offer was contrary to law and a violation of the ISDEAA.

9                      SUMMARY JUDGMENT STANDARD

10          "[Federal Rule of Civil Procedure] 56(c) mandates the entry

11  of summary judgment . . . against a party who fails to make a showing

12  sufficient to establish the existence of an element essential to that

13  party's case, and on which that party will bear the burden of proof at

14  trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In this

15  case, Defendants bear the burden of demonstrating, by clear and

16  convincing evidence, the legality of their rejection of Plaintiff's

17  final offer.  25 U.S.C. § 458aaa-6(d); see also Pl.'s Mot. at 6;

18  Defs.' Mot. at 8.

19                           DISCUSSION

20  A.   Whether Defendants Lawfully Rejected the Tribe's Final Offer
         Based on the Concern that the Tribe's Pharmacy Program Would
21       Result in Significant Danger or Risk to the Public Health

22          Under Title V of the ISDEAA, "[i]f the [DHHS Secretary

23  ("Secretary")] rejects [a final offer], the Secretary shall provide

24  . . . a timely written notification to the Indian tribe that contains

25  a specific finding that clearly demonstrates, or that is supported by

26  a controlling legal authority, that [one of four criteria in 25 U.S.C.

27  § 458aaa-6(c)(1)(A) is met]."  25 U.S.C. § 458aaa-6(c)(1).  The

28  "Secretary shall have the burden of demonstrating by clear and

1   convincing evidence the validity of the grounds for rejecting the

2   offer (or a provision thereof)." Id. § 458aaa-6(d).

3          In the Grim Letter, the Secretary cited the third criterion

4   in § 458aaa-6(c)(1)(A), as a basis for rejecting Plaintiff's final

5   offer. (Grim Letter at 6 (citing 25 U.S.C. § 458aaa-6(c)(1)(A)(iii).)

6   Section 458aaa-6(c)(1)(A)(iii) provides that a final offer can be

7   rejected if "the Indian tribe cannot carry out the program, function,

8   service, or activity (or portion thereof) in a manner that would not

9   result in significant danger or risk to the public health." 25 U.S.C.

10  § 458aaa-6(c)(1)(A)(iii).) The Grim Letter stated:

11          [T]he IHS believes strongly that allowing Tribes
            and Tribal organizations to bill IHS beneficiaries
12          . . . will negatively impact numerous eligible
            [American Indians/Alaska Natives] and other
13          beneficiaries by creating barriers to access IHS-
            funded health services.

14                            ***

15          [E]nforcement of [Plaintiff's] Pharmacy Policy
16          could jeopardize health care services to the
            eligible [American Indians/ Alaska Natives] who
17          are otherwise eligible for health care services.
            Therefore, the proposed language is rejected on
18          the grounds that [Plaintiff] cannot "carry out the
            program, function, service or activity (or portion
19          thereof) in a manner that would not result in
            significant danger or risk to the public health."

20

21  (Grim Letter at 5, 6.)

22          Plaintiff argues it is entitled to summary judgment because

23  the Grim Letter "failed to make the required 'specific finding that

24  clearly demonstrates' that one of the four permissible rejection

25  criteria was present." (Pl.'s Mot. at 1.)  Plaintiff argues there is

26  "no basis for IHS to meet its burden of demonstrating that imposing a

27  fee for pharmacy services would in any way create 'a significant

28  danger or risk to the public health.'" (Id. at 15.)  Plaintiff

contends that establishing a "'significant risk' requires evidence and a particularized inquiry that would demonstrate the presence of such risk or danger," and that Defendants' "conclusory speculation in the Grim Letter regarding 'significant risk' fails to meet the standard for demonstrating such risk in any context." (Id. at 17.)

Plaintiff further argues that "the facts of this case cannot plausibly bear out any finding of such risk" since "[t]he IHS knew as early as May 2006 that the Tribe was charging beneficiaries for pharmacy services, and took no steps to prevent the Tribe from doing so – nor did IHS even mention to the Tribe, when it did state concerns about the program, that it presented any danger or risk to the public health," and in fact, "never mentioned to the Tribe any concern about risk or danger to public health until Dr. Grim's letter in January 2007." (Id. at 18.)

