UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior, U.S. Department of the Interior, *et al.* <br><br> Defendant. | Civil Action No. 06-2173 (CKK) |

**MEMORANDUM OPINION**
(February 11, 2008)

Plaintiff Aleutian Pribilof Islands Association, Inc. ("APIA") has filed this action challenging the decision of the Secretary of the Interior, together with the Bureau of Indian Affairs ("BIA") and Office of Self-Governance ("OSG") (collectively, "the Secretary"), to provide certain monies to The Aleut Corporation ("TAC") that had previously been provided on a yearly basis to APIA. The Parties have filed Cross-Motions for Summary Judgment on the question of whether that decision complied with federal statutes, regulations, and BIA internal policy. Defendants have also filed a Partial Motion to Dismiss based on APIA's alleged failure to exhaust administrative remedies. After thoroughly reviewing the Parties' submissions, including the attachments thereto, applicable case law, statutes, and regulations, the Court shall deny Defendants' [20] Partial Motion to Dismiss, grant in part and hold in abeyance in part Plaintiff's [13] Motion for Summary Judgment, and deny in part and hold in abeyance in part Defendants' [19] Motion for Summary Judgment, for the reasons that follow.

# I. BACKGROUND

The Indian Self-Determination and Education Assistance Act ("ISDEAA") allows Indian tribes or tribal organizations to receive funds from the federal government to carry out various programs, functions, services, and activities ("PFSAs"). *See* 25 U.S.C. §§ 450 *et seq.* Beginning in fiscal year 1996, APIA's thirteen member tribes authorized APIA, by tribal resolution, to enter self-governance compacts with the Secretary to carry out a variety of PFSAs.[1]  Pl.'s Stmt. ¶ 2. As part of these compacts, APIA requested responsibility and funding for PFSAs related to section 14(h)(1) of the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. § 1613(h)(1) (hereinafter "Section 14(h)(1) funds" or the "Section 14(h)(1) program"). *Id.* ¶ 3. Defendants approved APIA's requests for Section 14(h)(1) funds each fiscal year from 1996 through 2005. *Id.* For FY 2006, however, the Secretary declined APIA's request for Section 14(h)(1) funds, indicating that it would instead provide the funds to TAC. *Id.* ¶ 12. The present lawsuit concerns the decision by Defendants to provide the Section 14(h)(1) funds to TAC instead of APIA for FY 2006, and its intent to do so in subsequent fiscal years.

ANSCA was implemented by Congress in 1971 to provide "a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims."  43 U.S.C.

---

[1] This Court strictly adheres to the text of Local Civil Rule 56.1 when resolving motions for summary judgment. *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 before applying it to the case). Although discretionary in the text of the Local Civil Rule 56.1, in resolving the present summary judgment motion, this Court "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 56.1. Thus, in most instances the Court shall cite to Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") or Defendant's Statement of Material Facts ("Defs.' Stmt.") unless a statement is contradicted by the opposing Party. The Court shall also cite directly to the record, where appropriate, to provide additional information not covered in either of the Parties' Statements.

§ 1601(a). To that end, Congress created two types of private corporate entities to receive the land and money provided to Alaska Natives – Regional Corporations and Village Corporations. Section 1606 of ANCSA created Regional Corporations by dividing Alaska into twelve regions, and enrolling all living Alaska Natives in a Regional Corporation determined by where they resided on the date of the 1970 census enumeration. *Id.* § 1604(b). Section 1607(a) of ANCSA created Village Corporations by setting forth criteria by which Native residents could gain such a status. 43 U.S.C. § 1607(a). TAC, the tribe who received the Section 14(h)(1) funds that APIA claims it should have received, is the ANCSA Regional Corporation for the Aleutian Region. *See* Pl.'s Stmt. ¶ 4. APIA, the Plaintiff in this case, is a nonprofit corporation representing thirteen Village Corporations in the Aleut Region. *See Id.* ¶ 1.

