UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALEUTIAN PRIBILOF ISLANDS | ) | |
| ASSOCIATION, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-2173 (CKK) |
| | ) | |
| DIRK KEMPTHORNE, | ) | |
| Secretary of the Interior, | ) | |
| United States Department of the Interior, et al., | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' REPORT TO THE COURT AND OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION**

## I.  INTRODUCTION

In response to the Court's February 11, 2008 Memorandum Opinion, and in order to

formulate a position on plaintiff Aleutian Pribilof Islands Association, Inc.'s (APIA's) February

15, 2008 Motion for Partial Reconsideration, Defendants undertook to determine the current

status of the Alaska Native Claims Settlement Act (ANCSA) § 14(h)(1), 43 U.S.C. § 1613(h)(1),

funding for the Aleut Region. In order to accurately determine the current status of the 2006 and

2007 funding, ANCSA Program Manager Ken Pratt made an inquiry to Roger Drapeaux,

Director of the Division of Native Services in the Alaska Region, who also serves as liaison with

the Office of Self-Governance which formally approves APIA's annual funding agreements.

Further inquiry was then made to Matt Kallappa of the Office of Self Governance's (OSG's)

Northwest Field Office.  Because the information uncovered was not as anticipated, and is at

odds with the state of affairs described in APIA's Motion for Partial Reconsideration, Defendants

begin with a report on the current status of the funding with which APIA's motion concerns

itself.

<u>Report on Current Status of APIA Compact and Annual Funding Agreements (AFAs)</u>
<u>covering the ANCSA § 14(h)(1) Program</u>

APIA's February 14, 2008 motion is based on the premise that APIA has not received any of the ANCSA § 14(h)(1) funding it proposed to receive in any year because the amount of funds proposed for the 2006 ANCSA § 14(h)(1) program was omitted from its 2006 AFA by the Office of Self-Governance. Before researching the matter, Defendants were operating on the same premise. However, it has now come to light that APIA has in fact actually already received the funding for the disputed program for the 2007 funding cycle.

Initially, while APIA's entitlement to the funding for 2006 was being litigated before Administrative Law Judge Sweitzer of the Hearing Division of the Department of the Interior's Office of Hearings and Appeals, it became necessary to address the unresolved funding issue as it related to the 2007 contract. In June 2006 APIA proposed to include the ANCSA § 14(h)(1) program and funding in its 2007 AFA, and took the position that it was entitled to the 2007 funding--notwithstanding the existing dispute over 2006--because the competing tribal resolution requesting to contract the program, from The Aleut Corporation, had only been a one year request relating solely to 2006. Although the intent of The Aleut Corporation was ambiguous from the wording of its May 24, 2005 resolution requesting to contract the 2006 program, the BIA was verbally informed by representatives of The Aleut Corporation that the request to contract directly was intended to be open-ended. The BIA, therefore, wrote a July 7, 2006 letter to APIA explaining its position with regard to ANCSA § 14(h)(1) funding for 2007. <u>See</u> Exhibit 1 (July 7, 2006 Correspondence from Niles Cesar, Regional Director, Bureau of Indian Affairs to Dimitri Philemonof, President, Aleutian Pribilof Islands Association, Inc.) In that letter, the BIA

Alaska Regional Director informed APIA that the provision to it of 2007 funding for the ANCSA § 14(h)(1) program would depend on the possible clarification of The Aleut Corporation's intent to contract, and on Judge Sweitzer's resolution of the legal issues joined in relation to the 2006 program.

Subsequently, The Aleut Corporation did submit a Board of Director's Resolution confirming its request to contract for the ANCSA § 14(h)(1) program in dispute for 2007 and beyond. See Exhibit 2 (Resolution No. 06-11, dated August 25, 2006). Shortly thereafter, on August 31, 2006, Judge Sweitzer issued his Recommended Decision. See Defendants' Motion for Summary Judgment, Exhibit 1. Since that Recommended Decision decided the dispute over 2006 funding by upholding BIA's and OSG's position, and The Aleut Corporation had by that time formally expressed its intent to contract the ANCSA § 14(h)(1) program for 2007, the BIA's ANCSA Program Manager, Mr. Pratt, and the Regional Solicitor's Office both *assumed* that the Regional Office would proceed according to its July 7, 2006 letter, and omit the § 14(h)(1) funding from the APIA AFA. Based on the APIA's recent Motion for Partial Reconsideration, it is apparent that Plaintiff's counsel made the same assumption.

However, it has now come to light that this assumption was incorrect. Mr. Drapeaux of the BIA in the past week has researched the APIA AFA for 2007, and made the surprising discovery that the $73,379 budgeted for the Aleut Region's share of the ANCSA § 14(h)(1) program was in fact included in the Plaintiff's AFA for 2007. In 2006, that amount had been withheld, with a footnote included in the AFA to preserve APIA's legal claim to the funding. In 2007, the funding was *not* withheld from APIA, and no footnote addressing the issue was inserted. See Exhibit 3 (Office of Self Governance 2007 Annual Funding Agreement-

3

Reprogramming Request) at Line 106. Inclusion of these funds in the APIA 2007 AFA is confirmed by Exhibit 4 (Funding Status - Budgetary Adjustments) at Page 2, Line 3. In apparent belated recognition of this oversight, in the 2008 Funding Agreement, the 2007 funding was listed as included in the APIA AFA, but not yet disbursed and in a contingent status. See Exhibit 5 (Self-Governance 2008 Funding Agreement -Reprogramming Request, dated February 11, 2008) at Line Item 157, and footnote 11.

With regard to the 2006 funding, originally withheld from APIA, the funds were retained by the Bureau, and not included in a contract with The Aleut Corporation, because the latter was reluctant to enter into a contract and to incur expenses while the legal dispute remained unresolved. When the September 30, 2007 expiration date for 2006 appropriations drew near, with the legal dispute still unresolved, the BIA ANCSA Program Manager felt obliged to make some constructive use of the funds before they became lost to everyone due to lapse or expiration of the two-fiscal-year appropriation. He, therefore, took prompt last-minute action to obligate the funds to projects directly related to the ANCSA § 14(h)(1) land conveyance process in the Aleut Region. See Exhibit 6 (Declaration of Kenneth L. Pratt) at ¶ 2.

To summarize, the newly recognized realities, the $73,379 for 2006 was withheld, but is no longer available. It was actually used to procure ANCSA § 14(h)(1) related work product pertaining to the Aleut Region. Had it not been, the appropriation would have lapsed on September 30, 2007. The same amount for 2007 was in fact transferred to Plaintiff APIA, and either remains in an APIA account or may have been spent on something other than ANCSA § 14(h)(1)-related work. The same amount for 2008 was again included in the APIA AFA, but in accordance with Exhibit 4, footnote 11, has not yet been disbursed.

4

## II. <u>ARGUMENT</u>

As of this point in time, the dispute over the entitlement to ANCSA § 14(h)(1)

programming has grown to involve the funding for three different years.   The Court's own

decision addresses itself primarily to the lawfulness of the BIA's and OSG's action with respect

to contract year 2006, the first of these three years.   APIA's Motion for Partial Reconsideration

addresses itself to the years 2006 and 2007, and asks the Court to order that the 2006 and 2007

funding be added to APIA's AFAs for those years without need of further proceedings.   APIA's

motion does not seek the same immediate monetary relief as to the 2008 AFA.   Although

generally in the nature of an opposition to Plaintiff's motion, Defendants in this brief will make

separate responses with respect to each of the three years, since significantly different

considerations apply to each.

### A.   <u>APIA's claim for 2006 ANCSA § 14(h)(1) funds.</u>

The heart of the Court's February 11, 2008 Memorandum Opinion is its reversal of that

portion of the Administrative Law Judge's August 31, 2006 Recommended Decision which

concluded that the Indian Self-Determination and Education Assistance Act (ISDEAA)

§102(a)(2), 25 U.S.C. § 450f(a)(2), declination procedures did not apply to APIA's 2006

proposal to contract to perform activities related to the ANCSA § 14(h)(1) program.   This court

held that the Department of the Interior's decision not to apply its Declination Criteria and other

applicable regulations to APIA's request was arbitrary and capricious.   Memorandum Opinion at

14, 17.   However, the Court goes on to order remand as the appropriate remedy under the

Administrative Procedure Act (APA).   <u>Id</u>.   The Court expressly indicated that it was holding in

abeyance APIA's claims under the ISDEAA.   Memorandum Opinion at 1, 17, and 18.