Defendants counter that their rejection of Plaintiff's final offer was lawful and appropriate since "enforcement of [Plaintiff's] pharmacy policy could jeopardize the health and safety of Indians who are otherwise eligible for health care services," and since Plaintiff's "failure to prioritize [the provision of pharmacy services] based on medical need and access to other arrangements for obtaining necessary care poses a significant danger or risk to public health."[1] (Defs.' Mot. at 38.) Defendants contend that the failure of the pharmacy policy to "accommodate patients who have a medical

---

[1] Defendants note that this failure to prioritize does not comply with "the IHS's eligibility regulations [regarding persons to whom services will be provided], which require[, in part, that when funds are insufficient,] 'Priorities for care and treatment, as among individuals who are within the scope of the program, will be determined on the basis of relative medical need and access to other arrangements for obtaining the necessary care.'" (Defs.' Mot. at 38 (quoting 42 C.F.R. § 136.12(c)).)

1   need for a particular prescription, do not have the ability to pay for
2   the medication, and do not have access to other arrangements for
3   obtaining the necessary care . . . poses a significant danger or risk
4   to the health of individual eligible Indians." (Id. at 39.)

5       Plaintiff responds that concern regarding a lack of
6   prioritization does not relate to the co-pay issue and is therefore
7   irrelevant. (Pl.'s Opp'n at 11.) Plaintiff argues that if
8   prioritization was the actual problem that Defendants had with the
9   pharmacy program, "IHS had the duty to provide technical assistance
10  and advice to [Plaintiff] during the negotiating process to remedy
11  such a deficiency." (Id. at 12 (citing 25 U.S.C. § 458aaa-
12  6(c)(1)(B).)

13      Defendants further assert that "[a]lthough [Plaintiff]
14  states that only those patients who have 'the ability to pay' must pay
15  for their pharmaceutical costs, in fact, the policy targets the
16  working poor – those whose income is greater than 125% of the federal
17  poverty guideline and who are too poor to afford health insurance.'"
18  (Defs.' Mot. at 39.) Defendants also assert "there are many
19  medications that are extremely expensive, and would pose a hardship
20  for those who ostensibly have the 'ability to pay.'" (Id. at 40.)

21      Defendants also contend that although Plaintiff "asserts
22  that without charging for pharmacy services, its pharmacy program is
23  not financially viable[,] the reason [Plaintiff's pharmacy] program is
24  failing is that the current prescription workload is too small for the
25  pharmacy to be financially viable." (Id. (citing Decl. of Christopher
26  Watson ¶¶ 4-8, 10).) Defendants argue that "if [Plaintiff] did not
27  operate an on-site pharmacy, this would not create 'public health
28  problems,' [and] the eligible Indian patients [would not] necessarily

1    have to purchase drugs elsewhere at higher costs." (Defs.' Mot. at
2    40.) Defendants suggest that "[o]n the contrary, [Plaintiff] would be
3    able to do, and should do, what it has done in the past – contract
4    with a local pharmacy and use its Contract Health Services funds to
5    pay the pharmacy costs of its eligible Indian patients." (Id. at 41.)
6    Defendants contend that "contrary to [Plaintiff's] representations
7    that the choice is between an on-site pharmacy under which its
8    eligible Indian population has to pay for pharmacy services, versus
9    not providing pharmacy services at all, [Plaintiff] actually has many
10   options to provide pharmacy services without charge." (Defs.' Opp'n
11   at 2.)

12       Defendants argue that Plaintiff's "pharmacy policy [also]
13   poses a significant danger or risk to public health [since it] fails
14   to address outbreaks of disease that pose a significant danger or risk
15   to public health." (Defs.' Mot. at 41.) Defendants contend that the
16   pharmacy policy "does not take into account a patient's inability to
17   pay for medications to contain, address, or cure communicable
18   diseases" and therefore "[t]he co-pay and payment requirement could
19   interfere with an individual eligible Indian's access to health care
20   to a point that the patient could become a significant health hazard."
21   (Id.)

22       Plaintiff counters that "Defendants' assertion that the
23   [p]harmacy policy does not address situations where there is an
24   'outbreak' of disease is simply without basis in fact. . . . The
25   belated expression of concern by the IHS over the purported lack of
26   prioritization in the [p]harmacy [p]olicy is a classic red herring:
27   it does not relate to the co-pay element of the policy and it is
28   completely irrelevant to the dispute in this case." (Pl.'s Opp'n at

11.)

Plaintiff also argues that "the Tribe may . . . choose not to operate any pharmacy program at all if the Tribe decides that operating such a program is not the best use of the limited funds provided to the Tribe for serving the health care needs of its community." (Pl.'s Reply at 1 (citing 25 U.S.C. § 458aaa-5(e)).) "If not providing pharmacy services is an option, Defendants' reliance on the 'significant danger or risk to the public health' criterion is wholly misplaced. Defendants cannot demonstrate that the Tribe's provision of pharmacy services with a co-pay poses a greater danger or risk to the public health than the Tribe's choice not to provide such services at all." (Id. at 2.)