The Section 14(h)(1) program, the ANCSA provision at the center of the present dispute, authorizes the Secretary to "withdraw and convey to the appropriate Regional Corporation fee title to existing cemetery sites and historical places." *Id.* § 1613(h)(1). Pursuant to the statute's implementing regulations, the appropriate Regional Corporation must file an application with the Board of Land Management ("BLM") for the conveyance of the cemetery site or historical place. *See* 43 C.F.R. § 2653.5(f). The BLM, in turn, forwards the application to the BIA "for investigation, report, and certification." *Id.* § 2653.5(h).

TAC filed Section 14(h)(1) applications with the BLM in the 1970s. Defs.'s Stmt. ¶ 2. The BIA initiated many of the activities associated with the applications, but had not completed its tasks prior to 1995. *Id.* ¶ 3. At that point, APIA, on behalf of thirteen federally recognized tribal governments in the Aleut region, entered into a Tribal Self-Governance Compact that authorized APIA to carry out a broad range of PFSAs for the beneficiaries in the region,

3

including the BIA-assigned tasks related to the Section 14(h)(1) program. Pl.'s Stmt. ¶ 3. The BIA approved APIA's request for Section 14(h)(1) funds and began providing the APIA with the same. *Id.*

On August 7, 1998, APIA executed a Memorandum of Agreement with TAC permitting the two parties to "jointly conduct certain cultural heritage, preservation and related activities," including those related to the Section 14(h)(1) program. Pl.'s Stmt. ¶ 5. Notwithstanding this agreement, the Secretary continued to provide APIA with the Section 14(h)(1) funds. *Id.* ¶ 6. In 2005, however, the TAC Board of Directors passed a resolution stating that it no longer wanted APIA to carry out ANCSA-related work on TAC's behalf.[2] Defs.' Stmt. ¶ 9.

On October 3, 2005, the BIA declined APIA's FY 2006 request for Section 14(h)(1) funds and indicated that it would provide those funds to TAC. Pl.'s Stmt. ¶ 12. The BIA failed to include a written explanation of its decision, and it did not notify APIA of its right to appeal or the procedures for doing so. *Id.* ¶ 13. APIA requested an informal conference to discuss the BIA's decision, at which Deputy Regional Director Charles Bunch issued a recommended decision upholding the transfer of the 14(h)(1) funds from APIA to TAC. *Id.* ¶ 14. APIA then filed an appeal with the Interior Board of Indian Appeals ("IBIA"). The case was assigned to an Administrative Law Judge ("ALJ") who issued a recommended decision upholding the BIA's decision. *Id.* ¶ 15. Although APIA sought to file objections to the ALJ's recommended decision, the IBIA dismissed its objections as untimely (the objections were not filed within the 30 days

---

[2] TAC passed its resolution after having apparently reviewed a memorandum drafted by the Office of the Regional Solicitor which suggested that Regional Corporations take a more active role in Section 14(h)(1) conveyance-related work. *See* Defs.' Stmt. ¶ 8; Defs.' Mot. for Summ. J., Ex. 15 at 1-5 (Regional Solicitor Memorandum)

prescribed by the applicable regulations). *Id.* This lawsuit followed on December 21, 2006.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). Although a court must accept as true all of the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), the court need not accept legal conclusions as true, *Boyd v. O'Neill*, 273 F. Supp. 2d 92, 95 (D.D.C. 2003). A court may also consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case. *See Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997).

### B. Motion for Summary Judgment

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the opposing party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324

   Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ.

P. 56(e)) (emphasis in original).

    C.    *ISDEAA and APA*

APIA's Complaint asserts claims under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. §§ 450m-1(a), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). The Parties dispute the standard of review the Court should apply to Plaintiff's ISDEAA claims. For the reasons explained below, the Court does not reach the merits of APIA's ISDEAA claims in this Memorandum Opinion, and therefore does not resolve the Parties' dispute concerning the applicable standard of review under that statute.