Plaintiff's February 15, 2008 Motion for Partial Reconsideration urges the Court to immediately grant the Plaintiff the monetary remedy it seeks under the ISDEAA, without the necessity of a remand for the issuance of a decision by the BIA.   Plaintiff argues that the ISDEAA itself prescribes the consequence of the BIA's failure to provide partial declination decisions in  accordance with ISDEAA § 102(b) within 90 days of APIA's submission of its proposals for 2006 and 2007 contracts including the ANCSA 14(h)(1) program; namely approval (and funding) of the AFA proposals by operation of law.

The Defendants acknowledge the Court's ruling indicating that Defendants were procedurally obliged to follow the formal declination procedure.   As the Court observed, Defendants have conceded that they did not follow the declination procedure in 2006.[1] Therefore, *if* the matter of the 2006 funding were to be considered in a vacuum, *and if* the 2006 funding were still available, one could argue that the APIA is entitled to the $73,379 which was withheld, based on the reasoning of the South Dakota Court in Cheyenne River Sioux Tribe v. Kempthorne, 496 F.Supp.2d 1059 (D.S.D. 2007).  However, because the funds for the 2006 fiscal year are no longer available, owing to their application to other program-related activities (see Exhibit 6 at ¶ 2), and more importantly to the expiration of the Congressional appropriation, the proper lawful remedy cannot be to direct that the 2006 ANCSA § 14(h)(1) funding be restored to the 2006 AFA and transferred to APIA.

As a matter of appropriations law, as interpreted in the D.C. Circuit, the monetary remedy sought by Plaintiff with respect to the 2006 ANCSA § 14(h)(1) funding is simply legally unavailable, and APIA's claim to additional 2006 funds is moot.   The case of City of Houston v.

---

[1]The situation with respect to the 2007 contract stands on a different footing.  See infra.

HUD, 24 F.3d 1421 (D.C. Cir. 1994) is instructive.  In that case the federal agency withheld part of the funds to which the city claimed it was entitled.  The Court held that Plaintiff's claim to those appropriated funds was moot once they were all obligated to others, and/or because the appropriation at issue had lapsed.  Id. at 1426-1427.  Here, we encounter the same circumstances. As the Declaration of Kenneth Pratt explains, the $73,379 from the 2006 appropriation was obligated to others to save it from lapse.  See Exhibit 6, ¶ 2.  Therefore, APIA's claimed remedy of immediate payment is unavailable.  Fiscal year 2006 appropriations lapsed on September 30, 2007, the last day of the fiscal year following the year of the appropriation.  Pursuant to 25 U.S.C. § 13a, appropriations to the BIA remain available for obligation or expenditure for two years, so that with respect to fiscal year 2006 that extended period came to a close approximately five months ago.

While a finding that APIA's 2006 claim is moot may seem unfair, it is clear that Plaintiff had an opportunity to avoid that result.   According to the D.C. Circuit's instruction in City of Houston:

> [T]o avoid having its case mooted, a plaintiff must both file suit before the relevant appropriation has lapsed, *and* seek a preliminary injunction preventing the agency from distributing those funds.

24 F.3d at 1427 (emphasis in original).   APIA did no such thing.  An injunction could have served not only to prevent the BIA and OSG from otherwise obligating and disbursing the funds in question, but also to preserve the funds from lapse.   As the Circuit explained:

> Because a stay of the lapse of the 1986 appropriation was potentially available, the duration of the challenged action was not "too short to be fully litigated prior to its cessation or expiration."

Id.  Ramah Navajo Sch. Bd., Inc. v. Babbitt, the D.C. Circuit case recognizing the same principle,

specifically in the ISDEAA context.  87 F.3d 1338 (D.C. Cir. 1996).  Describing the procedural

history in that case, the Court explained:

> We then granted plaintiffs' emergency motions for an administrative stay to
> preserve approximately $410,000 in fiscal year 1995 funds *which would otherwise
> have lapsed to the Treasury* during the pendency of this appeal.

87 F.3d at 1340 (emphasis added).   The lesson is clear.   Annual appropriations that are not

saved from reallocation or lapse by a timely exercise of the Court's equitable powers

become unavailable to plaintiffs such as APIA.

Not only is the granting of the immediate remedy sought by APIA's reconsideration

motion with respect to the 2006 funding beyond the Court's authority, but APIA has not

demonstrated any practical harm stemming from that circumstance.   If APIA had made a

showing that it went on to perform ANCSA § 14(h)(1) activities during fiscal year 2006,

notwithstanding BIA's and OSG's withholding of the ANCSA § 14(h)(1) funding, then its

position might be more sympathetic, even though still beyond the Court's authority to remedy.

However, APIA has made no such showing and, upon information and belief, APIA did not in

fact incur any such expenses.  Therefore, the Court should dismiss Plaintiff's Motion for Partial

Reconsideration to the extent Plaintiff claims that the 2006 Fiscal Year funds should be

immediately awarded to them.  Moreover, Defendant's request that the Court remove the subject

of the 2006 funding from its remand order.

### B.   APIA's claim for 2007 ANCSA § 14(h)(1) funds.

Assuming *arguendo* that, as Plaintiff argues, the Court's decision justifies awarding the

FY 2007 ANCSA § 14(h)(1) funds to APIA, there is no reason to depart from the procedure

established in the Court's February 11, 2008 Memorandum Opinion, because as a factual matter

*APIA is already in possession of those funds*.  See Exhibits 2 and 3 (documenting APIA's receipt

of the $73,379 in its FY 2007 AFA).  The Court's Memorandum Opinion calls upon the BIA to

address the 2007 APIA proposal for the ANCSA § 14(h)(1) program under the declination

criteria of ISDEAA § 102(a)(2).  Notwithstanding the recent discovery that the funds in question

have already been provided to APIA, Defendants believe the Court's disposition was appropriate.

Moreover, the Court's procedural approach appropriately distinguishes the

Administrative Procedure Act and ISDEAA aspects of Plaintiff's case.  It is Defendants' position

that they should be given the opportunity to decide whether to issue a declination decision with

respect to the 2007 funding for two very salient reasons.  First, APIA was, in fact, put on timely

notice of the provisional nature of any awarding (or withholding) of 2007 ANCSA § 14(h)(1)

funding by the BIA Regional Director's July 7, 2006 letter issued in response to APIA's 2007

AFA proposal.  See Exhibit 1.  That letter suggested the possibility that a partial declination

decision could be issued at a later date, if the failure to apply the declination criteria for 2006 was

later ruled to have been legally incorrect.   Although the letter referred to a future decision by the

Administrative Law Judge, the judge, in fact, upheld the BIA's action, and it was only with the

issuance of the Court's February 11, 2008 Memorandum Opinion that it was legally determined

that a partial declination decision was the required method of deleting the ANCSA funds from

APIA's proposed AFA.

Second, it must be kept in mind that the controlling legal decision until February 11,

2008, was Administrative Law Judge Sweitzer's August 30, 2006 ruling that the declination

criteria were not implicated by the ANCSA § 14(h)(1) contracting proposal submitted by APIA,

because the village-based tribal government resolutions supporting APIA's contracting proposal

9

were not received from the tribes benefitted by the program, and therefore did not trigger the declination procedure under ISDEAA § 102(a).   Therefore, the Court correctly decided that BIA should now be afforded the opportunity to decide whether to issue a declination decision with respect to the 2007 funding, and if so, to fully articulate the grounds for any such declination.