Plaintiff further contends the "focus for inquiry in this case is . . . the Grim Letter" since it was "the 'written notification' required by the statute," and the Grim Letter "fails to provide the statutorily mandated finding" since it contains no "evidence to support Defendants' assertion that their rejection of the Tribe's 'final offer' was appropriately based on the 'significant danger or risk to the public health' criterion." (Pl.'s Mot. at 12, 15.) Plaintiff argues "Defendants cannot now bring forward points or evidence not cited in the Grim Letter, since the Court 'can uphold an agency's decision only on the basis of the reasoning in that decision.'" (Id. at 15 (quoting De la Fuente v. F.D.I.C., 332 F.3d 1208, 1219 (9th Cir. 2003).)

Defendants disagree, arguing that "[t]he IHS is merely bringing forward the evidence and further argument that support the decision and reasoning set forth in its written response to [Plaintiff's] final offer." (Defs.' Opp'n at 14.) Defendants argue

there is a "difference between a post hoc rationalization, which is a
new rationale for an agency action, and a post hoc explanation, which
is an agency's discussion of the previously-articulated rationale for
the challenged action." (Id. (quoting Nat'l Oil Seed Processors Ass'n
v. Browner, 924 F. Supp. 1193, 1204 (D.D.C. 1996)).)

Section 458aaa-6(c)(1) requires that the written
notification to the Indian tribe (here, the Grim Letter) "contain[] a
specific finding that clearly demonstrates, or that is supported by a
controlling legal authority," that one of the four rejection criteria
is met. 25 U.S.C. § 458aaa-6(c)(1) (emphasis added); see also De la
Fuente, 332 F.3d at 1219 ("We can uphold an agency's decision only on
the basis of the reasoning in that decision."); N.W. Envt'al Def. Ctr.
v. Bonneville Power Admin., 477 F.3d 668, 688 (9th Cir. 2007) ("[I]n
reviewing [an agency] action, [the court] must look to [the agency's]
reasoning in making its decision . . . , and not to other reasons for
its decision that [the agency] might marshal before [the court]. . . .
[The court] 'may not accept appellate counsel's post hoc
rationalizations for agency action.'" (internal citations omitted)).
The Grim Letter does not contain a specific finding that clearly
demonstrates that the Tribe cannot carry out its pharmacy program "in
a manner that would not result in significant danger or risk to the
public health."

Moreover, even if Defendants' new evidence and arguments are
considered, Defendants have not shown, by clear and convincing
evidence, that the Tribe cannot carry out its pharmacy program "in a
manner that would not result in significant danger or risk to the
public health." Defendants cite only speculative and/or curable risks
of harm, and do not adequately show how the existence of a pharmacy

11

1 services program that charges some beneficiaries a co-pay is more of a

2 risk to the public health than no pharmacy services program at all

3 (since it is within the Tribe's discretion to close down its pharmacy

4 altogether if it is not allowed to charge a co-pay).  Therefore,

5 § 458aaa-6(c)(1)(A)(iii) was not a proper basis for rejecting

6 Plaintiff's final offer.

7

8 B.    Whether Defendants Lawfully Rejected the Tribe's Final Offer
       Because Plaintiff's Pharmacy Program Called for Patient Billing

9          The Secretary also rejected the final offer on the ground

10 that the IHS could not sign the Compact with the co-pay feature

11 because the IHS cannot bill or charge beneficiaries for services under

12 the ISDEAA and cannot contract with tribes under the ISDEAA to carry

13 out activities that the IHS itself has no legal authority to carry

14 out.  (Grim Letter at 4 (citing 25 U.S.C. § 458aaa-14(c) ("§ 14(c)").)

15 Specifically, the Secretary stated:

16          [T]he IHS cannot agree to the pharmacy provision
           submitted by [Plaintiff] because the IHS cannot
17         contract or compact with Tribes to carry out
           activities that the agency has no authority to
18         carry out itself.  See 25 U.S.C. § 450f(a)(1),
           458aaa-4(b)(2). [Plaintiff's] proposed pharmacy
19         program is not a program provided to eligible
           beneficiaries under Federal law, 25 U.S.C. §
20         458aaa-4(b)(1), nor is it a program that IHS is
           authorized to administer.  25 U.S.C. § 458aaa-
21         4(b)(2).  In addition, the IHS is prohibited from
           entering into a contract for an activity that
22         cannot be lawfully carried out. . . .  Here, there
           is no legal authority for the IHS to enter into an
23         ISDEAA contract with [Plaintiff] to bill eligible
           [American Indians/ Alaska Natives] for services
24         provided under the contract.  Therefore, the IHS
           is prohibited from entering into the contract, and
25         must reject the proposed language.