The Court does reach the merits of APIA's APA claims. Pursuant to the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. 29, 43 (1983) (internal citations and quotation marks omitted); *see also Cellco P'ship v. Fed. Commc'ns Comm'n*, 357 F.3d 88, 93-94 (D.C. Cir. 2004) (noting "arbitrary and capricious" review is "highly deferential . . . presum[ing] the validity of agency action . . . [which] must [be] affirm[ed] unless the Commission failed to consider relevant factors or made a clear error in judgment."). Moreover, the Court "must affirm if a rational basis for the agency's decision exists." *Bolden v. Blue Cross*

*& Blue Shield Ass'n*, 848 F.2d 201, 205 (D.C. Cir. 1988). The degree of deference a court should pay an agency's construction is, however, affected by "the thoroughness, validity, and consistency of an agency's reasoning." *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981).

### III. DISCUSSION

    A.    *Motion to Dismiss Based on Exhaustion of Administrative Remedies*

Defendants filed a Partial Motion to Dismiss arguing that Plaintiff failed to exhaust its administrative remedies as to its fiscal year 2006 claims. The Court is unpersuaded by this argument.

The ISDEAA and its implementing regulations allow a tribal organization that is dissatisfied with the denial of a funding proposal to proceed with a judicial lawsuit or initiate administrative proceedings to review the decision. *See* 25 C.F.R. § 900.153. If the tribe elects the latter option, it may request an informal conference with the office of the person whose decision it is appealing. *Id.* at § 900.154. If the tribe remains dissatisfied following the informal conference, it may appeal the decision to the Interior Board of Indian Appeals. *Id.* § 900.157. Following a hearing by an ALJ and the issuance of a recommended decision, the tribe may file objections to the decision with the IBIA. *Id.* §§ 900.166, 167.

In the present case, APIA elected to pursue administrative review of the BIA's decision to deny the funds for fiscal year 2006. It attended an informal conference with Deputy Regional Director Charles Bunch. *See* Pl.'s Stmt. ¶ 14. Following Mr. Bunch's decision upholding the denial of APIA's request for Section 14(h)(1) funds, APIA filed an appeal with the IBIA. *Id.* ¶ 15. The matter was assigned to an ALJ who issued a recommended decision upholding the

denial of APIA's funding request. *Id.* APIA filed objections with the IBIA on October 31, 2006, but the IBIA dismissed the objections as untimely on November 3, 2006. *Id.*; Defs.' Response to Pl.'s Stmt. ¶ 15.

Defendants argue that APIA's failure to file timely objections to the ALJ's recommended decision "deprived defendants of an opportunity 'to exercise [their] discretion and expertise on the matter, and to make a factual record to support [their] decision.'" Defs.' Mot. for Summ. J. at 13 (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). According to Defendants, although APIA could have filed a judicial lawsuit following BIA's initial decision to deny APIA's request for Section 14(h)(1) funds, APIA's decision to pursue administrative review of that decision bound APIA to exhaust all possible avenues for administrative review prior to initiating a judicial lawsuit. Having failed to file timely objections, Defendants argue that APIA has lost its right to file suit as to the Section 14(h)(1) funds for FY 2006.

Defendants' argument is unsupported by the applicable regulations. Pursuant to 25 C.F.R. § 900.166, an ALJ's recommended decision is not "final" if a party files objections within 30 days. This provision also provides that "[i]f no party files a written statement of objections within 30 days, the recommended decision shall become final." Because the APIA did not file a written statement of objections within 30 days (a fact which is undisputed), the ALJ's recommended decision became final by operation of the regulations. Such final agency decisions are subject to judicial review. *See* 5 U.S.C. § 704 ("agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency

9

authority").