Consequently, Defendants oppose the Plaintiff's Motion for Partial Reconsideration as it relates to the 2007 funding cycle, and support the approach adopted by the Court in its February 11, 2008 Memorandum Opinion.  The lately discovered fact that the 2007 ANCSA § 14(h)(1) funds were already advanced to APIA should not deprive Defendants of the opportunity to issue such a decision since reasonable steps were taken to preserve that possibility.  But, in any event, it would amount to an impermissible "double recovery" if the Court were to grant APIA the immediate monetary remedy it seeks with respect to FY 2007 in its Motion for Partial Reconsideration.  Defendants submit that the proper course would be for the Court to simply deny Plaintiff's February 15, 2008 Motion for Partial Reconsideration as it relates to FY 2007 ANCSA § 14(h)(1) funds, and reiterate its direction that the parties proceed in accordance with the Court's Memorandum Opinion.

C.     The 2008 ANCSA § 14(h)(1) funding.

APIA's Motion for Partial Reconsideration concerns itself primarily with the funding for 2006 and 2007.  With respect to 2008 and future years, APIA suggests that the BIA be enjoined from withholding future ANCSA § 14(h)(1) (or other) funding "until such time as the Secretary, following the declination procedures prescribed by the ISDEAA and Department regulations, meets his burden to clearly establish the validity of the grounds for declining the proposal or any portion thereof."  Plaintiff's Motion for Partial Reconsideration at 1.  Defendants have no

objection to this formulation, insofar as it simply restates the statutory standard, as determined by the Court in its Opinion. However, for the same reason explained above with respect to the 2007 funding, BIA asserts that the Court's remand of the matter to BIA for further action is the most appropriate course. Until February 11, 2008, the controlling legal interpretation was that a partial declination of the APIA AFA proposal with respect to the ANCSA § 14(h)(1) program was not required. BIA now should have the opportunity to utilize that declination procedure. As with the July 7, 2006 letter to APIA which preserved the issue for 2007, the 2008 AFA puts APIA on notice of the contingent status of the ANCSA § 14(h)(1) funding. See Exhibit 5, footnote11.

> D.  There is good reason for remand to permit the BIA to consider utilization of the declination procedure with respect to the 2007 and 2008 APIA proposals.

The controversy over ANCSA § 14(h)(1) funding began with BIA's recognition that some Alaska tribal consortia receiving funds appropriated for that program were not reliably utilizing the funds in support of their intended purpose of facilitating completion of the ANCSA conveyance process. While APIA may not historically have been guilty of misapplication of these funds, it is noteworthy that the ANCSA Program Manager is unaware of any work done by APIA relating to such activities during the current or immediate past contract years. See Exhibit 6, ¶ 4. Although Plaintiff's attorneys, like the ANCSA Program Manager, evidently were unaware that OSG had transferred the funds in dispute to APIA in the 2007 AFA, APIA officials themselves must have or should have been aware of their receipt of these funds. As noted above, BIA is presently unaware and doubtful that these funds have been used in furtherance of their intended purpose.[2]

---

[2]On remand, Defendants also would be open to discussing some sort of creative approach that would be satisfactory to The Aleut Corporation, APIA, and Defendants, whose broader goal,

# III. **CONCLUSION**

Plaintiff APIA's Motion for Partial Reconsideration should be denied.   First, the FY 2006 funding has lapsed, and Plaintiff cannot receive the immediate monetary relief that it seeks in its motion.   Second, with respect to the 2007 funding, in July 2006, Defendants took reasonable and timely steps to preserve the opportunity to decline that proposal if it was determined in these proceedings that the declination procedures were applicable to the proposal submitted by APIA with the support of the village-based tribes.   Until February 11, 2008, the controlling interpretation of law was that no consideration of the declination option was required, so that the rationale for the Plaintiff's motion - - namely, that the 90 days for declination has run out - - is inapposite as to the 2007 proposal.   Therefore, the Court's remand for issuance of a BIA decision was entirely appropriate.   The discovery that the $73,379 proposed by APIA for inclusion in its 2007 AFA already was transferred to APIA should not prevent the BIA from issuing a decision applying the declination criteria to that proposal.   With respect to APIA's FY 2008 AFA proposal, the same considerations apply.   The BIA should have an opportunity to issue a decision on that issue.

Therefore, Plaintiff has not demonstrated that "justice requires" reconsideration of the Court's February 11, 2008 Memorandum Opinion, see Childers v. Slater, 197 F.R.D. 185, 190 (D.D.C. 2000)(citing Fed. R. Civ. P.60(b), and Plaintiff's Motion for Partial Reconsideration should be denied.

---

beyond the details of the dispute with APIA, is to insure use of the appropriated dollars on the ANCSA § 14(h)(1)-related tasks necessary to finally complete the ANCSA conveyance process begun when that statute was enacted over 36 years ago.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
555 Fourth Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-6531
Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of March, 2008, service of the foregoing, was

made by first class mail, postage pre-paid, to plaintiff's counsel:

F. Michael Willis, Esq.
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, N.W., Suite 700
Washington, D.C.  20037


/s/
MARIAN L. BORUM
Assistant United States Attorney

# <u>Aleutian Pribilof Islands Association, Inc.</u>

## v.

# <u>Dirk Kempthorne, Secretary of the Interior,</u> <u>United States Department of the Interior, et al.</u>
## Civil Action No. 06-2173 (CKK)

## Exhibit 1



**UNITED STATES**
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
ALASKA REGION
P.O. Box 25520
Juneau, Alaska 99802-5520



July 7, 2006

Mr. Dimitri Philemonof, President
Aleutian Pribilof Islands Association, Inc.
201 East Third Avenue
Anchorage, Alaska 99501

Subject:  APIA's FY 2007 Annual Funding Agreement (AFA) Proposal

Dear Mr. Philemonof:

This is in response to the AFA Proposal or Reprogramming Request submitted by Aleutian Pribilof Islands Association (APIA) on June 26, 2006.  In regard to that request we note that APIA has again proposed to receive the funding available for carrying out the Alaska Native Claims Settlement Act (ANCSA) §14(h)(1) program in the coming fiscal year.  As you are no doubt well aware, the differences of opinion between our organizations with respect to the Bureau of Indian Affairs (BIA) and Office of Self-Governance (OSG) obligations towards APIA and The Aleut Corporation (TAC) have not been resolved as of this writing.  Briefing on the question as to whether the ANCSA funding in question should go to APIA or TAC was just completed on June 30, 2006.  It would appear that under 25 C.F.R. § 900.165, we can expect the Administrative Law Judge (ALJ) to issue a recommended decision in your organization's pending administrative appeal by the end of July.

In the meantime, a question has also been raised concerning whether TAC's May 20, 2005 Resolution No. 05-14 was intended to request a contract for Fiscal Year 2006 only, or was instead intended to be open-ended.  The BIA is in receipt of a June 8, 2006 letter from TAC Board Chair Debra K. Mack, confirming that TAC's intent "was to assume funding from the Aleutian/Pribilof Islands Association (A/PIA) for FY06, *and all subsequent years.*" (Emphasis added.)  However, the actual wording of last year's TAC resolution could certainly be interpreted otherwise, and TAC has been told that it should clarify or reconfirm its position in a new resolution, which has not yet been submitted.

In light of these uncertainties, this is to alert you to the fact that the BIA and OSG may or may not ultimately include the ANCSA § 14(h)(1) funding in APIA's FY 2007 AFA, depending on the expected further actions by TAC's Board of Directors, and also on how ALJ Sweitzer rules on the pending appeal.  There are several possible variations.  If the ALJ's decision agrees with the Government that TAC's resolution should be afforded priority over the resolutions of the individual village councils, and upholds the FY 2006 action under review, then the ANCSA § 14(h)(1) funding will once more be deleted from APIA's AFA for FY 2007.  If, on the other

Mr. Dimitri Philemonof, President
APIA's FY 2007 AFA Proposal
July 7, 2006
Page 2 of 2

hand, Judge Sweitzer adopts APIA's view that village resolutions should be controlling, and that APIA is still entitled to receive the FY 2006 funding, then your FY 2007 AFA will be approved as submitted.