26 (Grim Letter at 5-6.)

27          Defendants argue that "when read in the context of the

28 ISDEAA and the entire Indian health legislative scheme, [§ 14(c)]

1  unambiguously prohibits tribes and tribal organizations from billing
2  under ISDEAA Title V compacts." (_Id._ at 4, 8.)  Plaintiff counters
3  that § 14(c) only prohibits the IHS from charging eligible
4  beneficiaries, and does not prohibit tribes from doing so.  (_Id._)

5         "Our first step in interpreting a statute is to determine
6  whether the language at issue has a plain and unambiguous meaning with
7  regard to the particular dispute in the case.  Our inquiry must cease
8  if the statutory language is unambiguous and 'the statutory scheme is
9  coherent and consistent.'  The plainness or ambiguity of statutory
10 language is determined by reference to the language itself, the
11 specific context in which that language is used, and the broader
12 context of the statute as a whole." _Robinson v. Shell Oil Co._, 519
13 U.S. 337, 340-41 (1997) (internal citations omitted).

14        Section 14(c) provides: "The Indian Health Service under
15 this subchapter shall neither bill nor charge those Indians who may
16 have the economic means to pay for services, nor require any Indian
17 tribe to do so."  On its face, § 14(c) does not prohibit Tribes from
18 billing.  If Congress had intended to prohibit Tribes from billing,
19 Congress could have replaced the word "require" with the word
20 "permit," "allow," or "authorize."  Congress could also have stated
21 that "neither the IHS _nor_ any tribe" shall bill or charge Indians, in
22 lieu of the clause "nor require any Indian tribe to do so."[2]

23

---

24        [2]  Defendants argue that § 14(c) does not expressly include a
   prohibition against tribes billing because that section is entitled
25 "Obligations of the United States" and focuses on the obligations of
   the United States rather than on the obligations of tribes.  However,
26 had Congress intended to prohibit tribes from billing, and to prohibit
   the IHS from allowing tribes to bill, Congress simply could have used
27 the word "permit" in § 14(c), rather than "require."
        Further, the IHS contends, in the Grim letter, and in its briefs,
                                                    (continued...)

See, e.g., Brown v. Gardner, 513 U.S. 115, 117-18 (1994) (rejecting Veterans Administration's attempt to add a "fault" requirement to a liability statute "[d]espite the absence from the statutory language of so much as a word about fault on the part of the VA").

When Congress enacted § 14(c), it expressly added the clause "nor require any Indian tribe to do so." (Pl.'s Mot. at 21.) If § 14(c) is read as Defendants suggest, the entire phrase "nor require any Indian tribe to do so" is rendered redundant since the first clause alone would prohibit IHS from requiring tribes to charge for services. (Id. at 21-22.) Courts "should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." Beisler v. C.I.R., 814 F.2d 1304, 1307 (9th Cir. 1987); see also Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307-08 (1961) (rejecting an interpretation of one subpart of statute where that interpretation would render the immediately following subpart "a mere redundancy").

Moreover, the ISDEAA prescribes that "[e]ach provision of [the ISDEAA] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved

---

[2](...continued)
that § 14(c) obligated the IHS to reject the tribe's final offer.  If that is in fact true, then such an "obligation" could have been included in the "Obligations of the United States" stated in § 14(c).
    Defendants contend that a provision prohibiting tribal billing was unnecessary since tribal billing was not an issue at the time § 14(c) was enacted.  But, the IHS acknowledges that prior to the enaction of § 14(c), parties had litigated over whether tribes should be allowed to bill.  (Defs.' Mot. at 6, 19 (discussing Nizhoni Smiles, Inc. v. IHS, DAB Dec. No. CR450 (1996)).)

in favor of the Indian tribe."  25 U.S.C. § 458aaa-11(f).[3]

Defendants contend that "[Plaintiff's] interpretation [of § 14(c)] must be rejected because it is inconsistent with legislative intent and numerous provisions of the ISDEAA and the [Indian Health Care Improvement Act ("IHCIA")], and will lead to absurd results."[4] (Defs.' Mot. at 24.)  Plaintiff disagrees, arguing that "[t]he 'absurd results' postulated by Defendants . . . are policy arguments as to how Defendants feel the statutory framework should work."  (Pl.'s Opp'n at