The applicable statute and regulations also use the permissive "may" in the context of a tribal organization's possible avenues for administrative review. *See* 25 U.S.C. 450f(b)(3) (stating that a tribe "*may*, in lieu of filing [an appeal to the Secretary], exercise the option to initiate an action in Federal district court. . .") (emphasis added); 45 C.F.R. § 900.153 (stating that a tribe "may" request an informal conference); *Id.* § 900.157 (stating that a tribe "may" file an appeal of the recommended decision and the report of the informal conference); *Id.* § 900.167(b) (stating that a tribe "may" file objections to the ALJ's recommended decision). The wording of these statutes is inconsistent with the argument that the APIA failed to exhaust its administrative remedies by failing to pursue all permissive avenues for administrative review. *See Darby v. Cisneros*, 509 U.S. 137, 147 (1993) ("[APA section 704] explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of [section 704] for courts to require litigants to exhaust optional appeals as well"); *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975) (holding that a statute mandates exhaustion only when it contains "[s]weeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion. . .").

Finally, the Court notes that Defendants' assertions that it has lost the opportunity to build a factual record are unpersuasive. Defendants have submitted the lengthy opinion of the ALJ as an attachment to their Cross-Motion, and both Parties have referenced the extensive administrative record throughout their submissions. Moreover, pursuant to 25 U.S.C. § 450f(b)(3), APIA could have filed a judicial lawsuit immediately following the denial of the requested Section 14(h)(1) funds. In that circumstance, Defendants would not have been

provided with an opportunity to "build a factual record," so Defendants have not "lost" anything based on APIA's having pursued less than all of its potential administrative review opportunities. For these reasons, the Court rejects Defendants' argument that APIA failed to exhaust its administrative remedies for its FY 2006 funding request, and shall deny Defendants' Partial Motion to Dismiss.

      B.    *Cross-Motions for Summary Judgment Based on the Secretary's Decision to Partially Reject APIA's FY 2006 Funding Request*

          1.    <u>Declination of Funding Requests</u>

The ISDEAA limits the Secretary's discretion to decline funding proposals. Pursuant to 25 U.S.C. § 450(f), "upon the request of an Indian tribe by tribal resolution," the Secretary must, within 90 days after receiving the proposal, "approve the proposal and award the contract unless the Secretary provides written notification to the applicant that contains a specific finding that clearly demonstrates" that one of five statutory criteria justifies denial of the proposal ("Declination Criteria"):

    (A)    the service to be rendered to the Indian beneficiaries of the particular program or function to be contracted will not be satisfactory;
    (B)    adequate protection of trust resources is not assured;
    (C)    the proposed project or function to be contracted for cannot be properly completed or maintained by the proposed contract;
    (D)    the amount of funds proposed under the contract is in excess of the applicable funding level for the contract, as determined under section 106(a); or
    (E)    the program, function, service, or activity (or portion thereof) that is the subject of the proposal is beyond the scope of programs, functions, services, or activities covered under paragraph (1) because the proposal includes activities that cannot lawfully be carried out by the contractor.

25 U.S.C. §§ 450f(a)(1), (a)(2); *see also* 25 C.F.R. § 900.22 ("[t]he Secretary may only decline to approve a proposal for one of five specific reasons").

Where the Secretary has approved a tribe's funding proposal in a previous fiscal year, the Secretary's discretion to deny the same proposal in subsequent years is even more limited. Under the ISDEAA, the Secretary must approve a subsequent proposal unless it is not "substantially the same as the prior annual funding agreement." 25 C.F.R. § 900.32. If, however, "there is a disagreement over the availability of appropriations," or if there is a portion of the annual funding agreement proposal that is not substantially the same as in prior years, the Secretary must consider the request under the Declination Criteria. *Id.*

If the Secretary denies a tribe's funding proposal, it must provide "a detailed explanation of the reason for the decision," including "a specific finding that clearly demonstrates that (or is supported by a controlling legal authority that) one of [the Declination Criteria] exists." 25 C.F.R. § 900.29(a). In subsequent administrative proceedings or judicial lawsuits reviewing the Secretary's decision, the burden of proof is on the Secretary "to establish by clearly demonstrating the validity of the grounds for declining the contract proposal (or portion thereof)." 25 U.S.C. § 450(f)(e)(1).