The third possibility is that the ALJ's decision will recognize TAC's right to submit a 25 U.S.C. § 450f(a)(1) contracting request for the ANCSA § 14(h)(1) program, and that such request is entitled to priority, but will also conclude that the procedure followed by the BIA and OSG for FY 2006 was deficient, and that APIA should therefore receive the FY 2006 funding. In the case of such a decision, the BIA and OSG would of course comply with respect to the FY 2006 funding, but would also intend to honor TAC's contracting request for FY 2007. To the extent that the ALJ may agree with APIA's argument that partial declination is the procedure which should have been utilized to transfer the ANCSA § 14(h)(1) funding from APIA to TAC, you should be advised that we will issue such a partial declination decision at a later date *if* we are in receipt of an appropriate TAC resolution clarifying the request to contract the ANCSA § 14(h)(1) program for FY 2007, *and if* the ALJ's decision indicates the appropriateness of such a procedure.

In the meantime, we are processing your FY 2007 AFA as proposed, but we are advising you by this letter that we are reserving the right to modify our position depending on future developments as discussed above.

Sincerely,

Niles Cesar
Regional Director

cc:     Debra Mack, The Aleut Corporation
        Tom Shirilla, Northwest Field Manager, DOI Office of Self-Governance
        Roger Drapeaux, Director, Division of Native Services, Alaska Region, BIA
        Ken Pratt, ANCSA Program Manager, Alaska Region, BIA
        Roger Hudson, Attorney, Office of the Regional Solicitor, Alaska Region

# ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC.

## v.

# DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, et al., Civil Action No. 06-2173 (CKK)

## Exhibit 2



### Resolution 06-11

### 14(H)1 FUNDING

**WHEREAS,** The Aleut Corporation (TAC) selected lands as Historic and Cemetery sites pursuant to Section 14(h)1 of the Alaska Native Land Claims Settlement Act; and

**WHEREAS,** those selections represent the physical evidence of the Region's peoples use of said lands for historic and prehistoric subsistence and occupation; and

**WHEREAS,** TAC has exercised its right and obligation to acquire and protect such lands on behalf of all the Aleut Region's Native peoples and communities; and

**WHEREAS,** the Department of Interior, Bureau of Indian Affairs, ANCSA Office has certain tasks remaining to perform in connection with implementation and administration of the ANCSA Section 14(h)1 program; and

**WHEREAS,** TAC, as the tribe in the Aleut Region directly served by the BIA's ANCSA Section 14(h)1 program, has the right pursuant to the Indian Self-Determination and Education Assistance Act (ISDA) to contract to perform many of those tasks for itself; and

**WHEREAS,** TAC, by submission of its Resolution No. 05-14, requested that the BIA contract with it for the performance of those tasks, in accordance with Section 102(a)(1) of the ISDA; and

**WHEREAS,** a question has arisen as to whether that resolution was intended as a request that the BIA contract with TAC for performance of the ANCSA Section 14(h)1 program for the single Fiscal Year 2006 (FY06), or for subsequent Fiscal Years as well; and

**WHEREAS,** it was the intent of TAC to request to contract to perform the ANCSA Section 14(h)1 program for FY06 and subsequent Fiscal Years as well, and to perform such contract in the place of the Aleutian/Pribilof Islands Association (A/PIA), a tribal organization which had previously administered the same program in the Aleut Region; and

**NOW THEREFORE BE IT RESOLVED,** that TAC hereby reiterates its request, first intended to have been made by Resolution No. 05-14, pursuant to ISDA Section 102(a)(1), that the BIA award it a contract to perform the ANCSA Section 14(h)1 program for the Aleut Region, for Fiscal Year 2007, and for all subsequent Fiscal Years, until notice to the contrary is given.

**PASSED AND APPROVED** this 25th day of August, 2006, at a duly called meeting of the Directors of The Aleut Corporation, by a vote of 8 for, 1 opposing, and 3 absent.

Debra Mack
Chair

ATTEST:

Dave Nevzuroff
Assistant Secretary/Treasurer

4000 Old Seward Hwy., Suite 300   Anchorage, Alaska 99503   (907) 561-4300   FAX (907) 563-4328
www.aleutcorp.com

# ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC.

## v.

# DIRK KEMPTHORNE, Secretary of the Interior,
## United States Department of the Interior, et al.,
### Civil Action No. 06-2173 (CKK)

## Exhibit 3

Office of Self Governance
Self Governance 2007 Annual Funding Agreement – Reprogramming Request

June 23 200
Page: 1

Tribe:
Tribal OSG Compact Code: OSGT811
Tribal BIA Org. Code:     E01810          ALEUTIAN PRIBILOF ISLANDS ASSOCIATION
BIA Regional Office:      ALASKA REGION
BIA Field Office:         ANCHORAGE FIELD OFFICE