---

[3]    Defendants argue that "[t]he ISDEAA statutory provisions favoring [Plaintiff's] interpretation do not apply because Plaintiff's interests are in conflict with the interests of its own members and other eligible Indians."  (Defs.' Mot. at 23; Defs.' Opp'n at 2, 7.) Defendants also argue that interpreting § 14(c) to permit tribal billing would be detrimental to other Indian tribes because, for example, the accommodation that the Centers for Medicare and Medicaid Services ("CMS") have made to waive co-payments, premiums, and deductibles for Indians in several CMS programs may be threatened if tribes are billing.  (Defs.' Reply at 15.)  However, Defendants have not shown that Plaintiff's interests are not aligned with the interests of its members.  Further, § 11(f) does not require that § 14(c) be liberally construed for the benefit of Indian *tribes*; rather, the focus in § 11(f) is on the Indian *tribe* at issue.  Here, Plaintiff has determined that tribal billing is, in fact, in its best interest.  Moreover, the risks that Defendants state may result from tribal billing are speculative, especially in light of the fact that Defendants acknowledge that some tribes have already been billing (and cost-sharing waivers have still been made available).  These matters are better addressed before Congress rather than this court. Defendants also argue that "to the extent this Court finds ambiguity in the billing prohibition, the IHS's interpretation of the provision is owed deference [since] courts are to accord deference to the official interpretations of a statute adopted by the agency that has been 'charged with responsibility for administering the provision' by Congress."  (Defs.' Mot. at 20 (quoting <u>Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.</u>, 467 U.S. 837, 865 (1984)).) §§ 458aaa-11(f) and 458aaa-11(a)(1)).)  However, since the statute is unambiguous, this argument need not be addressed.

[4]    Defendants make numerous arguments regarding the implications of adopting Plaintiff's interpretation of § 14(c).  However, the role of this court is to interpret § 14(c) and the eligibility regulations, and since those provisions do not prohibit Plaintiff from billing, in the context at issue, those arguments need not be addressed herein.

48.)  "A dispute over competing policy visions for the ISDEAA does not provide the grounds for rewriting the statute to incorporate a prohibition against tribal billing where the statute does not contain such a prohibition."  (Id.)

Defendants contend that "[Plaintiff's] interpretation of the billing provision must be rejected because it is in direct conflict with the IHS's eligibility regulations, set forth at 42 C.F.R. § 136.11-14, which the tribes and tribal organizations are required to follow."[5]  (Defs.' Mot. at 25.)  The eligibility regulations provide:

---

[5]  Defendants also argue that the statutory scheme suggests that tribes are prohibited from billing because (1) "in those limited instances where Congress has authorized the IHS and tribes and tribal organizations to generate revenue through billing, Congress not only has stated so explicitly, but also has dictated the amount that can be billed"; (2) "[t]hose instances where Congress has granted contracting tribes different authority than the IHS under the ISDEAA are explicit and clear"; (3) "[b]illing will lead to enormous inequities in the delivery of health care and override Congress' stated goal of achieving parity among direct service and contracted programs and maintaining the same level of services" since "[i]t will be impossible for the IHS to fulfill [that goal] if tribes can unilaterally, and without limitation or guidelines, bill eligible Indian patients"; (4) "Congress has addressed resource deficiencies in the ISDEAA and the IHCIA, and has explicitly directed both the IHS and contracting tribes how to address insufficient resources"; and (5) "[t]here is not a single reference in the entirety of the ISDEAA and IHCIA, as well as the legislative history, that Congress intended that eligible Indians would be billed, that such billing is an appropriate source of funding for contracting tribes, how such funding will be used, how the funding will be accounted for, etc."  (Defs.' Mot. at 13, 14, 16, 18.) Plaintiff correctly notes that these arguments are misplaced because: (1) the billing authorizations that Defendants cite do not support the point Defendants are attempting to make and are therefore not relevant; (2) the statute Defendants cite (25 U.S.C. § 458aaa-7(h)) to support their assertion that Congress distinguishes between authorities of the IHS and tribes whenever such authorities are different does not support Defendants' position; (3) the requirements regarding equity and parity do not preclude or prohibit billing; (4) although Congress has established mechanisms for addressing the under-funding of the Indian health care system, it has never prohibited tribes from using resources in addition to what Congress appropriates

(continued...)