In the present case, it is undisputed that Defendants did not follow these procedures. *See* Pl.'s Stmt. ¶ 13 ("[a]t no point prior to the initiation of the appeal . . . did BIA send APIA a written explanation of the decision to withhold the ANCSA funding, nor did it notify APIA of its right to appeal, or the procedures for doing so"); Defs.' Mot. for Summ. J. at 17 & n. 14 (arguing that "utilization of the statutory declination process" was not required, and therefore, was not followed). Although the Parties brief a host of other issues in their Motions, the question before the Court is whether the Secretary's decision not to apply the Declination Criteria and related regulations to APIA's request for Section 14(h)(1) funds was clearly erroneous and therefore

arbitrary and capricious.

        2.      Section 14(h)(1) Funding

ANCSA Section 14(h)(1) authorizes the Secretary to "withdraw and convey to the appropriate Regional Corporation fee title to existing cemetery sites and historical places." 43 U.S.C. § 1613(h)(1). Prior to such a conveyance, however, the appropriate Regional Corporation must submit an application to the BLM. *See* 43 C.F.R. § 2653.5(f). The BLM, in turn, forwards the application to the BIA "for investigation, report, and certification." *Id.* § 2653.5(h). Beginning in fiscal year 1996, the BIA contracted with APIA to perform these functions for certain locations in the Aleut region. *See* Pl.'s Stmt. ¶ 3. APIA received those funds, on a yearly basis, through FY 2005, after which the Secretary declined APIA's request for the funds and provided them instead to TAC. *Id.* ¶ 12.

The Secretary took the position (and has taken the position in this litigation) that it was not required to apply the Declination Criteria to APIA's funding proposal (nor the more stringent regulations associated with declination of funding requests that have been approved in previous fiscal years) because APIA was not authorized to receive the Section 14(h)(1) funds. Specifically, the Secretary argues that

> the declination process is only triggered when a legally sufficient tribal resolution is received. Because the village-based tribes, whose resolutions support BIA and OSG contracting with non-tribe APIA, are not the beneficiaries of the [Section] 14(h)(1) program, their general resolutions do not support contracting of that program, and do not require utilization of the statutory declination process.

Defs.' Mot. for Summ. J. at 17. *See also* 25 U.S.C. 450(f)(a)(1) (stating that the Declination Criteria is implicated when the Secretary receives "the request of any Indian tribe by tribal resolution"); 25 C.F.R. § 900.8(d) (stating that resolution must be "from the Indian tribe(s) to be

served"). Accordingly, whether the BIA should have used the Declination Criteria and related regulations depends on whether the BIA was correct that TAC was the only beneficiary of the Section 14(h)(1) funds.[3] The ALJ who ruled on APIA's appeal agreed with the BIA that the regulations were not implicated because APIA's thirteen member tribes were not beneficiaries of the Section 14(h)(1) funds. *See* Defs.' Mot. for Summ. J., Ex. 1 at 15 (ALJ Recommended Decision). Because the Court finds that there is no support in the record for a finding that TAC is the only beneficiary of the Section 14(h)(1) funds, the Court holds that the BIA's decision not to apply the Declination Criteria and related regulations was clearly erroneous.

The Secretary's position finds no support in the language of Section 14(h)(1). *See* 43 U.S.C. § 1613(h)(1)(A) (authorizing the Secretary to "withdraw and convey to the appropriate Regional Corporation fee title to existing cemetery sites and historical places"). According to Defendants, because the statute allows Regional Corporations to take title to the properties and "makes no mention of Alaska Tribes or their members," Regional Corporations are the only beneficiaries of the Section 14(h)(1) funds. That reasoning is untenable. The Section 14(h)(1) funds requested by APIA concern the BIA-assigned tasks of investigating, reporting, and certifying information concerning the sites – not tasks associated with holding title to such sites. The statute is utterly silent with respect to whether TAC, the APIA, or any other tribe should be considered the beneficiary of the funds associated with the BIA-assigned tasks. Moreover, entities other than TAC are apparently capable of accomplishing these tasks, as the Secretary