RECEIVED

JUN 2 6 2006

BUREAU OF INDIAN AFFAIRS
OFFICE OF THE REGIONAL DIRECTOR

| LINE # | PROGRAM TITLE | COST CODE | (Info) TRIBAL SHARE | A OSG CUM. BASE | B OSG SHORTFALL BASE | C OSG SHORTFALL REQUEST | D BIA REPROGRAM REQUEST | E=A+B+C+D TOTAL AFA | FN |
|---|---|---|---|---|---|---|---|---|---|
| 2 | Community Services, General – TPA/AGENCY | 39210 | 26,261 | 25,851 | 410 | 0 | 0 | 26,261 | 1 |
| 4 | Other Aid to Tribal Government – TPA/TRIBAL | 39220 | 221,496 | 207,946 | 13,550 | 0 | 0 | 221,496 | |
| 6 | Other Aid to Tribal Government – TPA/AREA | 39220 | 11,233 | 7,954 | 3,279 | 0 | 0 | 11,233 | |
| 7 | Consolidated Tribal Government Pro – TPA/TRIBAL | 39230 | 6,463 | 6,463 | 0 | 0 | 0 | 6,463 | |
| 8 | Consolidated Tribal Government Pro – TPA/AGENCY | 39230 | 1,689 | 1,689 | 0 | 0 | 0 | 1,689 | |
| 10 | Self-Governance Compacts – TPA/TRIBAL | 39240 | -116,551 | -116,551 | 0 | 0 | 0 | -116,551 | |
| 12 | Contract Support (Ongoing) – TPA/AREA | 39270 | 892,533 | 0 | 0 | 0 | 892,533 | 892,533 | 2 |
| 19 | All Other Aid to Tribal Government – NON TPA | 36420 | 2,318 | 0 | 2,318 | 0 | 0 | 2,318 | |
| 20 | TPA General Increase – TPA/TRIBAL | 39901 | 92,847 | 92,847 | 0 | 0 | 0 | 92,847 | |
| 21 | 638 Pay Costs – TPA/TRIBAL | 39902 | 199,103 | 199,103 | 0 | 0 | 0 | 199,103 | |
| 23 | Small and Needy Tribes Distributio – TPA/TRIBAL | 39904 | 892,306 | 892,306 | 0 | 0 | 0 | 892,306 | 3 |
| 24 | Social Services – TPA/TRIBAL | 39310 | 35,891 | 35,391 | 0 | 0 | 500 | 35,891 | 4 |
| 25 | Social Services – TPA/AGENCY | 39310 | 6,552 | 1,290 | 5,262 | 0 | 0 | 6,552 | |
| 26 | Social Services – TPA/AREA | 39310 | 76,600 | 60,928 | 15,672 | 0 | 0 | 76,600 | |
| 27 | Welfare Assistance Grants – TPA/TRIBAL | 39330 | 75,000 | 0 | 0 | 0 | 75,000 | 75,000 | 5 |
| 28 | Indian Child Welfare Act – TPA/TRIBAL | 39320 | 347,719 | 318,431 | 0 | 0 | 29,288 | 347,719 | 6 |
| 31 | Housing Improvement Program – TPA/TRIBAL | 39370 | 32,900 | 32,900 | 0 | 0 | 0 | 32,900 | 7 |
| 36 | Housing Development – NON TPA | 36530 | 3,824 | 3,824 | 0 | 0 | 0 | 3,824 | |
| 39 | Natural Resources, General – TPA/AREA | 39605 | 2,868 | 1,888 | 980 | 0 | 0 | 2,868 | |
| 53 | Agriculture – TPA/AREA | 39610 | 1,179 | 536 | 643 | 0 | 0 | 1,179 | |
| 65 | Wildlife and Parks – TPA/AREA | 39650 | 1,238 | 588 | 650 | 0 | 0 | 1,238 | |
| 83 | Trust Services, General – TPA/AREA | 39710 | 4,221 | 4,149 | 72 | 0 | 0 | 4,221 | 8 |
| 88 | Real Estate Services – TPA/AGENCY | 39770 | 9,088 | 9,088 | 0 | 0 | 0 | 9,088 | |
| 89 | Real Estate Services – TPA/AREA | 39770 | 2,255 | 1,323 | 121 | 0 | 811 | 2,255 | 9 |
| 90 | Real Estate Services – NON TPA | 34300 | 978 | 0 | 0 | 0 | 978 | 978 | 10 |
| 92 | Land Records Improvement – NON TPA | 36960 | 4,368 | 0 | 0 | 0 | 4,368 | 4,368 | 11 |
| 95 | Environmental Quality Services – TPA/AREA | 39740 | 506 | 405 | 101 | 0 | 0 | 506 | |
| 96 | Environmental Management – NON TPA | 34730 | 4,420 | 0 | 0 | 0 | 4,420 | 4,420 | 12 |
| 103 | ANILCA – TPA/AREA | 39750 | 10,344 | 10,254 | 90 | 0 | 0 | 10,344 | |
| 106 | ANSCA – TPA/AREA | 39760 | 73,379 | 73,379 | 0 | 0 | 0 | 73,379 | |
| 109 | Other Rights Protection – TPA/AREA | 39720 | 41,632 | 40,501 | 1,131 | 0 | 0 | 41,632 | |
| 113 | All Other Indian Rights Protection – NON TPA | 36920 | 568 | 527 | 41 | 0 | 0 | 568 | |
| 116 | Trust Services, General – NON TPA | 36910 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 117 | Real Estate Services – NON TPA | 36940 | 1,009 | 199 | 50 | 0 | 760 | 1,009 | 13 |
| 122 | Johnson-O'Malley Educational Assis – TPA/TRIBAL | 39140 | 7,600 | 7,600 | 0 | 0 | 0 | 7,600 | |
| 126 | Scholarships – TPA/TRIBAL | 39110 | 73,274 | 73,233 | 0 | 0 | 41 | 73,274 | 14 |
| 129 | Adult Education – TPA/TRIBAL | 39130 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 132 | Area and Agency Technical Support – NON TPA | 30800 | 1,617 | 1,617 | 0 | 0 | 0 | 1,617 | 15 |
| 151 | Job Placement and Training – TPA/TRIBAL | 39535 | 123,260 | 123,260 | 0 | 0 | 0 | 123,260 | |
| 153 | Job Placement and Training – TPA/AREA | 39535 | 8,152 | 7,857 | 295 | 0 | 0 | 8,152 | |
| 154 | Adult Voc. Training (moved to TPA) – NON TPA | 36720 | 0 | 0 | 0 | 0 | 0 | 0 | |
| 157 | Economic Development – TPA/AREA | 39510 | 7,229 | 2,614 | 4,615 | 0 | 0 | 7,229 | |
| 164 | Executive Direction – TPA/AGENCY | 39810 | 11,067 | 5,916 | 5,151 | 0 | 0 | 11,067 | |
| 167 | Executive Direction – NON TPA | 36100 | 2,335 | 0 | 2,335 | 0 | 0 | 2,335 | |
| 169 | Administrative Services – TPA/AGENCY | 39820 | 21,677 | 19,249 | 2,428 | 0 | 0 | 21,677 | |
| 176 | Administrative Services – NON TPA | 36200 | 37,546 | 20,275 | 17,271 | 0 | 0 | 37,546 | |
| 205 | Preparedness – NON TPA | 92120 | 2,178 | 0 | 0 | 0 | 2,178 | 2,178 | 16 |
| 206 | Preparedness Program Mgmt (Indirec – NON TPA | 92121 | 821 | 0 | 0 | 0 | 821 | 821 | 17 |
| | TOTAL | | 3,262,993 | 2,174,830 | 76,465 | 0 | 1,011,698 | 3,262,993 | |

AUTHORIZED FINANCIAL OFFICERS:

_(signature)_ 6/28/06
Bureau of Indian Affairs Regional Office

_(signature)_
Tribe

_Tom Shrulle_ 7/10/06
Office of Self Governance

1 Reference 96 & 97 non-residual left with BIA Anchorage Agency to carry out CDIB functions.
2 Estimated amount. FY 07 funds will be distributed using similar methodology as was used last fiscal year.
3 See FY 03 AFA f/n #3 for village breakout.
4 $500 increase for balance of False Pass Social Services funds ($561)that should have been base transferred to APIAs base. The base should be $35,891.
5 Estimate. Total funds for FY 07 will be distributed based upon estimated welfare assistance need as reflected in current mid-year analysis of funds report.
6 Agdaagux Tribal Councils Other Aid to Tribal Government (39220) $23,452; Social Services (39310)$4,997; and ICWA (39320)$839 = a total of $29,288 to be reprogrammed to APIAs base ICWA - TPA/TRIBAL (39320) per Agdaagux Resolution.
7 Funds will be distributed based on HIP eligible applicant data and shall be used in accordance with HIP regulations.
8 APIA total share $4468; $247 left with BIA for direct Archeology services.
9 $811 increase is minimum amount of APIA tribal share of BIA Realty increases based on data provided by BIA at 5/7/07 Realty meeting.
10 Historical share amount based on combined total of Lease Compliance and prior Shortfall adjustments to cummulative base (see f/n #11 of FY 03 AFA).
11 Minimum tribal share amount based on Realty data provded at meeting with BIA on 5/7/02. Same as FY 05 amount.
12 Based on historical AFA tribal share amounts.
13 Minimum tribal share amount based on Realty data provided at meeting with BIA on 5/7/02. Same as FY 05 amount.
14 $41 increase for balance of False Pass Pay Cost funds ($93)that should have been base transferred to APIAs base. The base should be $73,274.
15 Amount based on 2% of JOM & Scholarship tribal shares.
16 Best estimate at the time of negotiations and is subject to adjustment based on actual award, selection of project, or distribution methodology used by BIA provided SG Tribes, other Tribes and BIA agencies are treated similarly.
17 Estimate. To be adjusted based on APIAs actual indirect rate at time of distribution of funds.

# ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC.

## v.

# DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, et al., Civil Action No. 06-2173 (CKK)

## Exhibit 4

# Funding Status - Budgetary Adjustments

Report of Funding Status - Budget Adjustments      Office of Self-Governance      November 14, 2007

Tribe:ALEUTIAN PRIBILOF ISLANDS ASSOCIATION
BIA Tribal Organization Code:E01810
OSG Tribal Compact Code:OSGT811
BIA Area Office:ALASKA REGION
BIA Agency Office:ANCHORAGE FIELD OFFICE