1  "Services will be made available, as medically indicated, to persons

2  of Indian descent belonging to the Indian community served by the

3  local facilities and program." 42 C.F.R. § 136.12(a). Additionally,

4  the regulations direct that, when funds are insufficient, "Priorities

5  for care and treatment, as among individuals who are within the scope

6  of the program, will be determined on the basis of relative medical

7  need and access to other arrangements for obtaining the necessary

8  care." Id. § 136.12(c). Further, the regulations relating to care

9  and treatment of ineligible individuals specifically state that those

10  individuals can be charged. Id. § 136.14(b).

11       Defendants argue "[Plaintiff's] interpretation of the

12  billing prohibition violates the eligibility regulations by altering

13  the criteria for providing health services by adding an additional

14  eligibility criteria (in the form of a financial status assessment and

15  payment requirement) for those who are otherwise eligible for such

16  services." (Defs.' Mot. at 26.) Defendants also contend that the

17  "pharmacy policy is in direct violation of the eligibility regulations

18  because its priorities for care and treatment are not based on

19  relative medical need and access to other arrangements for obtaining

20  necessary care, as required by the regulations, but rather on payment

21  for services and financial status." (Id.) Defendants contend that

22  "if a service is available, the regulations do not provide for any

23  discretion to require payment or predicate the provision of that

24  service on the patient's financial status." (Id.)

25  _____

26       [5](...continued)
     to provide health care to Indian people; and (5) the fact that
27  Congress does not specifically authorize tribes to bill does not mean
     that they are prohibited from doing so, especially since Congress
28  could have easily prohibited tribes from billing when it enacted
     § 14(c). (See Pl.'s Opp'n at 30, 31, 32, 39, 20.)

1        Plaintiff counters that the regulations describing

2   eligibility "do not mention charging, except in § 136.14, which

3   authorizes the IHS to provide emergency services to ineligible

4   individuals and to charge for those services," and although Defendants

5   attempt to "argue that § 136.14 precludes charging eligible Indians by

6   negative implication, . . . § 136.14 deals exclusively with ineligible

7   persons." (Pl.'s Opp'n at 33.) Plaintiff argues, "the 'direct

8   conflict' that Defendants assert is with Defendants' purported

9   *interpretation* of their regulations, not with any *specific provision*

10  in those regulations prohibiting charging." (Id.) Plaintiff contends

11  the eligibility regulations do not bar charging. (Id. at 34, 35.)

12        The Tribe's pharmacy policy is not in violation of the

13  eligibility regulations and does not alter eligibility criteria. "All

14  of the eligible individuals who will receive pharmacy services under

15  the Tribe's policy are still eligible for IHS services. Charging a

16  co-pay does not terminate their eligibility under the regulations."

17  (Pl.'s Reply at 12.) Eligibility is distinct from availability or

18  accessibility, and requiring a beneficiary to pay a co-pay does not

19  create an eligibility criterion. See 42 C.F.R. §§ 136.11, 12; accord

20  Lincoln v. Vigil, 508 U.S. 182, 198-99 (1993) (distinguishing between

21  denial of access and eligibility). For the reasons stated, Defendants

22  have not shown by clear and convincing evidence that their decision to

23  reject Plaintiff's final offer on the ground that § 14(c) prohibits

24  tribes from billing was valid.

25        Defendants also argue that, even if § 14(c) does not

26  prohibit Plaintiff from billing, the rejection of the final offer was

27  lawful since "the IHS can only transfer such authority as it has

28  itself, or as is otherwise provided by law, to a contracting tribe

1  pursuant to a contract under the ISDEAA," and § 14(c) prohibits the

2  IHS from billing eligible beneficiaries.  (Defs.' Mot. at 8-9.)

3  Defendants argue that "[p]ursuant to [25 U.S.C. §] 458aaa-4(b)(1) and

4  458aaa-4(b)(2), a tribe may only contract for those programs that the

5  IHS is legally authorized to provide[, and] the explicit language of

6  these provisions limits the [PSFAs] to those the IHS is legally

7  authorized to administer."  (Defs.' Mot. at 10.)

8          Section 458aaa-4(b) of the ISDEAA establishes what may be

9  included in a Title V Funding Agreement.  25 U.S.C. § 458aaa-4(b).  It

10  authorizes a tribe to administer PSFAs "that are carried out for the

11  benefit of Indians because of their status as Indians without regard

12  to the agency or office of the Indian Health Service within which the

13  program, service, function or activity (or portion thereof) is

14  performed."  Id. § 458aaa-4(b)(1).  Further, 458aaa-4(b)(2) restates

15  this authority by providing that PSFAs "with respect to which Indian

16  tribes or Indians are primary or significant beneficiaries,

17  administered by the Department of Health and Human Services through

18  the Indian Health Service and all local, field, service unit, area,

19  regional, and central headquarters or national office functions so

20  administered under the authority of" the enumerated statutes may be

21  included in an FA.  Id. § 458aaa-4(b)(2).