---

[3] In its Motion for Summary Judgment, the Secretary argues in passing that the Declination Criteria should not apply where, as here, it did not *decline* a request for 14(h)(1) funds but merely *transferred* such funds to another entity. *See* Defs.' Mot. for Summ. J. at 2. The Secretary cites no authority for this argument, and the Court finds that such a distinction is unwarranted by the applicable statutes and regulations.

provided the funds initially to APIA for ten years prior to transferring them to TAC.[4]

Even though the Secretary takes the position that TAC is the only tribe benefitting from the ANCSA 14(h)(1) program, its own arguments undermine that position. *See* Defs.' Mot. for Summ. J. at 20 (arguing that TAC is "the *primary* beneficiary") (emphasis added); Defs.' Reply at 10 (arguing that TAC is the "sole *direct* beneficiary") (emphasis added); Defs.' Reply at 16 (arguing that TAC is "*a* direct beneficiary") (emphasis added). In response to APIA's argument that the Section 14(h)(1) program benefits the village tribes that provide it with authority to contract for funds, the Secretary even concedes the following:

> While it is true, in the very broadest sense, that the residents of the villages which authorize APIA to contract with the BIA for a wide variety of programs do benefit indirectly from the Congressional mandate in ANCSA § 14(h)(1) that Regional Corporations select, acquire and retain remote cemetery and historical sites in protected status, it is only reasonable that the corporations be recognized as the sole direct beneficiaries of the 14(h)(1) program for ISDEAA contracting purposes.

Defs.' Mot. at 23. These qualifications (e.g., primary or direct beneficiaries) are not present in, nor supported by, 25 U.S.C. § 450(f) and its implementing regulations, and directly undermine the Secretary's argument that it believed TAC to be the only beneficiary of 14(h)(1), without qualification. Moreover, this type of *ex ante* determination is inconsistent with a Congressional statutory scheme that limits the Secretary's discretion to deny such proposals and to justify its

---

[4] APIA seeks to support its claims by referencing a colloquy between Senators Ted Stevens and Alan Bible on the Senate floor several days before ANCSA was enacted. *See* Pl.'s Mot. for Summ. J. at 23. According to APIA, the Senators' statements suggest that village tribes are the proper beneficiaries of Section 14(h)(1) funds. *Id.* The Court declines to give any significant weight to this excerpt of the ANCSA legislative history, as the statements do not directly confront the instant dispute (i.e., the statements appear to relate more to possession of these historical sites rather than identification of which tribes are properly considered beneficiaries of Section 14(h)(1)), and there is no evidence that any other members of Congress heard the colloquy or possessed similarly held views of the legislation.

decisions "by clearly demonstrating the validity of the grounds" for doing so based on one of five statutorily-enumerated critera. 25 U.S.C. § 450(f)(1). In the present case, by deciding not to apply its Declination Criteria and related regulations, the Secretary essentially relieved itself of the burden of providing a proper justification for its actions.[5]

Finally, the record does not support the argument that no other entities or persons other than TAC and its members benefit from the Section 14(h)(1) program. The BIA describes the ANCSA program as supporting "the Departmental goal of serving *communities* by fulfilling Indian fiduciary trust responsibilities by protecting cultural and natural heritage resources." Pl.'s Mot. for Summ. J., Ex. B at 47-48 (BIA FY 2006 Budget Justification) (emphasis added). The Memorandum of Agreement between APIA and TAC contained similar language, providing that they would "jointly conduct certain cultural heritage, preservation and related activities" including those related to the ANCSA 14(h)(1) process, and use 14(h)(1) funding to "fulfill[] Indian fiduciary trust responsibilities by protecting cultural and natural heritage resources." Pl.'s Opp'n at 15. The communities referenced by the BIA, and the Alaskan Natives who support the preservation of such sites, appear to benefit from the 14(h)(1) program irrespective of their