| | FFS Cost Code | A 2007 AFA Total | B Cumulative Base | C Shortfall Base | D Additional Shortfall | E Congress. Adjust. | F Misc. Adjust. | G Requested Funding | H Total Obligated |
|---|---|---|---|---|---|---|---|---|---|
| Child Care Block Grants - HHS | 95200 | 0 | 0 | 0 | 0 | 475 | 139,158 | 139,633 | 139,633 |
| HHS Fund 95000 Total - | | 0 | 0 | 0 | 0 | 475 | 139,158 | 139,633 | 139,633 |
| Child Care Development Fund - HHS | 95300 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| HHS Fund 95004 Total - | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Native Employment Works (NEW) - HHS | 95520 | 0 | 0 | 0 | 0 | 0 | 7,600 | 7,600 | 7,600 |
| HHS Fund 95005 Total - | | 0 | 0 | 0 | 0 | 0 | 7,600 | 7,600 | 7,600 |
| TMIP (UTB) | A3A00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Central Office Operations | A5000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Administrative Services | A5220 | 37,546 | 20,275 | 17,271 | 0 | 0 | 0 | 0 | 0 |
| Executive Direction (Regional) | A6000 | 2,335 | 0 | 2,335 | 0 | 0 | 0 | 0 | 0 |
| Executive Direction - TPA/Agency | A9010 | 11,067 | 5,916 | 5,151 | 0 | 0 | 0 | 0 | 0 |
| Administrative Services - TPA/Agency | A9120 | 21,677 | 19,249 | 2,428 | 0 | 0 | 0 | 0 | 0 |
| Fund A0002 Total - | | 72,625 | 45,440 | 27,185 | 0 | 0 | 0 | 0 | 0 |
| Job Placement and Training - TPA/Tribal | C9035 | 123,260 | 123,260 | 0 | 0 | 0 | 0 | 0 | 0 |
| Job Placement and Training - TPA/Region | C9035 | 8,152 | 7,857 | 295 | 0 | 0 | 0 | 0 | 0 |
| Economic Development - TPA/Region | C9110 | 7,229 | 2,614 | 4,615 | 0 | 0 | 0 | 0 | 0 |
| Fund C0002 Total - | | 138,641 | 133,731 | 4,910 | 0 | 0 | 0 | 0 | 0 |
| Education Line Officers | E5030 | 1,617 | 1,617 | 0 | 0 | 0 | 0 | 0 | 0 |
| Johnson O'Malley - TPA/Tribal | E9040 | 7,600 | 7,600 | 0 | 0 | 0 | 0 | 0 | 0 |
| Tribal Scholarships - TPA/Tribal | E9310 | 73,274 | 73,233 | 0 | 0 | 0 | 0 | 41 | 0 |
| Tribal Adult Education - TPA/Tribal | E9320 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fund E0002 Total - | | 82,491 | 82,450 | 0 | 0 | 0 | 0 | 41 | 0 |
| Housing Development | H6030 | 3,824 | 3,824 | 0 | 0 | 0 | 0 | 0 | 0 |
| Social Services - TPA/Tribal | H9010 | 35,891 | 35,391 | 0 | 0 | 0 | 0 | 500 | 500 |
| Social Services - TPA/Region | H9010 | 76,600 | 60,928 | 15,672 | 0 | 0 | 0 | 0 | 0 |
| Social Services - TPA/Agency | H9010 | 6,552 | 1,290 | 5,262 | 0 | 0 | 0 | 0 | 0 |
| Welfare Assistance - TPA/Tribal | H9130 | 75,000 | 0 | 0 | 0 | 0 | -193 | 74,807 | 74,807 |
| Indian Child Welfare Act - TPA/Tribal | H9220 | 347,719 | 318,431 | 0 | 0 | 0 | 0 | 29,288 | 0 |
| Housing Improvement Program - TPA/Tribal | H9370 | 32,900 | 32,900 | 0 | 0 | 0 | 63,350 | 63,350 | 63,350 |
| Fund H0002 Total - | | 578,486 | 452,764 | 20,934 | 0 | 0 | 63,157 | 167,945 | 138,657 |
| Law Enforcement Projects | J3300 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fund J0002 Total - | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Natural Resources (UTB) - TPA/Region | N9A05 | 2,868 | 1,888 | 980 | 0 | 0 | 0 | 0 | 0 |
| Agriculture Program (UTB) - TPA/Region | N9B10 | 1,179 | 536 | 643 | 0 | 0 | 0 | 0 | 0 |
| Wildlife & Parks Program (UTB) - TPA/Region | N9E50 | 1,238 | 588 | 650 | 0 | 0 | 0 | 0 | 0 |
| Fund N0002 Total - | | 5,285 | 3,012 | 2,273 | 0 | 0 | 0 | 0 | 0 |
| Real Estate Service Proj (UTB) | R3A00 | 978 | 0 | 0 | 0 | 0 | 0 | 978 | 978 |
| Environmental Quality Projects (UTB) | R3B30 | 4,420 | 0 | 0 | 0 | 0 | 0 | 4,420 | 4,420 |
| Other Indian Rights Protection | R6020 | 568 | 527 | 41 | 0 | 0 | 0 | 0 | 0 |
| Land Records Improvement-Regional (UTB) | R6B60 | 4,368 | 0 | 0 | 0 | 0 | 0 | 4,368 | 3,024 |
| Trust Services (UTB) | R6C10 | 0 | 0 | 0 | 0 | 0 | 155 | 155 | 155 |

# Funding Status - Budgetary Adjustments

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Real Estate Services (UTB) | R6C40 | 1,009 | 199 | 50 | 0 | 0 | 166 | 926 | 926 |
| ANILCA Programs - TPA/Region | R9050 | 10,344 | 10,254 | 90 | 0 | 0 | 0 | 0 | 0 |
| ANCSA Historical & Cemetery Sites - TPA/Region | R9060 | 73,379 | 73,379 | 0 | 0 | 0 | 0 | 0 | 0 |
| Rights Protection - TPA/Region | R9120 | 41,632 | 40,501 | 1,131 | 0 | 0 | 0 | 0 | 0 |
| Trust Services (UTB) - TPA/Region | R9A10 | 4,221 | 4,149 | 72 | 0 | 0 | 0 | 0 | 0 |
| Real Estate Services Program (UTB) - TPA/Region | R9C70 | 2,255 | 1,323 | 121 | 0 | 0 | 1,968 | 2,779 | 2,779 |
| Real Estate Services Program (UTB) - TPA/Agency | R9C70 | 9,088 | 9,088 | 0 | 0 | 0 | 0 | 0 | 0 |
| Environmental Quality Program (UTB) - TPA/Region | R9D40 | 506 | 405 | 101 | 0 | 0 | 0 | 0 | 0 |
| Fund R0002 Total - | | 152,768 | 139,825 | 1,606 | 0 | 0 | 2,299 | 13,626 | 12,282 |
| Other Aid to Tribal Government | T6020 | 2,318 | 0 | 2,318 | 0 | 0 | 0 | 0 | 0 |
| Other Aid to Tribal Government - TPA/Tribal | T9020 | 221,496 | 207,946 | 13,550 | 0 | 0 | 0 | 0 | 0 |
| Other Aid to Tribal Government - TPA/Region | T9020 | 11,233 | 7,954 | 3,279 | 0 | 0 | 0 | 0 | 0 |
| Other Aid to Tribal Government - TPA/Agency | T9020 | 26,261 | 25,851 | 410 | 0 | 0 | 0 | 0 | 0 |
| Consolidated Tribal Government Program - TPA/Tribal | T9130 | 6,463 | 6,463 | 0 | 0 | 0 | 0 | 0 | 0 |
| Consolidated Tribal Government Program - TPA/Agency | T9130 | 1,689 | 1,689 | 0 | 0 | 0 | 0 | 0 | 0 |
| Self-Governance Compacts - TPA/Tribal | T9240* | -116,551 | -116,551 | 0 | 0 | 0 | 2,484,397 | 2,251,295 | 2,251,295 |
| Contract Support - TPA/Region | T9370 | 892,533 | 0 | 0 | 0 | 0 | -73,591 | 818,942 | 818,942 |
| TPA General Increase - TPA/Tribal | T9901 | 92,847 | 92,847 | 0 | 0 | 0 | 0 | 0 | 0 |
| 638 Pay Costs - TPA/Tribal | T9902 | 199,103 | 199,103 | 0 | 0 | 0 | 0 | 0 | 0 |
| Small and Needy Tribes Distribution - TPA/Tribal | T9904 | 892,306 | 892,306 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fund T0002 Total - | | 2,229,698 | 1,317,608 | 19,557 | 0 | 0 | 2,410,806 | 3,070,237 | 3,070,237 |
| Preparedness | 92120 | 2,178 | 0 | 0 | 0 | 0 | 0 | 2,178 | 578 |
| Preparedness Program Mgmt (Indirect Cost | 92121 | 821 | 0 | 0 | 0 | 0 | 0 | 821 | 0 |
| BLM Fund 92000 Total - | | 2,999 | 0 | 0 | 0 | 0 | 0 | 2,999 | 578 |
| Supplemental Youth Services-LABOR | 95130 | 0 | 0 | 0 | 0 | 0 | 13,415 | 13,415 | 13,415 |
| Comprehensive Services(Adult)-LABOR | 95140 | 0 | 0 | 0 | 0 | 0 | 27,220 | 27,220 | 27,220 |
| LABOR Fund 95002 Total - | | 0 | 0 | 0 | 0 | 0 | 40,635 | 40,635 | 40,635 |
| Report Total | | 3,262,993 | 2,174,830 | 76,465 | 0 | 475 | 2,663,645 | 3,442,716 | 3,409,622 |