22          Plaintiff argues that Defendants' reliance on § 458aaa-

23  4(b)(1) and (2) "is misplaced and directly inconsistent with § 458aaa-

24  5(e) which authorizes a tribe to 'redesign' programs 'in any manner

25  which the tribe deems to be in the best interest of the health and

26  welfare of the Indian Community served . . . ' unless the redesign

27  denies services to otherwise eligible Indians."  (Pl.'s Opp'n at 25.)

28  Plaintiff contends that § 458aaa-4(b)(1) "makes no reference to the

manner in which the program is operated," and "the words 'administered by the [DDHS] through the [IHS] and all local . . . functions so administered' in § 458aaa-4(b)(2) do not address the manner in which a program is carried out by IHS, but are used to distinguish between (1) IHS programs and (2) programs of *other* DHHS agencies 'with respect to which Indian tribes or Indians are primary or significant beneficiaries' but which Congress did not intend to include in Title V." (Id.)

Defendants rejoin that § 458aaa-4(b)(1) and (2) "are not limited to the programs a tribe is authorized to operate [and instead] set forth the 'programs, services, <u>functions</u>, and <u>activities</u>' that a tribe is authorized to administer." (Defs.' Mot. at 12.) Defendants also contend that § 458aaa-4(b)(1) and (2) prohibit tribes from billing eligible Indian patients since the ISDEAA states that PSFAs "shall include administrative functions of the Department of the Interior or the Department of Health and Human Services . . . that support the delivery of services to Indians," and since "[b]illing or charging eligible patients clearly falls into the category of an administrative 'function' or 'activity.'" (<u>Id.</u> at 12-13.)

Plaintiff counters that Congress's authorization for tribes to assume administrative functions of DDHS "was meant to *expand* tribal authority, not, as Defendants argue, to constrict it, and this provision certainly does not prevent tribes from carrying out administrative functions the best way they deem fit." (Pl.'s Opp'n at 26.) Plaintiff also rejoins that "the purpose of the 'functions' and 'activities' language was to address IHS resistance to carrying out Congress's policy of tribal self-determination, not to restrict self-

1  determination by prohibiting tribes from billing beneficiaries." (<u>Id.</u>

2  at 28.)

3          Sections 458aaa-4(b)(1) and (2) serve to describe what PSFAs

4  the tribe may assume self-governance over.  Under an ISDEAA Title V

5  FA, the IHS does not contract with or delegate its authority to a

6  tribe; rather, it turns over the provision of federal PSFAs to that

7  tribe.[6]  As Title V makes clear, the Tribe is not required to operate

8  a PSFA in the same manner as the IHS.[7]  Therefore, § 458aaa-4(b)(1)

9  and (2) do not establish, as Defendants contend, that the Tribe may

10 not engage in billing since the IHS cannot engage in billing.[8]

_____

[6]  The IHS has not shown that Congress has prohibited billing in
the program at issue here.

[7]  Section 458aaa-4(b)(1) states that a tribe may operate these
programs "without regard to the agency or [IHS]" and § 458aaa-5(e)
explicitly allows a tribe to redesign programs "in any manner it deems
to be in the best interest of the health and welfare of the Indian
community being served" so long as it does not deny services to
eligible population groups.  In addition, § 458aaa-16(e) provides that
"[u]nless expressly agreed to by the participating Indian tribe in the
compact or funding agreement, the participating Indian tribe shall not
be subject to any agency circular, policy, manual, guidance, or rule
adopted by the [IHS]" except for eligibility regulations.
     Additionally, "the Secretary shall interpret all Federal laws
. . . in a manner that will facilitate- (1) the inclusion of programs,
services, functions, and activities (or portions thereof) and funds
associated therewith, in the agreements entered into under this
section; (2) the implementation of compacts and funding agreements
entered into under this part; and (3) the achievement of tribal health
goals and objectives."  25 U.S.C. § 458aaa-11(a).  Further, Title V
was designed to "give Indian tribes who meet certain criteria the
right to take over the operation of IHS functions [thereby] remov[ing]
needless and sometimes harmful layers of federal bureaucracy that
dictate Indian affairs.  H.R. Rep. No. 106-477, at 65-66 (Nov. 17,
1999), <u>reprinted in</u> 2000 U.S.C.A.A.N. 573, 599-600; <u>see also</u> 25 U.S.C.
§ 458aaa-6(e) ("The Secretary shall carry out [Title V] in a manner
that maximizes the policy of tribal self-governance . . . .").