---

[5] In its Reply to APIA's Opposition, the Secretary questions whether all of APIA's thirteen member tribes have properly authorized APIA to contract with the BIA for Section 14(h)(1) funds. *See* Defs.' Reply at 9-10. The Court declines to consider this issue for two reasons. First, Plaintiff's Statement of Material Facts stated that APIA contracted for the funds "as authorized by the tribal governments it represents" and that the thirteen member tribes "have authorized APIA, by tribal resolution, to enter self-governance compacts with the United States." Pl.'s Stmt. ¶¶. Defendant acknowledged these statements as "[u]ndisputed." *See* Defs.' Response to Pl.'s Stmt. ¶¶ 2, 3. Defendant's new argument on Reply is inconsistent with that admission. Second, it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief. *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992). That is especially appropriate where, as here, the Parties have had extensive opportunities to brief their arguments comprehensively, both at the administrative level and in the present proceeding.

membership in TAC, the thirteen member tribes authorizing APIA's activities, or any other entity.

For these reasons, Defendants failed to meet their burden with respect to demonstrating APIA was not entitled to the Section 14(h)(1) funds for fiscal year 2006, as there is no support in the record for a finding that TAC is the only beneficiary under that Section. Accordingly, the BIA's decision not to apply its Declination Criteria and other applicable regulations to APIA's request was arbitrary and capricious, and the appropriate remedy under the APA is to remand to the BIA for further consideration. *See Feezor v. Babbitt*, 953 F. Supp. 1, 7 (D.D.C. 1996) ("IBIA did not deal with the additional questions presented by the individual appellants because it did not recognize their standing. The accompanying order accordingly remands this matter to the Department of Interior for consideration and explanation.").

C.    *Further Proceedings*

Both Parties invite the Court to go beyond a remand to the BIA and decide, under the ISDEAA, whether TAC or APIA is the proper recipient of the Section 14(h)(1) funds. The Court declines this invitation at this point. The BIA must decide, in the first instance, whether to approve or decline APIA's request for Section 14(h)(1) funds after applying the appropriate statutes and regulations. While Defendants suggest in a footnote that a remand would likely result in denial of APIA's funding request, that statement appears to be grounded in the erroneous belief that TAC is the only beneficiary of Section 14(h)(1) funds. The BIA must examine APIA's request for Section 14(h)(1) funds having been disabused of that belief.[6]

---

[6] Consistent with the foregoing analysis, the Court expressly does not decide in this Memorandum Opinion whether and to what extent the BIA should apply its contracting order of precedence or a temporal order of preference when applying its Declination Criteria and related

Because the Court shall remand this case, it shall hold in abeyance the portions of the Parties' Motions relating to Plaintiff's claims under the ISDEAA, 25 U.S.C. §§ 450m-1(a), and stay this case until the BIA issues its decision concerning APIA's request for 14(h)(1) funds. Following the BIA's decision, the Parties shall file a Joint Status Report with the Court indicating how they want to proceed and include a proposed briefing schedule, if necessary.

### IV.  CONCLUSION

For the reasons set forth above, the Court shall deny Defendants' [20] Partial Motion to Dismiss, grant in part and hold in abeyance in part Plaintiff's [13] Motion for Summary Judgment, and deny in part and hold in abeyance in part Defendants' [19] Motion for Summary Judgment.  This case shall be stayed until the BIA issues its decision concerning APIA's request for Section 14(h)(1) funds, a period which shall not exceed 90 days.  The Parties shall file a Joint Status Report with the Court within 7 business days of a decision issued by the BIA indicating how they want to proceed, including submission of a proposed briefing schedule, if necessary. An appropriate Order accompanies this Memorandum Opinion.

Date:    February 11, 2008

                                                 /s/
                                             COLLEEN KOLLAR-KOTELLY
                                             United States District Judge

---

regulations on remand.