OSGT811 - 2007 ALEUTIAN PRIBILOF ISLANDS ASSOCIATION

| SUMMARY BY SG ROLLUP ACCOUNTS | Account | Total Obligations |
|---|---|---|
| S/G OIP (2 Year) | T9240 | 3,208,894 |
| S/G OIP - UTB (2 Year) | T9A40 | 12,282 |
| S/G HHS-CHILDCARE DEVELOP | 95400 | 0 |
| S/G HHS-N.E.W. AND TANF | 95500 | 7,600 |
| S/G HHS-CHILDCARE BLOCK | 95800 | 139,633 |
| S/G BLM-FIRE MANAGEMENT | 92900 | 578 |
| S/G LABOR-JTPA IV-A, II-B | 95700 | 40,635 |
| Total | -------- | $3,409,622 |

# ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC.

## v.

# DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, et al., Civil Action No. 06-2173 (CKK)

## Exhibit 5

Self Governance 2008 Funding Agreement - Reprogramming Request

Office of Self-Governance

Tribe:ALEUTIAN PRIBILOF ISLANDS ASSOCIATION

February 11, 2008

BIA Tribal Organization Code:E01810
OSG Tribal Compact Code:OSGT811, 2008
BIA Area Office:ALASKA REGION
BIA Agency Office:ANCHORAGE FIELD OFFICE

| Line Item | Program Title | Cost Code | Info Tribal Share | A OSG Cumulative Base | B OSG ShortFall Base | C OSG Shortfall Request | D BIA Reprogram Request | E=A+B+C+D Total AFA | FN |
|---|---|---|---|---|---|---|---|---|---|
| 8 | Child Care Block Grants - HHS - NON TPA | 95200 | $111,304 | $0 | $0 | $0 | $111,304 | $111,304 | 5 |
| 20 | TMIP (UTB) - NON TPA | A3A00 | $0 | $0 | $0 | $0 | $0 | $0 | |
| 21 | Central Office Operations - NON TPA | A5000 | $0 | $0 | $0 | $0 | $0 | $0 | |
| 25 | Administrative Services - NON TPA | A5220 | $37,546 | $20,275 | $17,271 | $0 | $0 | $37,546 | |
| 30 | Executive Direction (Regional) - NON TPA | A6000 | $2,335 | $0 | $2,335 | $0 | $0 | $2,335 | |
| 32 | Executive Direction - TPA/Agency | A9010 | $11,067 | $5,916 | $5,151 | $0 | $0 | $11,067 | |
| 35 | Administrative Services - TPA/Agency | A9120 | $21,677 | $19,249 | $2,428 | $0 | $0 | $21,677 | |
| 43 | Job Placement and Training - TPA/Region | C9035 | $8,152 | $7,857 | $295 | $0 | $0 | $8,152 | |
| 44 | Job Placement and Training - TPA/Tribal | C9035 | $123,260 | $123,260 | $0 | $0 | $0 | $123,260 | |
| 46 | Economic Development - TPA/Region | C9110 | $7,229 | $2,614 | $4,615 | $0 | $0 | $7,229 | |
| 53 | Education Line Officers - NON TPA | E5030 | $1,617 | $1,617 | $0 | $0 | $0 | $1,617 | |
| 56 | Johnson O'Malley - TPA/Tribal | E9040 | $0 | $0 | $0 | $0 | $0 | $0 | 2 |
| 59 | Tribal Scholarships - TPA/Tribal | E9310 | $73,233 | $73,233 | $0 | $0 | $0 | $73,233 | |
| 62 | Tribal Adult Education - TPA/Tribal | E9320 | $0 | $0 | $0 | $0 | $0 | $0 | |
| 70 | Housing Development - NON TPA | H6030 | $3,824 | $3,824 | $0 | $0 | $0 | $3,824 | |
| 71 | Social Services - TPA/Agency | H9010 | $6,552 | $1,290 | $5,262 | $0 | $0 | $6,552 | |
| 72 | Social Services - TPA/Region | H9010 | $76,600 | $60,928 | $15,672 | $0 | $0 | $76,600 | |
| 73 | Social Services - TPA/Tribal | H9010 | $35,391 | $35,391 | $0 | $0 | $0 | $35,391 | |
| 74 | Welfare Assistance - TPA/Tribal | H9130 | $74,807 | $0 | $0 | $0 | $74,807 | $74,807 | 3 |
| 77 | Indian Child Welfare Act - TPA/Tribal | H9220 | $326,900 | $318,431 | $0 | $0 | $8,469 | $326,900 | 6 |
| 78 | Housing Improvement Program - TPA/Tribal | H9370 | $0 | $0 | $0 | $0 | $0 | $0 | 2 |
| 83 | Law Enforcement Projects - NON TPA | J3300 | $0 | $0 | $0 | $0 | $0 | $0 | |
| 120 | Natural Resources (UTB) - TPA/Region | N9A05 | $2,868 | $1,888 | $980 | $0 | $0 | $2,868 | |
| 123 | Agriculture Program (UTB) - TPA/Region | N9B10 | $1,179 | $536 | $643 | $0 | $0 | $1,179 | |
| 132 | Wildlife & Parks Program (UTB) - TPA/Region | N9E50 | $1,238 | $588 | $650 | $0 | $0 | $1,238 | |
| 140 | Real Estate Service Proj (UTB) - NON TPA | R3A00 | $978 | $0 | $0 | $0 | $0 | $0 | 10 |
| 142 | Environmental Quality Projects (UTB) - NON TPA | R3B30 | $4,420 | $0 | $0 | $0 | $0 | $0 | 10 |
| 147 | Other Indian Rights Protection - NON TPA | R6020 | $568 | $527 | $41 | ($41) | ($527) | $0 | 10 |
| 149 | Land Records Improvement-Regional (UTB) - NON TPA | R6B60 | $4,368 | $0 | $0 | $0 | $0 | $0 | 10 |
| 150 | Trust Services (UTB) - NON TPA | R6C10 | $0 | $0 | $0 | $0 | $0 | $0 | |
| 151 | Real Estate Services (UTB) - NON TPA | R6C40 | $1,009 | $199 | $50 | ($50) | ($199) | $0 | 10 |
| 154 | ANILCA Programs - TPA/Region | R9050 | $10,344 | $10,254 | $90 | ($90) | ($10,254) | $0 | 10 |