[8]  Nothing in this order addresses whether tribes may bill under
Title I of the ISDEAA.

1    Accordingly, Defendants have not shown, by clear and

2    convincing evidence, that their decision to reject Plaintiff's final

3    offer on the ground that the ISDEAA prohibited the IHS from accepting

4    the final offer since the Tribe intended to bill for pharmacy services

5    was valid.

6    Therefore, Plaintiff's summary judgment motion is granted.

7    C.    Whether Plaintiff Is Entitled to Injunctive/ Mandamus Relief

8    Plaintiff argues that it is entitled to injunctive and

9    mandamus relief to protect its rights under Title V of the ISDEAA.

10    (Pl.'s Mot. at 26.)  Plaintiff contends that because it seeks a

11    statutorily authorized injunction (under 25 U.S.C. § 450m-1(a)),

12    rather than an equitable injunction, it "is entitled to the injunctive

13    and mandamus relief requested without a balancing of any equities."

14    (Id. at 27.)

15    25 U.S.C. § 450m-1(a) provides:

16    [D]istrict courts may order appropriate relief
     including . . . injunctive relief against any
17    action by an officer of the United States or any
     agency thereof contrary to this subchapter or
18    regulations promulgated thereunder, or mandamus to
     compel an officer or employee of the United
19    States, or any agency thereof, to perform a duty
     provided under this subchapter or regulations
20    promulgated hereunder (including immediate
     injunctive relief to reverse a declination finding
21    under section 450f(a)(2) of this title or to
     compel the Secretary [of the United States
22    Department of Health and Human Services] to award
     and fund an approved self-determination contract).

23

24    25 U.S.C. § 450m-1(a) (made applicable to Title V by 25 U.S.C.

25    § 458aaa-10(a)).  "The traditional requirements for equitable relief

26    need not be satisfied [when a statute] expressly authorizes the

27    issuance of an injunction."  United States v. Estate Preservation

28    Servs., 202 F.3d 1093, 1098 (9th Cir. 2000) (citing Trailer Train Co.

1  _v. State Bd. of Equalization_, 697 F.2d 860, 869 (9th Cir. 1983));

2  _Atchison, Topeka & Santa Fe Ry. v. Lennen_, 644 F.2d 255, 260 (10th

3  Cir. 1981) (per curiam); _Star Fuel Marts, LLC v. Sam's East, Inc._, 362

4  F.3d 639, 651-52 (10th Cir. 2004); _Nat'l Wildlife Fed. v. Burlington_

5  _N. R.R., Inc._, 23 F.3d 1508, 1511 (9th Cir. 1994) (finding that in

6  order to get an injunction under the Endangered Species Act ("ESA"), a

7  "plaintiff must make a showing that a violation of the ESA is at least

8  likely in the future"); _Crownpoint Inst. of Tech. v. Norton_, Civ. No.

9  04-531 JP/DJS, Findings of Fact and Conclusions of Law at 26, ¶ 30

10  (stating, in an ISDEAA case involving Title I, that where a tribal

11  organization sought an injunction pursuant to 25 U.S.C. § 450m-1(a),

12  "[t]he specific mandamus relief authorized by ISDA relieves [the

13  plaintiff tribal organization] of proving the usual equitable elements

14  including irreparable injury and absence of an adequate remedy at

15  law.").

16        The appropriate relief to which Plaintiff is entitled

17  follows:  Defendants are permanently enjoined from rejecting the

18  Tribe's final offer with respect to the Tribe's pharmacy services

19  program on the grounds and with the conditions asserted in the Grim

20  Letter; and are required to continue providing such funding as is

21  authorized under the Compact and Calendar Year 2007 FA (as proposed by

22  Plaintiff in its final offer and which the February 28, 2007 Order

23  directed the parties to execute) without imposing any condition that

24  would prevent Plaintiff from charging beneficiaries for services.  The

25  ///

26  ///

27  ///

28

1    Clerk of the Court shall enter judgment in favor of Plaintiff in

2    accordance with this Order.

3            IT IS SO ORDERED.

4    Dated:  January 2, 2008

5

6    _____
     GARLAND E. BURRELL, JR.
7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28