| Line | Description | Code | | | | | | | Note |
|---|---|---|---|---|---|---|---|---|---|
| 157 | ANCSA Historical & Cemetery Sites - TPA/Region | R9060 | $73,379 | $73,379 | $0 | $0 | $0 | $73,379 | 11 |
| 160 | Rights Protection - TPA/Region | R9120 | $41,632 | $40,501 | $1,131 | ($1,131) | ($40,501) | $0 | 10 |
| 163 | Trust Services (UTB) - TPA/Region | R9A10 | $4,468 | $4,149 | $72 | ($72) | ($4,149) | $0 | 9 |
| 166 | Real Estate Services Program (UTB) - TPA/Agency | R9C70 | $9,088 | $9,088 | $0 | $0 | ($9,088) | $0 | 10 |
| 167 | Real Estate Services Program (UTB) - TPA/Region | R9C70 | $2,255 | $1,323 | $121 | ($121) | ($1,323) | $0 | 10 |
| 173 | Environmental Quality Program (UTB) - TPA/Region | R9D40 | $506 | $405 | $101 | ($101) | ($405) | $0 | 10 |
| 179 | Other Aid to Tribal Government - NON TPA | T6020 | $2,318 | $0 | $2,318 | $0 | $0 | $2,318 | |
| 180 | Other Aid to Tribal Government - TPA/Agency | T9020 | $26,261 | $25,851 | $410 | $0 | $0 | $26,261 | 7 |
| 181 | Other Aid to Tribal Government - TPA/Region | T9020 | $11,233 | $7,954 | $3,279 | $0 | $0 | $11,233 | |
| 182 | Other Aid to Tribal Government - TPA/Tribal | T9020 | $221,496 | $207,946 | $13,550 | $0 | $0 | $221,496 | |
| 183 | Consolidated Tribal Government Program - TPA/Agency | T9130 | $1,689 | $1,689 | $0 | $0 | $0 | $1,689 | |
| 185 | Consolidated Tribal Government Program - TPA/Tribal | T9130 | $27,282 | $6,463 | $0 | $0 | $20,819 | $27,282 | 6 |
| 186 | Self-Governance Compacts - TPA/Tribal | T9240 | ($116,551) | ($116,551) | $0 | $0 | $0 | ($116,551) | |
| 187 | Contract Support - TPA/Region | T9370 | $818,942 | $0 | $0 | $0 | $818,942 | $818,942 | 1 |
| 190 | TPA General Increase - TPA/Tribal | T9901 | $92,847 | $92,847 | $0 | $0 | $0 | $92,847 | |
| 191 | 638 Pay Costs - TPA/Tribal | T9902 | $199,103 | $199,103 | $0 | $0 | $0 | $199,103 | |
| 193 | Small and Needy Tribes Distribution - TPA/Tribal | T9904 | $892,306 | $892,306 | $0 | $0 | $0 | $892,306 | 8 |
| 206 | Preparedness - NON TPA | 92120 | $116 | $0 | $0 | $0 | $116 | $116 | 4 |
| 207 | Preparedness Program Mgmt (Indirect Costs) - NON TPA | 92121 | $45 | $0 | $0 | $0 | $45 | $45 | 4 |
| | | | $3,256,881 | $2,134,330 | $76,465 | ($1,606) | $968,056 | $3,177,245 | |

AUTHORIZED FINANCIAL OFFICERS:

_[signature]_
Bureau of Indian Affairs - Regional Office

_[signature]_
Tribe

_[signature]_
Office of Self Governance

Footnotes

1 Contract Support - Funds will be distributed as described in the BIAs Contract Support Policy.

2 This program is excluded from the President's 2008 Budget Request to Congress. Should final appropriations restore the program; the Tribe elects to operate the program through this Funding Agreement.

3 Welfare Assistance - Total funds will be distributed based upon welfare assistance need as determined by the national distribution methodology used by the BIA.

4 Amount identified is best estimate at the time of negotiation and subject to adjustment based on actual award, selection of project or distribution methodology used by BIA provided SG Tribes, other tribes and BIA agencies are treated similarly.

5 Employment & Training and Related Services Demonstration project (P.L. 102-477) - The amount included is a funding estimate. The actual amount will be based upon funding levels provided by HHS or DOL.

6 Agdaagux (King Cove) total ICWA program funding of $29,288 to APIA from Agdaagux (King Cove) tribal TPA accounts: $8,469 from ICWA (H9220) and $20,819 from CTGP (T9130).

7 See 1997 AFA worksheet which documents nonresidual left with the BIA Anchorage office to carry out CDIB functions.

8 Tribe by tribe breakout is documented in 2003 AFA worksheet (footnote #3).

9 APIA total available share is $4,468; $247 had historically been left with the BIA for direct Archeology services, beginning in 2008 all Realty service responsibility and funds are returned to the BIA.

10 All Realty service responsibility and funds are returned to the BIA.

11 Distribution of ANCSA funds is pending final decision on APIA's appeal.

# ALEUTIAN PRIBILOF ISLANDS ASSOCIATION, INC.

## v.

## DIRK KEMPTHORNE, Secretary of the Interior, United States Department of the Interior, et al., Civil Action No. 06-2173 (CKK)

## Exhibit 6

## DECLARATION OF KENNETH L. PRATT

Kenneth L. Pratt hereby declares as follows:

1. My name is Kenneth L. Pratt. I have worked for the BIA in Alaska since 1985, and have been involved in the fulfillment of the Bureau's duties relating to Section 14(h)(1) of the Alaska Native Settlement Act (ANCSA) throughout the period of my employment with the Bureau. I have been the ANCSA Program Manager since 1996.

2. My involvement with the issues raised by the case of *Aleutian Pribilof Islands Association, Inc. v. Dirk Kempthorne, et al.*, Civil Action No. 06-2173, is based on my official position as the ANCSA Program Manager. Fiscal Year (FY) 2006 ANCSA Program funds are an issue in this case so I want to explain what became of the funds. The Plaintiff's objections to Bureau actions related to the FY 2006 funds led me to ensure they were not spent until the dispute was resolved: they were protected accordingly until late August 2007, at which time the BIA Central Office in Washington, D.C. notified the BIA Alaska Region that—despite their role in pending litigation—the funds would expire on 30 September 2007. I therefore took immediate steps to obligate the funding for several projects that are geographically based in the Aleut Region, and heavily reliant on information gathered during ANCSA Sec. 14(h)(1) site investigations in that region. The largest of these projects is directly tied to the ANCSA land conveyance process, in that it will enable The Aleut Corporation (TAC) to create an "ANCSA 14(h)(1) Sites Management Plan." Such a plan will be critical to TAC's success in meeting its legal responsibilities for future management of all lands conveyed to it pursuant to ANCSA Sec. 14(h)(1). If I had not acted to make use of the 2006 funds in this way they

would have expired unspent and been of no use in furthering the ANCSA Sec. 14(h)(1) conveyance process in the Aleut Region.

3. Until the final week of February 2008 it was my firm belief that FY 2007 ANCSA Program funds associated with the Aleutian region had been handled by the BIA and Office of Self-Governance in the exact same manner as those for FY 2006. That is, I believed the August 2006 Resolution by the Board of Directors of TAC concerning ANCSA Program funds had resulted in the funds' *exclusion* from the FY 2007 Annual Funding Agreement (AFA) of the Aleutian Pribilof Islands Association (APIA). I was taken by complete surprise to learn that that was not the case.

4. As far as I am aware, although APIA actually received the FY 2007 ANCSA funds it has not performed *any* ANCSA Program work with those funds. Certainly, APIA has not had any contact with the BIA or TAC on this matter. This is significant because ANCSA Program funds are earmarked for ANCSA work in the "Self-Governance Multi-Year Funding Agreement (10/1/03 – 9/30/08)" applicable to APIA, and specific work tasks to be performed with said funds are supposed to be jointly determined by the BIA, TAC, and APIA. As I am in constant contact with staff of the Bureau of Land Management's "Division of Alaska Lands"—which directs the ANCSA land conveyance process—I am also confident that APIA has not been in contact with that agency relative to ANCSA Sec. 14(h)(1) concerns.

5. The ANCSA Program description contained in the BIA FY 2006 Budget Justification is also an issue in the case of *Aleutian Pribilof Islands Association, Inc. v. Dirk Kempthorne, et al.* The ANCSA Program description has since been revised to bring it in line with the 2004 BIA Reorganization, which resulted in the program's new organizational position within the "Division of Environmental and Cultural Resources Management." Attached hereto is the relevant excerpt from the BIA Budget Justification submitted to Congress in support of the President's request for appropriations for FY 2009. Consistent with the Alaska Land Transfer Acceleration Act (December 10, 2004 [Public Law 108-452]), with its goal of expediting completion of the ANCSA land conveyance process, the new description in the Budget Justification document has been revised to emphasize the program's role in the ANCSA land conveyance process.

Pursuant to the provisions of 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at Anchorage, Alaska this ____5th____ day of March, 2008.

Kenneth L. Pratt

Kenneth L. Pratt